IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SALIA ISSA, FISTON RUKENGEZA, and SALIA ISSA and FISTON RUKENGEZA as next friends of their unborn child,<br>  Plaintiffs,<br><br>v.<br><br>TEXAS DEPARTMENT OF CRIMINAL JUSTICE, LT. BRANDY HOOPER, individually, LT. DESMOND THOMPSON, individually, and ASSIST. WARDEN ALONZO HAMMOND, individually,<br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 1:22-cv-1107-LY |

**DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S MOTION TO DISMISS**

TO THE HONORABLE DISTRICT COURT JUDGE LEE YEAKEL:

  Defendant Texas Department of Criminal Justice ("TDCJ") respectfully asks the Court to dismiss the claims brought against it by Plaintiff Salia Issa ("Issa"). Per Plaintiffs' pleadings, during the relevant timeframe, TDCJ employed Issa as a correctional officer. TDCJ policy prohibits a correctional officer from leaving their assigned security post until relieved by another officer. Plaintiffs allege that, pursuant to this policy, a lieutenant and assistant warden did not permit Issa to leave her security post between 8:30 PM and 11:00 PM. While this decision ultimately resulted in tragic consequences, Plaintiffs have not plausibly alleged facts creating the reasonable inference that TDCJ's actions amounted to unlawful sex discrimination under Title VII of the Civil Rights Act of 1964. Moreover, Plaintiffs' disability discrimination and state law claims against TDCJ are barred by sovereign immunity. For the reasons set forth herein, TDCJ asks the Court to dismiss Plaintiffs' Counts 1–6 and 26–31.

## I. PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Factual Allegations

TDCJ has a policy that prohibits correctional officers from leaving their assigned security post until properly relieved by another officer. Dkt. #1 at ¶ 24. On the evening of November 15, 2021, Issa was working as a correctional officer at the John Middleton Unit. *Id.* at ¶¶ 6, 15–16. She was seven months pregnant at that time. *Id.* at ¶ 17. At approximately 8:30 PM, Issa told one of her supervisors, Lt. Brandy Hooper, that she was experiencing pain and needed to go to the hospital. *Id.* at ¶¶ 22–23. Lt. Hooper told Issa that she (Hooper) would send someone to replace Issa. *Id.* at ¶ 23. Two minutes later, Lt. Desmond Thompson called Issa and told her that she could not leave because "the warden" (whom Plaintiffs allege meant Assistant Warden Alonzo Hammond) said she could not leave. *Id.* at ¶¶ 25–30. Issa told Lt. Thompson she really needed to go to the hospital due to the pain and, in response, he reiterated again that she could not yet leave. *Id.* at ¶¶ 32–33. Issa called Lt. Thompson several more times and reiterated that she needed to go to the hospital, but Lt. Thompson again told her she could not leave. *Id.* at ¶ 34. At approximately 11:00 PM, another officer arrived to relieve Issa. *Id.* at ¶ 35. Issa left and went to the hospital. *Id.* at ¶ 36. There, the hospital personnel could not find the unborn child's heartbeat. *Id.* at ¶ 38. The child was eventually delivered stillborn. *Id.* at ¶ 41.

### B. Plaintiffs' Claims Against TDCJ

Based on these allegations, Plaintiffs' First Amended Complaint presents thirty-one (31) claims against four defendants. *See* Dkt. #4. Against TDCJ, Issa brings the following twelve (12) claims which each arise under either Title VII of the Civil Rights Act of 1964 ("Title VII"), Chapter 21 of the Texas Labor Code ("Texas Labor Code"), or the Americans with Disabilities Act ("ADA"):

| **PLAINTIFF'S CLAIMS AGAINST TDCJ (per Dkt. #4 at pp. 2–3)** | | |
|---|---|---|
| **COUNT** | **PLAINTIFF** | **STATUTE** |
| 1 | Issa | Title VII (disparate treatment based on sex) |
| 2 | Issa | Texas Labor Code (disparate treatment based on sex) |
| 3 | Issa | Title VII (hostile work environment based on sex) |
| 4 | Issa | Texas Labor Code (hostile work environment based on sex) |
| 5 | Issa | Title VII (disparate impact based on sex) |
| 6 | Issa | Texas Labor Code (disparate impact based on sex) |
| 26 | Issa | ADA (denial of reasonable accommodation) |
| 27 | Issa | Texas Labor Code (denial of reasonable accommodation) |
| 28 | Issa | ADA (hostile work environment based on disability) |
| 29 | Issa | Texas Labor Code (hostile work environment based on disability) |
| 30 | Issa | ADA (disparate impact based on disability) |
| 31 | Issa | Texas Labor Code (disparate impact based on disability) |

