| | | |
|---|---|---|
| SALIA ISSA, FISTON RUKENGEZA, *et al.* | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-1107-LY |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § | |
| *et al.* | § | |
|     *Defendants.* | § | |

### DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE LEE YEAKEL:

Defendant Texas Department of Criminal Justice ("TDCJ") respectfully asks the Court to dismiss the claims brought against it by Plaintiff Salia Issa ("Issa"). Per Plaintiffs' pleadings, during the relevant timeframe, TDCJ employed Issa as a correctional officer. TDCJ policy prohibits a correctional officer from leaving their assigned security post until relieved by another officer. Plaintiffs allege that, pursuant to this policy, a lieutenant and assistant warden did not permit Issa to leave her security post between 8:30 PM and 11:00 PM. While this decision ultimately resulted in tragic consequences, Plaintiffs have not plausibly alleged facts creating the reasonable inference that TDCJ's actions amounted to unlawful sex discrimination under Title VII of the Civil Rights Act of 1964, disability discrimination under the Rehabilitation Act, or violated the FMLA's family-care provision. And Plaintiffs' state law claims against TDCJ are barred by sovereign immunity. TDCJ asks the Court to dismiss the claims against it (Counts 1–6 and 26–31) and, in support, would respectfully show the Court as follows:

## I.    PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs' Second Amended Complaint presents thirty-one (31) claims against four defendants. *See* Dkt. #18. Against TDCJ, Issa brings the following twelve (12) claims which arise under either Title VII of the Civil Rights Act of 1964 ("Title VII"), Chapter 21 of the Texas Labor Code, the Rehabilitation Act, or the Family Medical Leave Act ("FMLA"):

| PLAINTIFF'S CLAIMS AGAINST TDCJ (per Dkt. #18 at pp. 2–3) | | |
|---|---|---|
| COUNT | PLAINTIFF | CAUSE OF ACTION |
| 1 | Issa | Title VII (disparate treatment based on sex) |
| 2 | Issa | Texas Labor Code (disparate treatment based on sex) |
| 3 | Issa | Title VII (hostile work environment based on sex) |
| 4 | Issa | Texas Labor Code (hostile work environment based on sex) |
| 5 | Issa | Title VII (disparate impact based on sex) |
| 6 | Issa | Texas Labor Code (disparate impact based on sex) |
| 26 | Issa | Texas Labor Code (denial of reasonable accommodation) |
| 27 | Issa | Texas Labor Code (hostile work environment based on disability) |
| 28 | Issa | Texas Labor Code (disparate impact based on disability) |
| 29 | Issa | Rehabilitation Act (denial of a reasonable accommodation) |
| 30 | Issa | Rehabilitation Act (hostile work environment) |
| 31 | Issa | FMLA (family-care provision) |

## II.    MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

### A.    Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a [Federal] Rule [of Civil Procedure] 12(b)(1) motion to dismiss is on the party asserting jurisdiction," and, at the pleading stage, the plaintiff's "'burden is to allege a plausible set of facts establishing jurisdiction.'" *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021) (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)).

**B.     Arguments & Authorities**

    **1.     The Texas Labor Code claims are barred by TDCJ's sovereign immunity (Counts 2, 4, 6, 26–28)**

"[F]or over a century now, [the Supreme Court has] made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). "[A]bsent waiver by the State or valid congressional override, the [sovereign immunity] bars a damages action against a State in federal court."[1] *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). "Even in cases where the State itself is not a named defendant, the State's [sovereign] immunity will extend to any state agency or other political entity that is deemed the 'alter ego' or an 'arm' of the State." *Vogt v. Bd. of Commissioners of the Orleans Levee District*, 294 F.3d 684, 688–89 (5th Cir. 2002) (citing *Regents of the Univ. of California v. Doe*, 519 US 425, 429 (1997)); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). "TDCJ is an arm of the state of Texas and thus entitled to sovereign immunity." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021); *see also* Dkt. #18 at ¶ 1 ("Defendant-TDCJ is an agency of the State of Texas.").

