IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SALIA ISSA, FISTON RUKENGEZA, *et al.* | § | |
|     *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-1107-LY |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § | |
| *et al.* | § | |
|     *Defendants*. | § | |

### DEFENDANTS LT. BRANDY HOOPER, LT. DESMOND THOMPSON, AND ASSISTANT WARDEN ALONZO HAMMOND'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE LEE YEAKEL:

Defendants Brandy Hooper ("Lt. Hooper"), Desmond Thompson ("Lt. Thompson"), and Alonzo Hammond ("Assistant Warden Hammond") (collectively, "Individual Defendants"), respectfully ask the Court to dismiss Plaintiffs' claims against them. Per Plaintiffs' pleadings, Plaintiff Salia Issa ("Issa") worked as a correctional officer employed by the Texas Department of Criminal Justice ("TDCJ"). TDCJ policy prohibits a correctional officer from leaving their assigned security post until relieved by another officer. Plaintiffs contend that Defendants violated 42 U.S.C. § 1983 because, pursuant to this policy, they did not permit Issa to leave her security post between 8:30 PM and 11:00 PM on November 15, 2021. While this decision ultimately resulted in tragic consequences, Individual Defendants are entitled to qualified immunity because—for each—it is not clearly established that their alleged conduct violated a right to equal protection, bodily integrity, to be a parent, or to life itself.

## I.    PLAINTIFF'S SECOND AMENDED COMPLAINT

**A.    Factual Allegations**

TDCJ has a policy that prohibits correctional officers from leaving their assigned security post until properly relieved by another officer. Dkt. #18 at ¶ 27. On the evening of November 15, 2021, Issa was working as a correctional officer at the John Middleton Unit. *Id*. at ¶¶ 15–16. She was seven months pregnant at that time. Id. at ¶ 17. At approximately 8:30 PM, Issa told one of her supervisors, Lt. Brandy Hooper, that she was experiencing pain and needed to go to the hospital. *Id*. at ¶¶ 20–23. Lt. Hooper told Issa that she (Hooper) would send someone to replace Issa. *Id*. at ¶ 24. Two minutes later, Lt. Desmond Thompson called Issa and told her that she could not leave because "the warden" said she could not leave. *Id*. at ¶¶ 30–35. Issa told Lt. Thompson she really needed to go to the hospital due to the pain and, in response, he reiterated again that she could not yet leave. *Id*. at ¶¶ 37–38. Issa called Lt. Thompson several more times and reiterated that she needed to go to the hospital, but he told her she could not leave, expressing incredulity about whether she was genuinely in pain or just wanted to leave work, noting that she had just arrived. *Id*. at ¶ 40. At approximately 11:00 PM, another officer arrived to relieve Issa. *Id*. at ¶ 41. Issa left and went to the hospital. *Id*. at ¶ 42. Once there, she began bleeding. *Id*. at ¶ 44. The fetus was eventually delivered stillborn. *Id*. at ¶ 41.

**B.    Plaintiffs' Claims Against Individual Defendants**

Based on these allegations, Plaintiffs' Second Amended Complaint (Dkt. #18) presents thirty-one (31) claims against four defendants. In addition to TDCJ, Plaintiffs sue three people in their individual capacities: Lt.  Brandy Hooper, Lt. Desmond Thompson, and Assistant Warden Alonzo Hammond. *Id*. at p. 1 (caption). Against Individual Defendants, Plaintiffs assert the following nineteen (19) claims, each under 42 U.S.C. § 1983:

| PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANTS (per Dkt. #18 at pp. 2–3) | | | |
|---|---|---|---|
| Count | Plaintiff | Defendant | Cause of Action |
| 7 | Issa | Lt. Hooper | 42 U.S.C. § 1983 (equal protection) |
| 8 | Issa | Lt. Thompson | 42 U.S.C. § 1983 (equal protection) |
| 9 | Issa | Assist. Warden Hammond | 42 U.S.C. § 1983 (equal protection) |
| 10 | Issa | Lt. Hooper | 42 U.S.C. § 1983 (bodily integrity) |
| 11 | Issa | Lt. Thompson | 42 U.S.C. § 1983 (bodily integrity) |
| 12 | Issa | Assist. Warden Hammond | 42 U.S.C. § 1983 (bodily integrity) |
| 13 | Issa | Lt. Hooper | 42 U.S.C. § 1983 (right to be a parent) |
| 14 | Issa | Lt. Thompson | 42 U.S.C. § 1983 (right to be a parent) |
| 15 | Issa | Assist. Warden Hammond | 42 U.S.C. § 1983 (right to be a parent) |
| 16 | Issa | Assist. Warden Hammond | 42 U.S.C. § 1983 (supervisory liability) |
| 17 | Rukengeza | Lt. Hooper | 42 U.S.C. § 1983 (right to be a parent) |
| 18 | Rukengeza | Lt. Thompson | 42 U.S.C. § 1983 (right to be a parent) |
| 19 | Rukengeza | Assist. Warden Hammond | 42 U.S.C. § 1983 (right to be a parent) |
| 20 | Unborn Child[1] | Lt. Hooper | 42 U.S.C. § 1983 (bodily integrity) |
| 21 | Unborn Child | Lt. Thompson | 42 U.S.C. § 1983 (bodily integrity) |
| 22 | Unborn Child | Assist. Warden Hammond | 42 U.S.C. § 1983 (bodily integrity) |
| 23 | Unborn Child | Lt. Hooper | 42 U.S.C. § 1983 (right to life) |
| 24 | Unborn Child | Lt. Thompson | 42 U.S.C. § 1983 (right to life) |
| 25 | Unborn Child | Assist. Warden Hammond | 42 U.S.C. § 1983 (right to life) |

## II.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Standard of Review

#### 1.  Generally

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] For the sake of brevity, this motion shall use "Unborn Child" as shorthand for Plaintiffs Issa and Rukengeza as next of friends of their unborn child unless the distinction is relevant.

inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

### 2. Qualified Immunity

Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

The qualified immunity analysis has two steps, which can be taken in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "First, [the Court should] assess whether a statutory or constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios,* 381 F.3d 391, 395 (5th Cir. 2004). Second, the Court should "determine whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

"In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.*

## B.    Arguments & Authorities

Here, Individual Defendants are entitled to qualified immunity. Plaintiffs present five theories of liability under 42 U.S.C. § 1983: equal protection (Counts 7–9); bodily integrity (Counts 10–12, 20–23); the right to be a parent (Counts 13–15, 17–19); supervisory liability against Assistant Warden Hammond only (Count 16); and right to life (Count 23–25). Dkt. #18 at 2–3. But for each theory of liability, it is not clearly established that Individual Defendants' alleged conduct violates the constitutional right at issue. Therefore, Individual Defendants respectfully ask the Court to grant their motion to dismiss.

To overcome qualified immunity, Plaintiffs must first identify a legal principle that has a clear foundation in then-existing precedent—a legal principle that is "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotations and citations omitted). Next, Plaintiffs must show that this "legal principle a clearly prohibit[s] the officer's conduct in the particular circumstances before him." *Id.* The "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "This requires a high 'degree of specificity.'" *Id.* (quoting *Mullenix*, 136 S. Ct. at 309). None of Plaintiffs' claims under 42 U.S.C. § 1983 meet this exacting standard.

### a.    Equal Protection Claims (Counts 7–9)

Take the Equal Protection claims. Plaintiffs contend that Lt. Hooper, Lt. Thompson, and Assistant Warden Hammond each violated the Constitution's Equal Protection Clause by

engaging in sex discrimination. *See* Dkt. #18 at ¶¶ 103, 107, 111. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). As a prerequisite to such a claim, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012); *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). Moreover, the "discriminatory intent of one official may [not] be imputed to another for purposes of imposing individual liability under the civil rights laws." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).