## II.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

### A.   Standard of Review

"Federal courts are courts of limited jurisdiction." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a [Federal] Rule [of Civil Procedure] 12(b)(1) motion to dismiss is on the party asserting jurisdiction," and, at the pleading stage, the plaintiff's "'burden is to allege a plausible set of facts establishing jurisdiction.'" *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021) (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)). As such, all well-pleaded facts are taken as true and all reasonable inferences must be made in the plaintiff's favor. *See id.* at 271–72. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

B.   **Arguments & Authorities**

    1.   **TDCJ is entitled to sovereign immunity from suit.**

"[F]or over a century now, [the Supreme Court has] made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). "[A]bsent waiver by the State or valid congressional override, the [sovereign immunity] bars a damages action against a State in federal court."[1] *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). "Even in cases where the State itself is not a named defendant, the State's [sovereign] immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt v. Bd. of Commissioners of the Orleans Levee District*, 294 F3d 684, 688–89 (5th Cir. 2002) (citing *Regents of the Univ. of California v. Doe*, 519 US 425, 429 (1997)); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). "TDCJ is an arm of the state of Texas and thus entitled to sovereign immunity." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021); *see also* Dkt. #4 at ¶ 1 ("Defendant-TDCJ is an agency of the State of Texas.").

    2.   **The Texas Labor Code claims are barred by TDCJ's sovereign immunity (Counts 2, 4, 6, 27, 29, and 31)**

Chapter 21 of the Texas Labor Code, which prohibits employment discrimination, "does not expressly waive sovereign immunity in *federal* court." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) (emphasis in original); *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d

---

[1] "By its terms, the [Eleventh] Amendment does not apply. . . where a citizen sues his own State (or an agency of that State)." *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 596 n.1 (5th Cir. 2021). "Still, the Supreme Court has often used 'Eleventh Amendment immunity' as a synonym for the States' broader constitutional sovereign immunity." *Id.* Because the phrase "Eleventh Amendment immunity" is "something of a misnomer," *Alden v. Maine*, 527 U.S. 706, 713 (1999), this motion shall use the more accurate term "sovereign immunity" and alter case quotations as necessary to follow this convention.

593, 599 (5th Cir. 2021) (same). As such, Issa's claims under Chapter 21 of the Texas Labor Code are barred by sovereign immunity. *See* Dkt. #4 at ¶¶ 50–54 (Count 2); *id.* at ¶¶ 61–66 (Count 4); *id.* at ¶¶ 72–76 (Count 6); *id.* at ¶¶ 180–85 (Count 27); *id.* at ¶¶ 195–203 (Count 29); *id.* at ¶¶ 211–17 (Count 31). TDCJ respectfully asks the Court to dismiss the Texas Labor Code claims for lack of subject-matter jurisdiction.

      **3.    The ADA claims are barred by TDCJ's sovereign immunity (Counts 26, 28, and 30).**

Issa's ADA claims are also barred. Title I of the ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112. The ADA further provides that "[a] State shall not be immune" from suits under the Act because of sovereign immunity. 42 U.S.C. § 12202. However, Congress has the power to abrogate sovereign immunity only where it "acts pursuant to a valid grant of constitutional authority." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). The Supreme Court has held that Congress did not act pursuant to a valid grant of constitutional authority when enacting Title I of the ADA, and therefore did not abrogate the State's sovereign immunity. *Id.* at 365–74. The State of Texas has also not waived its immunity from suit under the ADA. *Perez*, 307 F.3d at 332; *Sullivan*, 986 F.3d at 597–99. As such, Issa's ADA claims are barred by sovereign immunity. *See* Dkt. #4 at ¶¶ 174–79 (Count 26); *id.* at ¶¶ 186–94 (Count 28); *id.* at ¶¶ 204–10 (Count 30). TDCJ respectfully asks the Court to dismiss the ADA claims for lack of subject-matter jurisdiction.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Standard of Review