    Chapter 21 of the Texas Labor Code, which prohibits employment discrimination, "does not expressly waive sovereign immunity in *federal* court." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) (emphasis in original); *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 599 (5th Cir. 2021) (same). As such, Issa's claims under Chapter 21 of the Texas Labor Code are barred by sovereign immunity. *See* Dkt. #18 at ¶¶ 64–69 (Count 2); *id.* at ¶¶ 78–85 (Count 4); *id.* at ¶¶ 93–99 (Count 6); *id.* at ¶¶ 197–202 (Count 26); *id.* at ¶¶ 203–13 (Count 27); *id.* at

---

[1] "[T]he Supreme Court has often used 'Eleventh Amendment immunity' as a synonym for the States' broader constitutional sovereign immunity." *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 596 n.1 (5th Cir. 2021). This motion uses the more accurate term "sovereign immunity."

¶¶ 214–22 (Count 28). TDCJ respectfully asks the Court to dismiss the Texas Labor Code claims for lack of subject-matter jurisdiction.

### III.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**A.     Standard of Review**

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

**B.     Arguments & Authorities**

**1.     Issa fails to state a claim for disparate treatment based on sex (Count 1).**

"At the Rule 12(b)(6) stage, [the Court's] analysis of the Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 [] (2002)—and not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973)." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). "There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (internal quotations omitted, emphasis in original). Here, Plaintiff has not pleaded a plausible disparate treatment claim because she has not alleged facts that create the reasonable

inference either (1) that TDCJ took an adverse employment action against her, or (2) that the reason was because of her sex. *See id.*

The phrase "adverse employment action" is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014). In the context of intentional discrimination under Title VII, the Fifth Circuit applies a "strict interpretation of the adverse employment element." *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir. 2004). Only so-called "ultimate employment decisions" qualify—"an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." *Id.* (quoting *Banks v. East Baton Rogue Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

Here, TDCJ allegedly had a policy that prohibited a correctional employee from leaving their assigned security post until properly relieved. Dkt. #18 at ¶ 27. Due to this policy, Issa was prevented from leaving her post mid-shift between 8:30 PM and 11:00 PM. *Id.* at ¶¶ 26–41. "A manager's denial of a request to leave work immediately is [] not an ultimate employment decision." *McElroy v. PHM Corp.*, 622 F. App'x 388, 391 (5th Cir. 2015) (per curiam). Even in the context of a retaliation claim, in which the standard is less demanding, *see McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007), the Fifth Circuit holds that "'[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time.'" *Id.* (quoting *Ogden v. Potter*, 397 F. App'x 938, 939 (5th Cir. 2010) (per curiam)). As a matter of law, a two-and-a-half-hour delay in allowing Issa to leave her shift is not an ultimate employment decision. As such, Issa has not alleged facts that create the reasonable inference that TDCJ took an adverse employment action against her.

But even if the denial of a request to leave work immediately were actionable, the factual allegations do not create the reasonable inference that TDCJ did not allow Issa to leave her shift early *because of* her sex. *See Cicalese*, 924 F.3d at 767. Issa concedes that TDCJ has a policy that does not allow correctional officers to leave their assigned security post until properly relieved and that she was permitted to leave once her replacement arrived. *See* Dkt. #18 at ¶ 26. The factual allegations do not create the reasonable inference that the reason TDCJ did not assign another employee to relieve Issa between 8:30 PM and approximately 11:00 PM was *because of* her sex. *See generally id.* at ¶¶ 22–42. Put another way, the factual allegations do not create the reasonable inference that if Issa had been a man who reported experiencing pain and said that he really needed to go to the hospital due to the pain he was experiencing, Lt. Thompson would have told Issa that he could leave his shift before his replacement arrived at 11:00 PM or summoned a replacement faster than he did. *See id.*

Admittedly, after reviewing TDCJ's argument for dismissing Plaintiffs' First Amended Complaint, Dkt. #8, the pleadings have been bolstered with new allegations that at unspecified times in unspecified units, TDCJ has permitted other employees to leave their shifts early while experiencing non-pregnancy related emergencies and sent medical assistance to other employees during non-pregnancy medical emergencies. *See* Dkt. #18 at ¶¶ 55–56. These allegations are too conclusory to be entitled to deference.

In the context of Rule 12(b)(6), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Applying that

standard here, a vague contention that unspecified male correctional officers who worked at unspecified prisons were permitted to leave their shifts when experiencing unspecified non-pregnancy medical emergencies amounts to little more than a recitation of a prima facie element. *See Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) ("To establish a prima facie case [of discrimination], [the plaintiff] must demonstrate . . . in the case of disparate treatment, that similarly situated employees were treated more favorably."). Plaintiffs' "naked assertion" lacks the requisite "factual enhancement" required to support the complaint. *See Iqbal*, 556 U.S. at 578. The assertion is not entitled to deference.