Plaintiffs allege that (1) TDCJ had a policy that prohibited correctional officers of both sexes from leaving their assigned security post until properly relieved, Dkt. #18 at ¶ 27, (2) that Issa was a correctional officer who was assigned to a security post on November 15, 2021, *see id.* at ¶¶ 26–28, and (3) Issa was prohibited from leaving her post until a new replacement was in place pursuant to TDCJ policy but was permitted to depart as soon as her replacement arrived, *id.* at ¶¶ 26–27, 41. "Insofar as [§ 1983] is used as a parallel remedy for transgression of . . . Title VII rights, the elements of the causes of action do not differ from those [applicable to a Title VII suit]." *Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980). As discussed more in the context of TDCJ's motion to dismiss (Dkt. #20 at 4–8), Plaintiffs' factual allegations are insufficient to plead a plausible claim of intentional sex discrimination under Title VII because they do not create the reasonable inference (a) that TDCJ took an adverse employment action against Issa; and (b) that the reason was because of her sex. *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762,

767 (5th Cir. 2019) (describing the "ultimate elements" for pleading a disparate treatment claim under Title VII of the Civil Rights Act of 1964).

The requirement that the plaintiff allege an adverse employment action applies equally in the context of both a claim brought under Title VII and under the Equal Protection clause (via 42 U.S.C. § 1983). *See Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (equating the prima facie legal standards for intentional discrimination under Title VII and 42 U.S.C. § 1983). Under Title VII and thus the Equal Protection Clause in the employment context, "[a] manager's denial of a request to leave work immediately is [] not an ultimate employment decision." *See McElroy v. PHM Corp.*, 622 F. App'x 388, 391 (5th Cir. 2015) (per curiam). For the reasons set forth in more detail in TDCJ's motion to dismiss (Dkt. #20 at 5), the decision not to allow Issa to depart her shift until 11 PM is not actionable because it does not amount to an adverse employment action. But to the extent this Court concludes otherwise that conclusion is not clearly established by existing precedent. For that additional reason, Issa's Equal Protection claim against Individual Defendants cannot overcome qualified immunity.

The second "ultimate element" for an employment-based sex discrimination claim—that the reason Issa was not permitted to depart her shift was *because of* her sex—applies somewhat differently in the context of an Equal Protection claim under §1983. "In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Pronunier*, 801 F.2d 789, 793 (5th Cir. 1986). The relevant question for Individual Defendants is not whether TDCJ's alleged conduct violated the Equal Protection Clause[2], but whether theirs individually did. *See Jones v. Hosemann*,

---

[2] Even in the context of the TDCJ, only the employer's differential treatment of employees with

812 F. App'x 235, 238–39 (5th Cir. 2020) (per curiam) (holding that the plaintiff's failure to allege particular actions taken by the individual defendants resulted in a failure to state an Equal Protection claim against them in an employment discrimination case). The alleged facts do not create the reasonable inference that Lt. Hooper, or Lt. Thompson, or Assistant Warden Hammond treated Issa differently than similarly situated employees and that the unequal treatment stemmed from discriminatory intent. *See Bowlby*, 681 F.3d at 227.

Plaintiffs allege that Lt. Hooper told Issa that she would send someone to replace her after learning of the pain Issa was experiencing but did not end someone to replace her, allegedly because "the warden" said Issa could not leave, per Lt. Thompson. Dkt. #18 at ¶¶ 19–24, 33–34. This is effectively Plaintiffs' only allegation about Lt. Hooper's conduct. *See id.* at ¶¶ 14–57. Plaintiffs do not allege that Lt. Hooper ever permitted a male correctional officer to leave their shift without a replacement when complaining of pain. *See generally id.* The alleged facts do not permit the reasonable inference that Lt. Hooper acted with discriminatory intent. *See Bowlby*, 681 F.3d at 227. In November 2021, it was also not clearly established that Lt. Hooper's alleged conduct violated the Equal Protection Clause.