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

#### B. Arguments & Authorities

##### 1. Issa fails to state a claim for disparate treatment based on sex (Count 1).

"At the Rule 12(b)(6) stage, [the Court's] analysis of the Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 [] (2002)—and not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973)." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). "There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (internal quotations omitted, emphasis in original). Here, Plaintiff has not pleaded a plausible disparate treatment claim because she has not alleged facts that create the reasonable inference either (1) that TDCJ took an adverse employment action against her, or (2) that the reason was because of her sex. *See id.*

The phrase "adverse employment action" is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014). In the context of intentional discrimination under Title VII, the Fifth Circuit applies a "strict interpretation of the adverse employment element." *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir. 2004). Only so-called "ultimate employment decisions" qualify—"an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* (quoting *Banks v. East Baton Rogue Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

Here, TDCJ allegedly had a policy that prohibited a correctional employee from leaving their assigned security post until properly relieved. Dkt. #4 at ¶ 24. "[D]ue to [this] policy, Plaintiff-Issa could not leave her post until a replacement was in place." *Id.* As a result, she was not permitted to leave her post between 8:30 PM, when she requested permission from TDCJ to leave her post mid-shift, and 11:00 PM when another employee arrived to replace her. *Id.* at ¶¶ 18–24, 35. "A manager's denial of a request to leave work immediately is [] not an ultimate employment decision." *McElroy v. PHM Corp.*, 622 F. App'x 388, 391 (5th Cir. 2015) (per curiam). Even in the context of a retaliation claim, in which the standard is less demanding, *see McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007), the Fifth Circuit holds that "'[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time.'" *Id.* (quoting *Ogden v. Potter*, 397 F. App'x 938, 939 (5th Cir. 2010) (per curiam)). As a matter of law, a two-and-a-half-hour delay in allowing Issa to leave her shift is not an ultimate employment decision. As such, Issa has not alleged facts that create the reasonable inference that TDCJ took an adverse employment action against her.

7

But even if the denial of a request to leave work immediately were actionable, the factual allegations do not create the reasonable inference that TDCJ did not allow Issa to leave her shift early *because of* her sex.[2] *See Cicalese*, 924 F.3d at 767. Issa concedes that TDCJ has a policy that does not allow any correctional officers to leave their assigned security post until properly relieved. *See* Dkt. #4 at ¶ 24. The pleadings specifically allege that the reason "Plaintiff Issa could not leave her post" was "[d]ue to [this] policy." *Id.* And the factual allegations do not create the reasonable inference that the reason TDCJ could not find another employee to relieve Issa between 8:30 PM and approximately 11:00 PM was *because of* her sex. *See generally id.* at ¶¶ 14–35. Put another way, the factual allegations do not create the reasonable inference that if Issa had been a man and reported experiencing pain and said that he really needed to go to the hospital due to the pain he was experiencing, Lt. Thompson would have told Issa that he could leave his shift before his replacement arrived at 11:00 PM. *See id.*

TDCJ anticipates that Issa will argue that she has alleged a plausible disparate treatment claim based on her assertion that, "[b]ased on information and belief, Defendant-TDCJ has granted the accommodation of being able to leave to other employees similar in their ability or inability to work who were experiencing non-pregnancy related medical emergencies." *See* Dkt. #4 at ¶ 48. Tellingly, Plaintiffs do not include the allegation in the "Facts" section. *Compare id.* at ¶¶ 14–44, *with id.* at ¶ 48. While internal organization does not control the analysis, there is a

---

[2] Plaintiffs' First Amended Complaint labels this claim "disparate treatment, sex" but describe the protected category as "woman affected by pregnancy." *Compare* Dkt. #4 at p. 7, *with id.* at ¶ 46. Because the Pregnancy Discrimination Act modified Title VII's definition of "because of sex" to include actions taken because of or on the basis of pregnancy, childbirth, or related medical conditions, *see* 42 U.S.C. § 2000e(k), the terms "sex" and "pregnancy" may be treated as synonymous for the purpose of this motion.

reason that Plaintiffs' carefully-structured pleading puts this contention in the "Causes of Action" section rather than the "Facts" section. For purpose of the Rule 12(b)(6) analysis, it is a legal conclusion, not a factual allegation.