The contention also does not make Issa's disparate treatment claim more plausible. According to the pleadings, a Lieutenant and possibly Assistant Warden made a personnel decision not to allow a correctional officer to leave her post until a replacement arrived: a two-and-half-hour delay that occurred at night (when finding a replacement would be more difficult). If a different manager made a different personnel decision at a different prison unit, that does not make it more likely that Lt. Thompson or Assistant Warden Hooper were motivated by Issa's sex on the night of November 15, 2021. Indeed, in the context of the prima facie elements, only employees with the same supervisor are considered similarly situated—permitting an inference of discriminatory intent. *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216–18 (5th Cir. 2016). So too here. Issa does not contend that *Lt. Thompson or Assistant Warden Hooper* treated a male correctional officer more favorably under nearly identical circumstances.

For all these reasons, the allegations do not create the reasonable inference that TDCJ was motivated by Issa's sex, and she fails to plausibly allege that TDJC did not allow her to leave her post prior to 11 PM because of her sex. Both because TDCJ's initial denial of Issa's request to

leave work immediately is not an ultimate employment decision under Title VII as a matter of law and because the factual allegations do not create the reasonable inference that TDCJ was motivated by sex, Plaintiffs fail to allege a plausible disparate treatment claim. Therefore, TDCJ respectfully asks the Court to dismiss Count 1.

### 2. Issa fails to state a claim for a sex-based hostile work environment (Count 3).

Plaintiffs also fail to state a claim for a sex-based hostile work environment. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). "There are five elements necessary to set forth a hostile environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome [] harassment; (3) that the harassment was based on [the protected class]; (4) that the harassment affected a 'term, condition, or privilege' of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action." *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 873 (5th Cir. 1999); *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). Here, Plaintiffs' Second Amended Complaint does not plausibly allege that (a) Issa was subject to unwelcome harassment, (b) the putative harassment was based on her sex, or (c) that the putative harassment affected a term, condition, or privilege of employment.

Plaintiffs allege that Lt. Hooper told Issa that she would send someone to replace her after Issa reported experiencing pain and asked for permission to leave work. Dkt. #18 at ¶¶ 19–25. Lt. Thompson allegedly told Issa that she could not leave because the warden said so, despite her repeatedly telling him about her pain. *Id.* at ¶¶ 30–40. These "accusations, even if taken as true,

are not of a character or kind of conduct encompassed by actionable harassment." *See Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 698 F. Supp.2d 730, 749 (S.D. Tex. 2010). "Plaintiffs focus primarily on discrete acts and employment decisions that give rise to disparate treatment claims." *Id.* Issa's contention regarding her denied request is more appropriately suited for a disparate treatment claim because it does not involve intimidation, ridicule, insult, or unwelcome verbal or physical advances. *See id.* at 749. But, as previously discussed, plaintiffs fail to allege a plausible disparate treatment claim. *See* discussion, *supra*.

Assuming Lt. Hooper or Lt. Thompson's conduct can be characterized as "harassment" for purposes of a hostile work environment claim, Plaintiffs do not plausibly allege that the conduct was based on Issa's sex. Incidents of harassment will not support a hostile work environment claim unless a factfinder could reasonably conclude that the harassment was motivated by animus related to the plaintiff's protected class. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting that harassment between men and women using words with sexual content or connotations is not automatically discriminatory; the question is whether the plaintiff is exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed). Plaintiffs have not plausibly alleged that Lt. Hooper or Lt. Thompson's communications or conduct were motivated by animus related to Issa's protected class.

Plaintiffs' Second Amended Complaint adds one new allegation regarding verbal conduct: that Lt. Thompson accused Issa of lying about her need to leave her shift by "saying words to the effect of, 'You just got here,' 'You're just lying,' and 'You just want to go home.'" Dkt. #18 at ¶ 40. But this conduct, while blunt to the point of rudeness, does not implicate a protected class or

suggest an illegal motive. Nor, as discussed below, is it sufficient to alter a term, condition, or privilege of employment.