Plaintiffs allege that Lt. Thompson told Issa that she could not leave because the warden said she could not leave, despite her repeatedly telling him about her pain and need to depart. Dkt. #18 at ¶¶ 31–41. Plaintiffs also allege that Lt. Thompson expressed disbelief about the veracity of Issa's pain complaint, complaining that she had just arrived on her shift when she announced that she needed to leave immediately and his belief that she just wanted to go home. *See id.* at ¶ 40.

---

the same supervisor permits an inference of discriminatory intent. *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216–18 (5th Cir. 2016).

Plaintiffs do not allege that Lt. Thompson ever permitted a male correctional officer to leave their shift without a replacement when complaining of pain. *See generally id.* The alleged facts do not permit the reasonable inference that Lt. Thompson acted with discriminatory intent. *See Bowlby*, 681 F.3d at 227. In November 2021, it was also not clearly established that Lt. Thompson's alleged conduct violated the Equal Protection Clause.

Plaintiffs do not allege that Issa spoke to Assistant Warden Hammond or communicated anything about her pain or physical distress to him on November 15, 2021. *See* Dkt. #18 at ¶¶ 14–57. But Plaintiffs do allege that Lt. Thompson told Issa that she could not leave because "the warden" said she could not leave during her first phone conversation with him. *See id.* at ¶¶ 33–34. Notably, this conversation with Lt. Thompson allegedly occurred "[a]pproximately two minutes" after Issa's conversation with Lt. Hooper. *Id.* at ¶ 30. These allegations do not create the reasonable inference that "the warden" was apprised of the details of Issa's request. *See id.* Indeed, the pleadings suggest Lt. Thompson cited the warden's generally policy, not a specific decision, when referencing "the warden" on the call. Regardless, Plaintiffs do not allege that Assistant Warden Hammond ever permitted a male correctional officer to leave his shift in the absence of a replacement when similarly complaining of pain. *See generally id.* The alleged facts do not permit the reasonable inference that Assistant Warden Hammond acted with discriminatory intent. *See Bowlby*, 681 F.3d at 227. In November 2021, it was also not clearly established that Assistant Warden Hammond's alleged conduct—to the extent he is even alleged to have engaged in any conduct—violated the Equal Protection Clause.

To the extent Plaintiff intends to sue each Individual Defendant for a hostile work environment claim raised under the Equal Protection Clause, the claim fails for the same reasons

identified in TDCJ's motion to dismiss (Dkt. #20 at 8–11), which Individual Defendants hereby incorporate by reference. Individual Defendants add only two additional observations. First, when considering whether the harassment affected a term, condition, or privilege of employment in the context of the Equal Protection claim, the Court should disaggregate their individual conduct and focus the analysis on what each person individually did. Second, the Equal Protection claim against the Individual Defendants must additionally overcome qualified immunity, meaning the constitutional violation must be clearly established. For all the reasons articulated in TDCJ's motion to dismiss, plus these, Plaintiffs' Equal Protection claims are barred by qualified immunity as to each of the three Individual Defendants.

### b.    Bodily Integrity Claims (Counts 10–12, 20–22)

Plaintiffs contend that, by instructing her not to leave her post at work, Individual Defendants violated Issa's Fourteenth Amendment Due Process Clause right to bodily integrity. Dkt. #18 at ¶¶ 112–29. They also contend that this same action violated the Unborn Child's right to bodily integrity. *Id.* at ¶¶ 161–78. "Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights." *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotations omitted). The governmental officer's actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8).

Finally, "[w]here a government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is *constitutionally* required." *Daniels v. Williams*,

474 U.S. 327, 333 (1986) (emphasis in original). To violate the Due Process Clause of the Fourteenth Amendment, the state officials must have acted intentionally. *Id.* at 334. "Whatever other provisions of state law or general jurisprudence [the plaintiff] may rightly invoke [when the defendant acts with a mental state less than intentional], the Fourteenth Amendment to the United States Constitution does not afford him a remedy." *Id.* at 336. Even when the officials' conduct results in tragic consequences, substantive due process requires a higher culpable mental state. *See Cty. v. Sacramento v. Lewis*, 523 U.S. 833, 836 (1998) (holding that a police officer did not "violate[] the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high speed automobile chase aimed at apprehending a suspected offender"). "[T]he constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849.