In the context of Rule 12(b)(6), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Applying that standard here, a vague contention that unspecified male correctional officers who worked at unspecified prisons were permitted to leave their shifts when experiencing unspecified non-pregnancy medical emergencies amounts to little more than a recitation of a prima facie element. *See Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) ("To establish a prima facie case [of discrimination], [the plaintiff] must demonstrate . . . in the case of disparate treatment, that similarly situated employees were treated more favorably."). Plaintiffs' "naked assertion" lacks the requisite "factual enhancement" required to support the complaint. *See Iqbal*, 556 U.S. at 578. The assertion is not entitled to deference.

The contention also does not make Issa's disparate treatment claim more plausible. According to the pleadings, a Lieutenant and possibly Assistant Warden made a personnel decision not to allow a correctional officer to leave her post until a replacement arrived: a two-and-half-hour delay that occurred at night (when finding a replacement would be more difficult). If a different manager made a different personnel decision at a different prison unit, that does not make it more likely that Lt. Thompson or Assistant Warden Hooper were motivated by Issa's sex on the night of November 15, 2021. Indeed, in the context of the prima facie elements, only employees with the

9

same supervisor are considered similarly situated—permitting an inference of discriminatory intent. *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216–18 (5th Cir. 2016). So too here. And even the conclusory assertion does not contend that *Lt. Thompson or Assistant Warden Hooper* treated a male correctional officer more favorably under nearly identical circumstances. *See* Dkt. #4 at ¶ 48.

For all these reasons, the allegations do not create the reasonable inference that TDCJ was motivated by Issa's sex, she fails to plausibly allege that TDJC did not allow her to leave her post prior to 11 PM because of her sex. Both because TDCJ's initial denial of Issa's request to leave work immediately is not an ultimate employment decision under Title VII as a matter of law and because the factual allegations do not create the reasonable inference that TDCJ was motivated by sex, Plaintiffs fail to allege a plausible disparate treatment claim. Therefore, TDCJ respectfully asks the Court to dismiss Count 1.

    **2.    Issa fails to state a claim for a sex-based hostile work environment (Count 3).**

Plaintiffs also fails to state a claim for a sex-based hostile work environment. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). "There are five elements necessary to set forth a hostile environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome [] harassment; (3) that the harassment was based on [the protected class]; (4) that the harassment affected a 'term, condition, or privilege' of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action." *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 873 (5th Cir. 1999); *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). Here, Plaintiffs' First Amended

Complaint does not plausibly allege that (a) Issa was subject to unwelcome harassment, (b) the putative harassment was based on her sex, or (c) that the putative harassment affected a term, condition, or privilege of employment.

Plaintiffs allege that Lt. Hooper told Issa that she would send someone to replace her after Issa reported experiencing pain and asked for permission to leave work. Dkt. #4 at ¶¶ 21–23. Later, Lt. Thompson allegedly told Issa that she could not leave because the warden said so, despite her repeatedly telling him about her pain. *Id.* at ¶¶ 27–34. Issa does not allege she interacted with any other TDCJ employees before leaving her shift. *See id.* at ¶¶ 21–25. As such, her "accusations, even if taken as true, are not of a character or kind of conduct encompassed by actionable harassment." *See Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 698 F. Supp.2d 730, 749 (S.D. Tex. 2010). "Plaintiffs focus primarily on discrete acts and employment decisions that give rise to disparate treatment claims." *Id.* Plaintiffs do not allege that TDCJ employees made any sexist comments or anything of that nature—it is instead their decision "not [to] allow[] [Issa] to leave her employment post" that they contend created a sex-based hostile work environment. *See* Dkt. #4 at ¶ 56. Issa's contention regarding her denied request to leave her shift is more appropriately suited for a traditional discrimination or disparate treatment claim because it does not involve intimidation, ridicule, insult, or unwelcome verbal or physical advances. *See Collins-Pearcy*, 698 F. Supp.2d at 749.