The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale*, 523 U.S. at 80). "[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826 (5th Cir. 2019) (internal quotation marks omitted). There must be "discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment." *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (internal quotation marks and alterations omitted). Although no single factor is determinative, courts look to "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the complained-of conduct undermines the plaintiff's workplace competence." *Id.* at 618 (internal quotes omitted).

The "harassment" of Lt. Hooper or Lt. Thompson in conveying the personnel decision is not sufficiently severe or pervasive to alter the conditions of Issa's employment. The verbal communications were not frequent (the whole incident lasting only two-and-half hours), the verbal communications were not severe (being told "no" with overt incredulity regarding the request), the verbal communications were not physically threatening or humiliating, the verbal communications did not unreasonably interfere with Issa's work performance, and the verbal

communications did not undermine her workplace competence. And to the extent Issa attempts to conflate the verbal communications with the consequence of what was being communicated—the decision not to allow her to leave her post until her replacement arrived a couple hours later—that decision has already been raised as the putative adverse employment action for Issa's disparate treatment claim (Count 1).

For all these reasons, Issa does not allege a plausible sex-based hostile work environment. TDCJ respectfully asks the Court to dismiss Count 3.

### 3. Issa fails to state a claim for sex-based disparate impact (Count 5).

Issa also sues TDCJ under a disparate impact theory. Dkt. #18 at ¶¶ 86–92. In successful disparate impact cases, "facially neutral employment practices that have significant adverse effects on protected groups have been held to violate the Act without proof that the employer adopted those practices with a discriminatory intent." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986–87 (1988) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)). Disparate impact cases usually focus on "statistical disparities, rather than specific incidents, and on competing explanations for those disparities." *Id.* Here, based on the facts alleged, Issa has not pleaded a plausible disparate impact claim. She has not alleged facts that create the reasonable inference that TDCJ's facially-neutral-policy requiring a replacement before a correctional officer can leave their post has caused a meaningful (or statistically significant) disparity between male and female correctional officers.

In the context of a motion to dismiss a disparate impact claim, "although a plaintiff need not plead a prima facie case at this stage of the proceedings, she must still allege facts to show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class in order to state a disparate impact claim." *Tate v. Dallas Indep. Sch. Dist.*, No. 3:21-CV-0895,

2022 WL 272711, at *9 (N.D. Tex. Jan. 10, 2022) (internal quotes omitted). "A plaintiff 'cannot merely allege a disparate impact, or point to a generalized policy that leads to such an impact.'" *Id.* (quoting *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 257 (N.D. Tex. 2011)). "Rather, the plaintiff is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Id.* (quoting *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 656 (1989) (superseded by statute on other grounds)).

Plaintiffs' pleadings make the conclusory allegation that TDCJ's facially-neutral policy "whereby correctional officers could not leave their post until a replacement was in place" "disparately impacted Plaintiff-Issa on the basis of sex." Dkt. #18 at ¶¶ 87–89. Plaintiffs do not allege any statistics regarding how TDCJ's facially neutral policy has impacted other employees. *See Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 813 (5th Cir. 1996) (providing that to prevail on a disparate-impact claim, a plaintiff must "isolate and identify a particular employment practice which is the cause of the disparity and provide evidence sufficient to raise an inference of causation"). Indeed, Plaintiffs do not allege that the policy has ever impacted another female TDCJ employee in the same way it impacted Issa or even that a similar situation has ever happened before. *See* Dkt. #18 at ¶¶ 14–57.

The pleadings assert that the policy "disparately impacted Plaintiff-Issa on the basis of sex." Dkt. #18 at ¶ 92. Asserting that a policy had a disparate impact *on the plaintiff* is insufficient to plead a plausible disparate impact claim. *See Tate*, 2022 WL 272711, at *9 ("Notably, Plaintiff does not allege that other [members of her protected class] had been denied employment [because of the challenged policy]" and "[h]er general and conclusory allegations are insufficient to state a claim for [] discrimination based on disparate impact."); *Bannister v. Dal-Tile Intern., Inc.*, No.

3:02-CV-2498, 2033 WL 21145739, at *2–3 (N.D. Tex. 2003) (dismissing a disparate impact claim under Rule 12(b)(6) in part because the plaintiff had not "alleged in any way that her Title VII protected class ha[d] been disproportionately affected—much less in a way that is statistically significant—by a facially neutral employment practice or policy implemented by [the defendant]"). As Plaintiffs have not alleged "observed disparities" between men and women with regards to a neutral policy, which naturally must precede the "systemic analysis" of those disparities required "to establish [Issa's] [disparate impact] case," *see Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000), they have not alleged a plausible claim.