### i.      Issa's bodily integrity claims (Counts 10–12)

Issa's claimed violation of substantive due process based on a violation of her right to bodily integrity cannot overcome qualified immunity. Prison supervisors did not allow a correctional officer to leave her security post until a replacement arrived two-and-half hours later, despite her complaints of pain. Without minimizing the tragedy that this must have been for Plaintiffs, Individual Defendants' conduct is not "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" and "shocked the conscience." *See Breithaupt v. Abrams*, 352 U.S. 432, 435 (1957). And, with regards to Issa's bodily integrity claim, Individual Defendants did not act with a culpable mental state. *See Daniels*, 474 U.S. at 333. The factual allegations do not create the reasonable inference Individual Defendants acted with a worse-than-negligent

mental state, much less "*intended* to injure in some way unjustifiable by any government interest," as is required for a substantive due process violation. *See Cty. of Sacramento*, 523 U.S. at 848–49 (emphasis added). But even if Issa alleged a substantive due process violation, such violation was not clearly established in November 2021.

"It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732-33 (5th Cir. 2016) (per curiam)). Individual Defendants anticipate that Plaintiffs will be unable to meet this burden. While there are cases recognizing a right to bodily integrity violated by a student suffering physical abuse by school employees, this line of authority is insufficient to support the proposition that refusing to allow a correctional officer to leave their post before a replacement arrives violates substantive due process, much less put it beyond debate. *See Carty v. Rodriguez*, 470 F. App'x 234, 239 (5th Cir. 2012) (per curiam) (granting qualified immunity to defendants who allegedly assigned a DPS employee to a fighting exercise that killed him because it was not clearly established that their conduct violated a substantive due process right to bodily integrity and life).

Finally, Individual Defendants are entitled to qualified immunity from Issa's bodily integrity claim because their actions were "'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)). "An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Id.* "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.*

Leaving a security post empty in a men's prison poses significant safety risk to both correctional officers and inmates. Without the benefit of hindsight, Individual Defendants' actions were reasonable. For Lt. Hooper: she allegedly only had one interaction with Issa on the night in question and expressed her support for Issa's request. *See* Dkt. #18 at ¶ 24. For Assistant Warden Hammond: he never interacted with Issa and there are no allegations creating the reasonable inference that he even knew about the repeated reports of pain and requests for permission to depart. *See* Dkt. #18 at ¶¶ 19–41. For Lt. Thompson, the factual allegations suggest that he simply did not believe that Issa was in pain, at least not at first. *See id.* at ¶ 40. He thought she was faking because she had just arrived at work when she declared her pain (without any verifiable symptoms) and desire to leave. *See id.* And it appears from the allegations that, after a couple hours, when Issa continued to report pain, he did eventually send a replacement. *See id.* at ¶¶ 40–41. Resisting the temptation to employ hindsight bias, a reasonable officer could have believed Lt. Thompson's actions proper at the time.

### ii.    Unborn Child's bodily integrity claim (Counts 20–22)

The law is even less clear for the Unborn Child's putative right to bodily integrity. In *Roe v. Wade*, the Supreme Court held that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." 410 U.S. 113, 158 (1973). While *Roe v. Wade* was overruled in *Dobbs v. Jackson Women's Health Org.*, that opinion did not issue until many months after the events in question. 142 S. Ct. 2228, 2279 (2022). Precedent issued after the alleged violation of law cannot be relied upon to show that the legal violation was clearly established at that time. *Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018) (per curiam) (noting that "a reasonable officer is not required to foresee judicial decisions that do not yet exist"); *Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir.