Assuming Lt. Hooper or Lt. Thompson's conduct can be characterized as "harassment" for purposes of a hostile work environment claim, Plaintiffs do not plausibly allege that the conduct was based on Issa's sex. Incidents of harassment will not support a hostile work environment claim unless a factfinder could reasonably conclude that the harassment was motivated by animus related

to the plaintiff's protected class. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting that harassment between men and women using words with sexual content or connotations is not automatically discriminatory; the question is whether the plaintiff is exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed). Plaintiffs have not plausibly alleged that Lt. Hooper or Lt. Thompson's communications were motivated by animus related to Issa's protected class.

Finally, as a matter of law, TDCJ's putative harassment did not affect a term, condition, or privilege of employment. The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale*, 523 U.S. at 80). "[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019) (internal quotation marks omitted). There must be "discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (internal quotation marks and alterations omitted). Although no single factor is determinative, courts look to "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the complained-of conduct undermines the plaintiff's

12

workplace competence." *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 618 (5th Cir. 2020) (internal quotes omitted).

Reviewing the standard for actionable harassment only further reemphasizes that Plaintiffs are attempting to fit the proverbial "square peg" of their factual allegations into the "square hole" of a hostile work environment claim. The gravamen of their complaint is that Issa should have been permitted to depart her shift earlier, not that she was sexually harassed while working it. *See* Dkt. #4 at ¶¶ 14–36. The "harassment" of Lt. Hooper or Lt. Thompson in conveying the personnel decision is not sufficiently severe or pervasive to alter the conditions of Issa's employment. The verbal communications were not frequent (the whole incident lasting only two-and-half hours), the verbal communications were not severe (being told "no" without disparaging remarks or mockery), the verbal communications were not physically threatening or humiliating, the verbal communications did not unreasonably interfere with Issa's work performance, and the verbal communications did not undermine her workplace competence. And to the extent Issa attempts to conflate the verbal communications with the consequence of what was being communicated—the decision not to allow her to leave her post until her replacement arrived a couple hours later—that decision has already been raised as the putative adverse employment action for Issa's disparate treatment claim (Count 1).

For all these reasons, Issa does not allege a plausible sex-based hostile work environment. TDCJ respectfully asks the Court to dismiss Count 3.

### 3. Issa fails to state a claim for sex-based disparate impact (Count 5).

Finally, Issa sues TDCJ under a disparate impact theory. *See* Dkt. #4 at ¶¶ 67–71. In successful disparate impact cases, "facially neutral employment practices that have significant adverse effects on protected groups have been held to violate the Act without proof that the

employer adopted those practices with a discriminatory intent." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986–87 (1988) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)). Disparate impact cases usually focus on "statistical disparities, rather than specific incidents, and on competing explanations for those disparities." *Id.* Here, based on the facts alleged, Issa has not pleaded a plausible disparate impact claim. She has not alleged facts that create the reasonable inference that TDCJ's facially-neutral-policy requiring a replacement before a correctional officer can leave their post has caused a meaningful (or statistically significant) disparity between male and female correctional officers.

In the context of a motion to dismiss a disparate impact claim, "although a plaintiff need not plead a prima facie case at this stage of the proceedings, she must still allege facts to show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class in order to state a disparate impact claim." *Tate v. Dallas Indep. Sch. Dist.*, No. 3:21-CV-0895, 2022 WL 272711, at *9 (N.D. Tex. Jan. 10, 2022) (internal quotes omitted). "A plaintiff 'cannot merely allege a disparate impact, or point to a generalized policy that leads to such an impact.'" *Id.* (quoting *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 257 (N.D. Tex. 2011)). "Rather, the plaintiff is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Id.* (quoting *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 656 (1989) (superseded by statute on other grounds)).