For all these reasons, Issa does not allege a plausible disparate impact claim. TDCJ respectfully asks the Court to dismiss Count 5.

### 4. Issa fails to state a claim for a violation of the family-care provision of the FMLA (Count 31)

In Count 31, Issa contends that TDCJ violated the FMLA's family-care provision. *See* Dkt. #18 at ¶¶ 245–56. But the factual allegations make clear that Issa sought to depart her shift because of her own serious health condition, *not* because of the serious health condition of a spouse, son, daughter, or parent. *See id.* at ¶¶ 19–23. As such, Issa fails to state a claim for family-care under the FMLA. Issa also fails to state a claim because she did not tell her supervisor that she was sick due to complications in her pregnancy and did not assert that she clearly linked her sickness and her pregnancy.

The FMLA prohibits employers from "interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615. Eligible employees are entitled to "a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (C) In order to care for the spouse, or a son, daughter, or

parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition[;] (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(C)–(D). "[S]erious health condition . . . means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a). In turn, "[i]npatient care means an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in § 825.113(b), or any subsequent treatment in connection with such inpatient care." *Id.* § 825.114. And "continuing treatment by a healthcare provider" includes "[a]ny period of incapacity due to pregnancy, or for prenatal care." *Id.* § 825.115(b).

Issa's FMLA family-care claim explicitly invokes 29 U.S.C. § 2612(a)(1)(C), which only applies if the leave is sought "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." But Issa did not seek leave to care for the serious health condition of a spouse, son, daughter, or parent. Instead, she requested permission to depart based on her own physical condition. Issa alleges that she informed Lt. Hooper "of the pain [she] was experiencing" and that she "needed to go to the hospital." Dkt. #18 at ¶¶ 19–23. She allegedly told Lt. Thompson that "she really needed to go to the hospital due to the pain she was experiencing," later reiterating this statement several times. *Id.* at ¶¶ 37–39. But she does not allege that she sought leave to care for anyone other than herself—to address her pain.

Issa may have been entitled to leave "[b]ecause of a serious health condition that [made] [her] unable to perform the functions of the position," 29 U.S.C. § 2612(a)(1)(D), but she was not

entitled to leave under the provision invoked by her pleadings, 29 U.S.C. § 2612(a)(1)(C), which applies to leave taken to care for a son or daughter. The distinction matters, not only because Issa fails to state a family-care claim, but also because TDCJ retains sovereign immunity for claims arising under the FMLA's provision regarding the employee's own serious health condition. *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 43–44 (2012). While the pleadings try to avoid this immunity by cramming the proverbial "square peg" of a self-care claim into the "round hole" of family-care, the claim simply does not fit. As the Supreme Court put it, it is "the self-care provision [that] offers some women a benefit by allowing them to take leave for pregnancy-related illnesses." *Id.* at 39. Self-care; not family-care.

Issa also fails to state a family-care claim based on, *inter alia*, lack of sufficient notice. To qualify for leave under the FMLA, the employee must provide "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). "Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job; that the employee is pregnant or has been hospitalized overnight; whether the employee or the employee's family member is under the continuing care of a health care provider; if the leave is due to a qualifying exigency, that a military member is on covered active duty or call to covered active duty status (or has been notified of an impending call or order to covered active duty), and that the requested leave is for one of the reasons listed in § 825.126(b); if the leave is for a family member, that the condition renders the family member unable to perform daily activities, or that the family member is a covered servicemember with a serious injury or illness; and the anticipated duration of the absence, if known." *Id.*

While it is the "employer's responsibility to designate leave . . . as FMLA-qualifying, 29 C.F.R. § 825.208(a)," "the employee '*must* explain the reasons for the needed leave.'" *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 419 (5th Cir. 2006) (quoting 29 C.F.R. § 825.208(a)(1), emphasis added by the Court). "This sharing of the informational burden will not work if employees, for the purposes of litigation, can later designate leave as FMLA-qualifying without making a proper showing that, at the time they requested leave, they put their employer on notice that FMLA leave was necessary due to a serious medical condition." *Id.* In the context of a malady brought on by pregnancy, the Fifth Circuit holds that "[a] complaint of sickness will not suffice as notice of a need to take FMLA leave," instead the employee must "link her sickness and her pregnancy" when providing notice. *Id.*