2022) (same). To overcome qualified immunity, Plaintiffs must identify precedent that existed on November 15, 2021, that is so clear that every reasonable official would know—not merely that the Unborn Child had due process rights under the Fourteenth Amendment, which itself was not clearly-established—but that Individual Defendants' alleged conduct violated a due process right to bodily integrity held by the Unborn Child.

For Lt. Hooper, Plaintiffs must identify legal authority that would make it clear to every reasonable official in her position that—as of November 15, 2021—when a supervisor officer working at a prison tells a pregnant subordinate correctional officer that she (the superior officer) would send someone to replace the subordinate officer upon learning that the subordinate officer was experiencing pain and fails to follow through immediately, the superior officer is violating the substantive due process right to bodily integrity held by the subordinate officer's seven-month-old fetus. *Compare Wesby*, 138 S. Ct. at 590, *with* Dkt. #18 at ¶¶ 20–25, 163–64. Individual Defendants anticipate that Plaintiffs will be unable to meet their burden.

For Lt. Thompson, Plaintiffs must identify legal authority that would make it clear to every reasonable official in his position that—as of November 15, 2021—when a supervisor officer working at a prison tells a pregnant subordinate correctional officer that she (the subordinate officer) cannot leave her security post, despite her repeatedly telling him about her pain and need to depart, the superior officer is violating the substantive due process right to bodily integrity held by the subordinate officer's seven-month-old fetus. *Compare Wesby*, 138 S. Ct. at 590, *with* Dkt. #18 at ¶¶ 30–40, 169–70. Individual Defendants anticipate that Plaintiffs will be unable to meet their burden.

For Assistant Warden Hammond, Plaintiffs must identify legal authority that would make it clear to every reasonable official in his position that—as of November 15, 2021—when a high-ranking correctional officer tells a lower-ranking correctional officer that he should not allow a pregnant subordinate correctional officer to leave her security post prior to a replacement arriving (not alleged, but by inference), that high-ranking correctional officer is violating the substantive due process right to bodily integrity held by the subordinate officer's seven-month-old fetus. *Compare Wesby*, 138 S. Ct. at 590, *with* Dkt. #18 at ¶¶ 14–41, 175–76. Individual Defendants anticipate that Plaintiffs will be unable to meet their burden.

### c.   Right to be a Parent (Counts 13–15, 17–19)

Plaintiffs also contend that Individual Defendants violated the right to be a parent held by Issa and Rukengeza. *See* Dkt. #18 at ¶¶ 130–41 (Counts 13–15), *id.* at ¶¶ 149–60 (Counts 17–19). The pleadings variously characterize this right as "the right to be a parent," "the right to have offspring, as well as the right to control the upbringing of that offspring." *E.g.*, *id.* at ¶¶ 131–32. The pleadings characterize this right as arising under both the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *E.g.*, *id.* at ¶ 137. But the factual allegations together with the reasonable inferences drawn therefrom do not overcome Individual Defendants' entitlement to qualified immunity. The allegations do not create the reasonable inference that Individual Defendants acted with a culpable mental state or that their conduct violated a clearly-established right to become a parent.

From the outset, Individual Defendants acknowledge that the Supreme Court "has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639–40 (1974). "[T]here is a right 'to be free from unwarranted

governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.'" *Id.* (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972)). But this is the beginning, rather than the end, of the qualified immunity inquiry.

After all, for decades the Supreme Court has repeatedly "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality,'" but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal quotations omitted). Applying the qualified immunity standard, the question is not whether the decision to bear a child is a liberty protected by the Due Process Clause of the Fourteenth Amendment. The question is whether it was clearly established on November 15, 2021, that Individual Defendants' alleged conduct violated that right based on then-existing precedent. *See id.* Did "existing precedent" put the constitutional violation "beyond debate"? *See id.* at 551.