Plaintiffs' pleadings assert the conclusory allegation that TDCJ's facially-neutral policy "whereby correctional officers could not leave their post until a replacement was in place" "disparately impacted Plaintiff-Issa on the basis of sex." Dkt. #4 at ¶¶ 68–70. Plaintiffs do not allege any statistics regarding how TDCJ's facially neutral policy has impacted other employees.

*See Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 813 (5th Cir. 1996) (providing that to prevail on a disparate-impact claim, a plaintiff must "isolate and identify a particular employment practice which is the cause of the disparity and provide evidence sufficient to raise an inference of causation"). Indeed, Plaintiffs do not allege that the policy has ever impacted another female TDCJ employee in the same way it impacted Issa or even that a similar situation has ever happened before. *See* Dkt. #4 at ¶¶ 14–44, 68–70.

Plaintiffs do not contend that the challenged policy has had disparate impact on women (or pregnant women), not even as a naked assertion. *See* Dkt. #4 at ¶¶ 67–71. The pleadings simply twice assert that the policy "disparate impacted Plaintiff-Issa on the basis of sex." *Id.* at ¶¶ 70–71. Asserting that a policy had a disparate impact *on the plaintiff* is insufficient to plead a plausible disparate impact claim. *See Tate*, 2022 WL 272711, at *9 ("Notably, Plaintiff does not allege that other [members of her protected class] had been denied employment [because of the challenged policy]" and "[h]er general and conclusory allegations are insufficient to state a claim for [] discrimination based on disparate impact."); *Bannister v. Dal-Tile Intern., Inc.*, No. 3:02-CV-2498, 2033 WL 21145739, at *2–3 (N.D. Tex. 2003) (dismissing a disparate impact claim under Rule 12(b)(6) in part because the plaintiff had not "alleged in any way that her Title VII protected class ha[d] been disproportionately affected—much less in a way that is statistically significant—by a facially neutral employment practice or policy implemented by [the defendant]"). As Plaintiffs have not alleged "observed disparities" between men and women with regards to a neutral policy, which naturally must precede the "systemic analysis" of those disparities required "to establish [Issa's] [disparate impact] case," *see Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000), they have not alleged a plausible claim.

For all these reasons, Issa does not allege a plausible disparate impact claim. TDCJ respectfully asks the Court to dismiss Count 5.

## IV.   PRAYER

For all these reasons, TDCJ respectfully asks the Court to dismiss Issa's Texas Labor Code, ADA, and Title VII claims against it.

Date: December 9, 2022                                   Respectfully Submitted,

KEN PAXTON                                               /s/ *Benjamin L. Dower*
Attorney General of Texas                                BENJAMIN L. DOWER
                                                         Special Litigation Counsel
BRENT WEBSTER                                            Texas Bar No. 24082931
First Assistant Attorney General                         Attorney-in-Charge
                                                         Benjamin.Dower@oag.texas.gov
GRANT DORFMAN
Deputy First Assistant Attorney General                  Office of the Attorney General
                                                         Law Enforcement Defense Division
SHAWN COWLES                                             P.O. Box 12548, Capitol Station
Deputy Attorney General for Civil Litigation             Austin, Texas 78711-2548
                                                         (512) 463-2080 / Fax (512) 370-9994
SHANNA MOLINARE
Chief, Law Enforcement Defense Division                  **ATTORNEYS FOR DEFENDANTS TDCJ,
                                                         LT. THOMPSON, AND ASSISTANT WARDEN
                                                         HAMMOND**

## CERTIFICATE OF SERVICE

I, BENJAMIN L. DOWER, certify that a true and correct copy of the foregoing document was filed and served via the Court's CM/ECF document filing system on December 9, 2022 to:

Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd
Bldg 1, Ste 250
Austin, TX 78735
512-733-5151
Fax: 815-895-4070
Email: ross@cronauerlaw.com
**ATTORNEY FOR PLAINTIFFS**

/s/ *Benjamin L. Dower*
BENJAMIN L. DOWER
Special Litigation Counsel
Office of the Attorney General of Texas