Reviewing the Federal Regulations implementing the FMLA and Fifth Circuit precedent only further emphasizes that Issa's recourse under the FMLA lies in the self-care provision. But setting that aside, Issa does not allege she communicated to her employer any information regarding the serious medical conditions of a family member. Dkt. #18 at ¶¶ 19–39. While she asserts the legal conclusion that her unborn child was suffering from a serious health condition requiring inpatient care at a hospital and continuing treatment by a healthcare provider, including but not limited to, lack of oxygen and difficulty breathing, she does not allege that she communicated any of this information to TDCJ. *See* Dkt. #18 at ¶253. Indeed, in the facts section, Issa does not even allege she mentioned her pregnancy when seeking to depart, much less communicated that she sought leave to care for a "son [or] daughter" who had "an illness, injury, impairment or physical or mental condition that involves inpatient [] or continuing treatment by a

health care provider. . . ." *Compare id.* at ¶¶ 19–39, *with* 29 C.F.R. § 825.113(a) (defining serious medical condition). Issa fails to state a claim under the FMLA.

### 5. Issa fails to state a claim for denial of a reasonable accommodation under the Rehabilitation Act (Count 29)

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). In "a complaint alleging employment discrimination under this section," the substantive standards are the same as under Title I of the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 794(d). "A failure-to-accommodate claim requires a showing that: '(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations.'" *Weber v. BNSF Railway Co.*, 989 F.3d 320, 323 (5th Cir. 2021). Here, Issa alleges that her "pregnancy emergency constituted her disability," as it impacted her ability to "concentrate, think, work, and perform other manual tasks," as well as impacting the operation of her reproductive functions. Dkt. #18 at ¶ 226. She characterizes her request "of being able to leave [work]" as an accommodation for this disability. *Id.* at ¶ 226. She fails to state a failure-to-accommodate claim for three reasons.

First, Issa's pregnancy emergency is not a disability for purposes of the Rehabilitation Act because it was a temporary, non-chronic impairment of extremely short duration. *See EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 619 (5th Cir. 2009). "Examples of temporary, non-disabling impairments include: broken limbs, sprained joints, concussions, appendicitis, and

influenza." *Id.* (internal quotes omitted). Issa's pregnancy emergency was a one-time occurrence that lasted only hours. *See* Dkt. #18 at ¶¶ 18–47. As such, the impairment brought on by that emergency does not qualify as a disability. *See Jochims v. Houston Methodist Sugar Land Hosp.*, Civ. A. No. 4:19-cv-04838, 2022 WL 772966, at *5 (S.D. Tex. 2022) (determining that an ailment which lasted 22 days was too short in duration to constitute a disability under the ADA) (report & rec adopted at 2022 WL 912917).

Second, Issa has not alleged facts that create the reasonable inference that she submitted a request for an accommodation under the Rehabilitation Act. The Rehabilitation Act uses the same substantive standard as Title I of the ADA—in this context, references to the ADA are effectively the same. *See Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 431 (5th Cir. 2016). With that in mind, "[a] request for a reasonable accommodation under the ADA is a claim that the employee 'with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Acker v. General Motors, LLC*, 853 F.3d 787, 791 (5th Cir. 2017) (quoting 42 U.S.C. § 12111(8)). Here, Issa alleges that she requested permission to leave her post immediately. She characterizes TDCJ granting her request to leave when a replacement arrived as a denial because TDCJ did not accommodate her by sending the replacement fast enough. *Compare* Dkt. #18 at ¶¶ 19–42, *with id.* ¶ 227.

Tellingly, Issa characterizes her request to depart the unit immediately as both a request for FMLA leave and a request for a reasonable accommodation under the Rehabilitation Act. *See* Dkt. #18 at ¶¶ 226, 249–51. But "a request for FMLA leave is not a request for a reasonable accommodation under the ADA." *Acker*, 853 F.3d at 791 "'FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory

provision.'" *Id.* (quoting *Harville v. Tex. A&M Univ.*, 833 F.Supp.2d 645, 661 (S.D. Tex. 2011)). "[O]nce [the plaintiff] contends she was eligible for FMLA leave, the FMLA controls the analysis." *Robles v. Eminent Med. Ctr., LLC*, --- F. Supp.3d ---, 2022 WL 3081827, *19 (N.D. Tex. August 3, 2022). As such, Issa's request to leave did not constitute a request for a reasonable accommodation under the Rehabilitation Act.