This case presents tragic facts. But it is important to clarify what is and is not at issue. This is not a case about the State invoking its police power to sterilize people against their will. Nor is this a case about restricting access to contraception or other family-planning methods. Nor even is this a case about the State utilizing its police power to remove a child from their parents' possession or sever the legal relationship between a parent and their child. Per the factual allegations, between 8:30 PM and 11:00 PM, a state employer operating a prison did not allow a pregnant correctional officer to leave her security post until her replacement arrived despite her reporting physical pain.

Dkt. #18 at ¶¶ 17–41. After the correctional officer went to the hospital, she began bleeding and the child was delivered stillborn.[3] *Id.* at ¶¶ 42–48.

It is not clearly-established that Individual Defendants' alleged conduct violated the rights of Issa or her spouse to become a parent, to have offspring, or control their offspring's upbringing. *Cf. Crumpton v. Gates*, 947 F.2d 1418, 1422 (9th Cir. 1991) (noting that "a familial right cannot arise until a fetus is born"). Individual Defendants note that they lacked the requisite intent for either an Equal Protection or Due Process violation. *Bowie v. Procunier*, 808 F.2d 1142, 1143 (5th Cir. 1987) (holding that neither the due process clause nor equal protection clauses are implicated by a negligent act of an official, even one that causes loss of or injury to life, liberty, or property). Individual Defendants anticipate that Plaintiffs will be unable to meet their burden to find a case in their favor that (1) "does not define the law at a high level of generality," *see Vann*, 884 F.3d at 310, and (2) would put every reasonable official on notice that Individual Defendants' alleged conduct violated a Fourteenth Amendment right to be a parent. Individual Defendants respectfully ask the Court to grant their motion to dismiss.

**d.    Supervisor Liability (Count 16)**

Issa also asks the Court to impose liability upon Assistant Warden Hammond based on the putative constitutional violations committed by Lt. Hooper and Lt. Thompson. Dkt. #18 at ¶¶ 142–48. "Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). In *Iqbal*, the Supreme Court rejected the notion that government officials may be liable under 42 U.S.C. § 1983 merely because they had knowledge of, or acquiesced in, a subordinate's

---

[3] Individual Defendants were allegedly involved these events to varying degrees as previously summarized. For qualified immunity, each defendant's conduct should be analyzed separately.

misconduct. 556 U.S. at 677. "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* "[T]o establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Here, the factual allegations fall short.

Deliberate indifference is a stringent standard of fault, requiring the defendant to disregard a known or obvious consequence of his action. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Deliberate indifference requires more than mere negligence or even gross negligence. *See Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). Deliberate indifference requires a showing of "subjective recklessness" as used in criminal law. *Farmer v. Brennan*, 511 U.S. 825 (1994). "A pattern of similar constitutional violations" is "ordinarily necessary to demonstrate deliberate indifference." *Porter*, 659 F.3d at 447.

Here, the factual allegations do not create the reasonable inference that Assistant Warden Hammond was subjectively aware of, and consciously disregarded, a known or obvious risk of a constitutional violation by his subordinates. Indeed, it is questionable whether Plaintiffs have alleged enough to demonstrate that Assistant Warden Hammond was even aware of Issa's request to leave the unit. Issa never spoke to Assistant Warden Hammond. Given the 2-minute turnaround between Issa's conversation with Lt. Hooper and Issa's conversation with Lt. Thompson, it is not reasonable to believe that Lt. Thompson's statement that Issa "could not leave because 'the

warden' said she could not leave" referenced a conversation held with Assistant Warden Hammond about Issa during those 2-minutes. *See* Dkt. #18 at ¶¶ 30–35.  For that chronology to work, Lt. Hooper would have had to speak to Lt. Thompson—relaying Issa's request—and then Lt. Thompson would have had to speak with Assistant Warden Hammond—relaying the same—all in only 120 seconds. Instead, the reference to the warden saying Issa could not leave likely referenced a longstanding practice, not a particular decision.