Third, Issa does not plausibly allege that TDCJ failed to make reasonable accommodations for a known limitation. "[T]he ADA requires employers to reasonably accommodate limitations, not disabilities." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). Issa alleges that she experienced pain, informed two lieutenants of her pain, and expressed her belief that she needed to go to the hospital. Dkt. #18 at ¶¶ 22–39. She does not allege that she told them that she was experiencing limitations for which she needed an accommodation to do her job. Moreover, although TDCJ did not allow Issa to leave her post when she made the request at 8:30 PM, by 11:00 PM she was permitted to leave. *See id.* at ¶¶ 41–42. Only "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee" does that employer violate the Rehabilitation Act. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). TDCJ did not refuse to engage in an interactive process, it simply did not grant Issa's request to *immediately* relieve her of all job duties and reassign another employee to perform those duties. An employer's duty to make reasonable accommodations does not require him to "relieve the employee of any essential functions of the job . . . or reassign existing employees . . . to perform those duties." *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998), *cert. denied*, 526 U.S. 1098 (1999). To the extent the Rehabilitation Act was implicated by Issa's request, TDCJ met its requirements.

### 6. Issa fails to state a claim for hostile work environment under the Rehabilitation Act (Count 30)

Finally, for much the same reasons that Issa fails to state a hostile work environment claim under Title VII, she also fails to state the claim in the context of the Rehabilitation Act. *See* Dkt. #18 at ¶¶ 232–44 (Count 30). To plead a hostile work environment claim under the Rehabilitation Act, Issa must allege facts that create the reasonable inference (1) that she had a disability; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based solely on her disability; and (4) that the harassment complained of affected a term, condition, or privilege of employment. *See Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 506, 506 n.8 (5th Cir. 2002). Issa's claim fails at every level.

For the reasons discussed above (at 18), TDCJ denies that Issa's pregnancy emergency constitutes a disability. Assuming a medical emergency lasting a few hours constitutes a disability, Plaintiffs have not alleged facts that create the reasonable inference that TDCJ harassed Issa solely because of her disability. Issa's complaint conflates a personnel decision not to allow her to leave her post with harassment. *See* Dkt. #18 at ¶ 236. But the allegations do not support the inference that TDCJ was solely motivated by disability when it took 2.5 hours to grant her request to depart the unit and that other factors—such as skepticism about whether she was really in pain or sheer bureaucratic obstinacy—played no role. Finally, as already discussed (at 10–11), the alleged harassment was not so severe or pervasive that it affected a term, condition, or privilege of Issa's employment. She fails to state a claim.

## IV.   PRAYER

For all these reasons, TDCJ respectfully asks the Court to dismiss Issa's claims against it under the Texas Labor Code, Title VII, Rehabilitation Act, and FMLA.

Date: January 26, 2023

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

*/s/ Benjamin L. Dower*
BENJAMIN L. DOWER
Special Litigation Counsel

BRENT WEBSTER
First Assistant Attorney General

Texas Bar No. 24082931
Attorney-in-Charge
Benjamin.Dower@oag.texas.gov

GRANT DORFMAN
Deputy First Assistant Attorney General

Office of the Attorney General
Law Enforcement Defense Division

SHAWN COWLES
Deputy Attorney General for Civil Litigation

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994

SHANNA MOLINARE
Chief, Law Enforcement Defense Division

**ATTORNEYS FOR DEFENDANTS TDCJ,
LT. HOOPER, LT. THOMPSON, AND
ASSISTANT WARDEN HAMMOND**

### CERTIFICATE OF SERVICE

I, BENJAMIN L. DOWER, certify that a true and correct copy of the foregoing document was

filed and served via the Court's CM/ECF document filing system on January 26, 2023 to:

Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd
Bldg 1, Ste 250
Austin, TX 78735
512-733-5151
Fax: 815-895-4070
Email: ross@cronauerlaw.com
**ATTORNEY FOR PLAINTIFFS**

*/s/ Benjamin L. Dower*
BENJAMIN L. DOWER
Special Litigation Counsel
Office of the Attorney General of Texas