But assuming the pleadings create the reasonable inference that Assistant Warden Hammond knew (1) that Issa had reported experiencing pain, (2) had requested permission to leave her security post and go to the hospital, and (3) was involved in the decision not to allow her to leave before a replacement arrived, this is still not sufficient to create the reasonable inference that Assistant Warden Hammond subjectively believed that Issa had a serious health situation or was in imminent risk of losing her unborn child, much less that following TDCJ policy would violate the constitution. Plaintiffs do not allege, for example, that Issa started bleeding or had any other symptoms that could be verified by someone other than herself until *after* she arrived at the hospital.[4] *See* Dkt. #18 at ¶ 45.

All these arguments also assume Plaintiffs have alleged an underlying constitutional violation to which Assistant Warden Hammond could demonstrate deliberate indifference. But as argued elsewhere, it is far from clear that the alleged conduct of prohibiting Issa from leaving her post until a replacement arrived actually violated a constitutional right. Plaintiffs have also not

---

[4] In their "Causes of Action" section making legal assertions regarding supervisory liability against Assistant Warden Hammond, Plaintiffs also include the bare assertion that "[l]oss of the child was a known or obvious consequence of delaying medical care for Plaintiff-Issa's pregnancy emergency." Dkt. #18 at ¶ 146. This allegation is not entitled to deference. *See Iqbal*, 556 U.S. at 678. Based on the factual allegations, that consequence was far from "known or obvious."

alleged a pattern of similar constitutional violations. Rather, the facts suggest a rare confluence of events whereby a delay in relieving a correctional officer on a night shift led to a tragic outcome. And to impose liability upon Assistant Warden Hammond, Plaintiffs must still overcome qualified immunity. Based on the alleged facts, it was not clearly established on November 15, 2021, that Assistant Warden Hammond's conduct demonstrated deliberate indifference to a violation of Issa's substantive due process or equal protection rights committed by his subordinates. As such, Assistant Warden Hammond respectfully asks the Court to dismiss the supervisory liability claim against him (Count 16).

### e.   Right to Live (Counts 23–25)

Plaintiffs Issa and Rukengeza, as next of friends of their unborn child, assert a right to life under the Fourteenth Amendment. *See* Dkt. #18 at ¶¶ 179–96. As discussed above, in *Roe v. Wade*, the Supreme Court held that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." 410 U.S. at 158. As courts around the country recognized, "*Roe v. Wade* instruct[ed] [that] a fetus lacks constitutional protection to assure it an opportunity to born." *Lewis v. Thompson*, 252 F.3d 567, 586 (2d Cir. 2001). While *Roe* was overruled in *Dobbs*, that 2022 opinion cannot be used to demonstrate a clearly-established constitutional violation in 2021. *See* 142 S. Ct. at 2279; *Salazar*, 37 F.4th at 286. This Court need not weigh into the difficult question of whether, post-*Dobbs*, an unborn child possesses constitutional rights under the Fourteenth Amendment. Even if he or she does, that right was not clearly established on November 15, 2021. And it certainly was not clearly established that Individual Defendants' personnel decisions at work violated such a right.

### III.   PRAYER

Individual Defendants respectfully ask this Honorable Court to grant their motion.

Date: January 26, 2023

Respectfully Submitted,

KEN PAXTON
Attorney General of Texas

*/s/ Benjamin L. Dower*
BENJAMIN L. DOWER
Special Litigation Counsel
Texas Bar No. 24082931
Attorney-in-Charge
Benjamin.Dower@oag.texas.gov

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994

SHAWN COWLES
Deputy Attorney General for Civil Litigation

SHANNA MOLINARE
Chief, Law Enforcement Defense Division

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I, BENJAMIN L. DOWER, certify that a true and correct copy of the foregoing document was

filed and served via the Court's CM/ECF document filing system on January 26, 2023 to:

Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd
Bldg 1, Ste 250
Austin, TX 78735
512-733-5151
Fax: 815-895-4070
Email: ross@cronauerlaw.com
**ATTORNEY FOR PLAINTIFFS**

*/s/ Benjamin L. Dower*
BENJAMIN L. DOWER
Special Litigation Counsel
Office of the Attorney General of Texas