IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

Salia Issa,
Fiston Rukengeza, and
Salia Issa and Fiston Rukengeza as
next friends of their unborn child,

Plaintiffs,

v.

Texas Department of Criminal Justice,
Lt. Brandy Hooper, individually,
Lt. Desmond Thompson, individually, and
Assist. Warden Alonzo Hammond, individually,

Defendants.

CIVIL ACTION NO: 1:22-cv-1107-LY

---

**PLAINTIFFS' RESPONSE TO DEFENDANT-TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Through counsel, Cronauer Law, LLP, Plaintiffs hereby respond to Defendant-Texas Department of Criminal Justice's (TDCJ) Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. #20).

**SUMMARY**

In Plaintiffs' second amended complaint (Doc. #18), Plaintiff-Issa alleges the following causes of action against Defendant-TDCJ:

| Count | Parties | Statute |
|---|---|---|
| 1 | Plaintiff-Issa v. Defendant-TDCJ | Title VII (disparate treatment, sex) |
| 2 | Plaintiff-Issa v. Defendant-TDCJ | Texas Labor Code (disparate treatment, sex) |
| 3 | Plaintiff-Issa v. Defendant-TDCJ | Title VII (hostile work environment, sex) |

| | | |
|---|---|---|
| 4 | Plaintiff-Issa v. Defendant-TDCJ | Texas Labor Code (hostile work environment, sex) |
| 5 | Plaintiff-Issa v. Defendant-TDCJ | Title VII (disparate impact, sex) |
| 6 | Plaintiff-Issa v. Defendant-TDCJ | Texas Labor Code (disparate impact, sex) |
| 26 | Plaintiff-Issa v. Defendant-TDCJ | Texas Labor Code (denial of a reasonable accommodation) |
| 27 | Plaintiff-Issa v. Defendant-TDCJ | Texas Labor Code (hostile work environment, disability) |
| 28 | Plaintiff-Issa v. Defendant-TDCJ | Texas Labor Code (disparate impact, disability) |
| 29 | Plaintiff-Issa v. Defendant-TDCJ | Rehabilitation Act (denial of a reasonable accommodation) |
| 30 | Plaintiff-Issa v. Defendant-TDCJ | Rehabilitation Act (hostile work environment) |
| 31 | Plaintiff-Issa v. Defendant-TDCJ | Family and Medical Leave Act (family-care provision) |

Defendant-TDCJ has moved to dismiss all counts.

Defendant-TDCJ's motion should be denied. Texas Labor Code, Chapter 21, has waived sovereign immunity. To the extent *Sullivan v. Texas A&M University System*, 986 F.3d 593 (5th Cir. 2021), held there was no waiver of state sovereign immunity in federal court, the case was wrongly decided. Further, if Defendant-TDCJ seeks to invoke sovereign immunity, it must first join the Texas Workforce Commission pursuant to state statute, which has not been done.

As to the remaining counts, all of them adequately state a claim for relief. Plaintiff-Issa need not plead a *prima facie* case. The allegations in the pleading must be accepted as true, and Plaintiff-Issa is entitled to the benefit of all reasonable inferences. Applying this standard, Defendant-TDCJ's motion should be denied.

**PLAINTIFFS' RESPONSE TO DEFENDANT-TDCJ'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION (COUNTS 2, 4, 6, and 26–28)**

**STANDARD OF REVIEW**

1. A party may move the Court for dismissal based on lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

2. The plaintiff bears the burden of showing that jurisdiction exists. *Daniel v. University of Texas Southwest Medical Center*, 960 F.3d 253, 256 (5th Cir. 2020). In reviewing jurisdiction, the court must take all factual allegations in the complaint as true. *Id.*

**AUTHORITIES: Counts 2, 4, 6, and 26–28 (sovereign immunity)**

3. Sovereign immunity[1] removes the Court's subject matter jurisdiction and, as such, precludes adjudication on the merits. *See Perez v. Region 20 Education Service Center*, 307 F.3d 318, 326 (5th Cir. 2002) ("Before addressing the merits of this claim, we *must* address the jurisdictional issue of whether Perez's ADA claim is barred by sovereign immunity") (emphasis added); *Daniel*, 960 F.3d at 256 (stating that state sovereign immunity is an issue of subject matter jurisdiction). *See also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."), *quoting Ex Parte McCardle*, 74 U.S. 506, 514 (1868).

4. State sovereign immunity bars an individual from suing a state in federal court unless (1) the state consents to suit or (2) Congress has clearly and validly abrogated the state's sovereign immunity. *Perez*, 307 F.3d at 326. *See also Sullivan*, 986 F.3d at 595.

[1] So-called "Eleventh Amendment immunity" is generally used synonymously with "state sovereign immunity." *See Sullivan v. Texas A&M University System*, 986 F.3d 593, 595-596, n.1 (5th Cir. 2021). The concept has been interpreted as a state's immunity to suit both from its own citizens and from citizens of other states. *Id.*

5. State sovereign immunity extends not only to a named state (e.g., the State of Texas), but also to state agencies, state departments, and other arms of the state. *Daniel*, 960 F.3d at 256. *See also Perez*, 307 F.3d at 326.

6. Regarding Texas Labor Code, Chapter 21, Plaintiffs' counsel's research led to the same two cases cited in Defendant-TDCJ's brief: *Sullivan* and *Perez*. *See* Defendant-TDCJ's Motion to Dismiss, Doc. #20, p. 3.

7. *Sullivan* relied on *Perez* for the proposition that Texas Labor Code, Chapter 21, "does not expressly waive sovereign immunity in *federal* court." *Sullivan*, 986 F.3d at 599 (emphasis in original).

8. *Perez* did not involve Texas Labor Code, Chapter 21. As stated in the opinion, the plaintiff's claims were as follows:

> Perez filed suit in Texas state court, alleging that Region 20 violated Title VII, the ADA, and Texas state law. Specifically, Perez alleged: (1) Region 20 discriminated against him on account of his Hispanic national origin, in violation of Title VII, when it failed to grant his request to reclassify his position or promote him; (2) Region 20 discharged him in retaliation for filing his charge of discrimination with the EEOC in violation of Title VII; (3) Region 20 discharged him because of his Hispanic national origin in violation of Title VII; (4) Region 20 discriminated against him due to his mental illness disability in violation of the ADA; and (5) Region 20 discharged him in retaliation for reporting the sexual harassment of another Region 20 employee in violation of the Texas Whistleblower Act. Region 20 removed the lawsuit to federal district court.

*Perez*, 307 F.3d at 323.

9. In the opinion, *Perez* mentioned Texas Labor Code, Chapter 21, in response to the plaintiff's argument that the state statute waived sovereign immunity for Americans with Disabilities Act claims in federal court. *Perez*, 307 F.3d at 332.

10. Texas Labor Code § 21.009(a) reads in pertinent part: "In any civil action in which the validity of a provision of this chapter [...] is challenged as void, *unconstitutional*, or *unenforceable*, the commission *shall* be made a party to the proceedings, and, on the motion of the commission, venue of the cause may be transferred to the district courts of Travis County." (emphasis added).

An order invalidating a provision of the statute "may not be enforced and may not take effect until the commission has answered and appeared in the action and has exhausted all avenues of appeal and any judgment is final and enforceable." Texas Labor Code § 21.009(b). The "commission" means the Texas Workforce Commission. *See* Texas Labor Code § 21.0015.

**ARGUMENT: Counts 2, 4, 6, and 26–28 (sovereign immunity)**

11. Counts 2, 4, 6, and 26–28 are all claims based on Texas Labor Code, Chapter 21. As stated above, in support of its contention that Texas Labor Code, Chapter 21, does *not* waive state sovereign immunity in federal court, Defendant-TDCJ cites *Sullivan* and *Perez*.

12. *Sullivan* appears to be the first and only case to squarely address whether the State of Texas waived sovereign immunity in federal court through Texas Labor Code, Chapter 21. In three sentences of purported analysis, *Sullivan* held that there was no such waiver. *Sullivan*, 986 F.3d at 599. This conclusory holding omitted any substantive analysis of the language in the statute.

13. "Employer" explicitly includes a state agency, such as Defendant-TDCJ. *See* Texas Labor Code, § 21.002(8)(D). *See also* Texas Labor Code, § 21.002(14). A "Respondent" is the entity (including an Employer) against whom a complaint is filed with the Texas Workforce Commission. *See* Texas Labor Code, § 21.002(13).

14. After administrative exhaustion, an aggrieved person may file a "civil action" against the Respondent. *See* Texas Labor Code, §§ 21.252(d), 21.254, and 21.256. A "civil action" is not characterized as a *state* or a *federal* civil action; it is simply a civil action. The legislature clearly contemplated there would be scenarios when a civil action was filed in federal court by providing for a records-retrieval mechanism. *See* Texas Labor Code § 21.305(b)(2) (allowing access to commission records "if a *civil action* relating to the complaint is filed in *federal court* alleging a violation of federal law.") (emphasis added). Further, the legislature stated the purpose of the statute was to execute the policies of *federal* law. *See* Texas Labor Code § 21.001(1)–(3).

15. When taken together, this language in Texas Labor Code, Chapter 21, creates an unequivocal waiver of state sovereign immunity in a civil action, whether state or federal. Upon reading the statute, there is simply no basis for concluding the legislature did *not* intend to waive state sovereign immunity. The statutory language cited above points to the contrary.

16. Further still, neither *Sullivan* nor *Perez* made any mention of § 21.009. To be clear, invocation of state sovereign immunity is based on the Eleventh Amendment of the United States Constitution. *See supra*, ¶ 3, n.1. Thus, Defendant-TDCJ is arguing that Texas Labor Code, Chapter 21, is unconstitutional as applied to Defendant-TDCJ. Such a finding would obviously also make the statute unenforceable as applied to Defendant-TDCJ.

17. The Texas legislature was explicit that any time the statute is challenged as unconstitutional or unenforceable, the Texas Workforce Commission must be joined as a party. *See* Texas Labor Code § 21.009(a). However, Defendant-TDCJ has taken no such action to join the Texas Workforce Commission. Further, § 21.009(b) essentially creates a stay until the Texas Workforce Commission has been joined.

18. In sum, Texas Labor Code, Chapter 21, did explicitly waive state sovereign immunity in federal court. To the extent *Sullivan* held there was no waiver of state sovereign immunity (by relying on dicta from *Perez*), the case was wrongly decided. Further, if Defendant-TDCJ seeks to invoke sovereign immunity, it must first join the Texas Workforce Commission, which has not been done. Accordingly, Defendant-TDCJ's motion should be denied.

## PLAINTIFFS' RESPONSE TO DEFENDANT-TDCJ'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (COUNTS 1, 3, 5, & 29–31)

### STANDARD OF REVIEW

19. A complaint must contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2).

20. A defendant may assert that a plaintiff's complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

21. A complaint is not required to allege detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id. See also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007) (explaining that if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, the pleading requirement is met).

22. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 129 S. Ct. at 1949. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*

23. If the plaintiff alleges "simply, concisely, and directly" the events that entitle them to damages from the defendant, the plaintiff has met their pleading burden. *Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346, 347 (2014) (per curiam). If the plaintiff informs the defendant of the factual basis for the claim, the plaintiff is "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.*

24. A plaintiff is not required to plead a *prima facie* case in the complaint. *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 510-511 (2002), *overruled in part on other grounds by Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Employment discrimination claims are not subjected to any type of heightened pleading standard. *Id.* at 512-513.

**AUTHORITIES: Count 1—Title VII (disparate treatment, sex)**

25. Title VII of the Civil Rights Act of 1964, as amended, prohibits employment discrimination based on sex. *See* 42 U.S.C. §§ 2000e–2000e-17. *See also* 42 U.S.C. § 2000e-2(a)(1) (stating the specific prohibition on discrimination).

26. Under the statute, sex discrimination includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions," and "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work[.]" 42 U.S.C. § 2000e(k).

27. In *Young v. United Parcel Service, Inc.*, the Supreme Court analyzed disparate treatment pregnancy discrimination.[2] 135 S. Ct. 1338 (2015). To establish a claim, in the absence of direct evidence, the plaintiff must show: (1) that the plaintiff belongs to the protected class; (2) that the plaintiff sought accommodation; (3) that the employer did not accommodate the plaintiff; and (4) that the employer did accommodate others similar in their ability or inability to work. *Id.* at 1353-1354. The burden of making this showing is not onerous and it is not as burdensome as succeeding on an ultimate finding of fact as to a discriminatory employment action. *Id.* at 1354.

[2] This is also known as the "Second Clause" or "Clause Two" in reference to the Pregnancy Discrimination Act's amendments to Title VII in 1978. *Young*, 135 S. Ct. at 1344-1345.

**ARGUMENT: Count 1—Title VII (disparate treatment, sex)**

28. When pregnancy is involved in a disparate treatment claim, whether or not there was an adverse employment action is irrelevant. The proper framework is governed by *Young v. United Parcel Service, Inc.* Under that framework, Plaintiff-Issa has adequately pleaded her claim.

29. Plaintiff-Issa alleged that she is female (¶ 14); she sought the accommodation of being able to leave (¶ ¶ 23, 37, 39, and 62); Defendant-TDCJ denied the accommodation (¶ ¶ 32, 34, 38, 39, and 62); and Defendant-TDCJ did accommodate others similar in their ability or inability to work (¶ ¶ 55 and 62). Plaintiff-Issa further alleged additional disparate treatment forming the basis of her claim. (¶ ¶ 54, 56, 60, and 61).[3]

30. Plaintiff-Issa need not plead a *prima facie* case. The allegations in the pleading must be accepted as true, and Plaintiff-Issa is entitled to the benefit of all reasonable inferences. Applying this standard, Defendant-TDCJ's motion to dismiss count 1 should be denied.

**AUTHORITIES: Count 3—Title VII (hostile work environment, sex)**

31. *See supra*, ¶ ¶ 25 and 26.

32. Subjecting someone to a hostile work environment based on sex is a form of discrimination prohibited by Title VII. *Lauderdale v. Texas Department of Criminal Justice*, 512 F.3d 157, 162-163 (5th Cir. 2007). *See also Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617 (5th Cir. 2020).

33. To establish a hostile work environment claim under Title VII, the plaintiff must show: (1) that the plaintiff belongs to a protected group; (2) that the plaintiff was subjected to unwelcome harassment; (3) that the harassment complained of was based on the plaintiff's sex; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Badgerow*, 974 F.3d at 617.

[3] In this paragraph, all citations are to the Second Amended Complaint, Doc. #18.

34. Regarding element (4), harassment affects a "term, condition, or privilege of employment" if it is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Badgerow*, 974 F.3d at 617. Courts consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or merely an offensive utterance; and whether it interferes with an employee's work performance. *Id.* at 618. *See also Lauderdale*, 512 F.3d at 163 (listing the factors to be considered and pointing out that isolated incidents, if extremely serious, can satisfy this element).

**ARGUMENT: Count 3—Title VII (hostile work environment, sex)**

35. Defendant-TDCJ concedes elements (1) and (5) of a hostile work environment claim, disputing only elements (2)–(4). *See* Defendant-TDCJ's Motion to Dismiss, Doc. #20, p. 8.

36. As to element (2), *not* being allowed to leave under the circumstances alleged was absolutely unwelcome harassment. That unwelcome harassment was compounded by Defendant-TDCJ accusing Plaintiff-Issa of lying. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 71 and 72.

37. As to element (3), the harassment was based on Plaintiff-Issa's sex. As pleaded, Defendant-TDCJ minimized Plaintiff-Issa's complaints due to her pregnancy and failed to treat a pregnancy emergency as it would have any other emergency. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 73 and 74.

38. As to element (4), the harassment was severe enough to affect a term, condition, or privilege of employment. Indeed, under the circumstances, it was arguably the most severe way a pregnant woman could be harassed shy of a physical assault. The law is clear that a hostile work environment can be proven disjunctively—through either severe *or* pervasive harassment. Although this was an isolated incident, it was the type of extremely serious incident that satisfies the fourth element. Plaintiff-Issa has detailed the severity of the conduct through the myriad

facts alleged in her complaint and, to remove any doubt or need to infer, specifically alleged the fourth element. *See* Second Amended Complaint, Doc. #18, ¶ 75.

39. Plaintiff-Issa need not plead a *prima facie* case. The allegations in the pleading must be accepted as true, and Plaintiff-Issa is entitled to the benefit of all reasonable inferences. Applying this standard, Defendant-TDCJ's motion to dismiss count 3 should be denied.

**AUTHORITIES: Count 5—Title VII (disparate impact, sex)**

40. Disparate impact discrimination addresses employment practices or policies that are facially neutral in their treatment of protected groups, but which in fact have a disproportionately adverse effect on such protected groups; proof of discriminatory motive is not required. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). *See also Garcia v. Woman's Hospital of Texas*, 97 F.3d 810, 813 (5th Cir. 1996).

41. Statistical evidence is not required if the plaintiff can demonstrate that all or substantially all people within the group would be impacted by the practice or policy. *Garcia*, 97 F.3d at 813.

**ARGUMENT: Count 5—Title VII (disparate impact, sex)**

42. Arguments that Plaintiff-Issa must plead statistical disparities to state a claim for disparate impact lack merit. Requiring statistical evidence at this juncture, before the parties are even permitted to engage in discovery,[4] would be an insurmountable hurdle for these types of claims.

43. The case primarily relied on by Defendant-TDCJ—the unpublished district court opinion from another district, *Tate v. Dallas Independent School District*, No. 3:21-cv-0895 (N.D. Tex. Jan. 10, 2022)—is not controlling when the Fifth Circuit has already spoken on this issue.

44. In a disparate impact case, statistical evidence is not required if the plaintiff can demonstrate that all or substantially all people within the protected group would be impacted by the practice or policy. *See Garcia*, 97 F.3d at 813 (stating that "If all or substantially all pregnant women would be

[4] *See* Fed. R. Civ. P. 26(d)(1).

advised by their obstetrician not to lift 150 pounds, then they would certainly be disproportionately affected by this supposedly mandatory job requirement for LVN's at the Hospital. Statistical evidence would be unnecessary if Garcia could establish this point.").

45. Plaintiff-Issa has adequately alleged facts to survive a motion to dismiss at this juncture. Plaintiff-Issa has isolated the specific employment practice at issue, alleged its impact on all or substantially all women in similar circumstances, and further alleged its specific impact on her. *See* Second Amended Complaint, Doc. #18, ¶¶ 89–91. Accordingly, Defendant-TDCJ's motion to dismiss count 5 should be denied.

**AUTHORITIES: Count 29—Rehabilitation Act (denial of a reasonable accommodation)**

46. Section 504 of the Rehabilitation Act of 1973 broadly prohibits discrimination based on disability by providing that no recipient of federal funds may discriminate against an otherwise qualified individual "solely by reason of [their] disability." 29 U.S.C. § 794(a). *See also Flynn v. Distinctive Home Health Care, Inc.*, 812 F.3d 422, 425-426 (5th Cir. 2016).

47. The standards used to assess discrimination under the Rehabilitation Act are the same as the standards used under the Americans with Disabilities Act (ADA). *See* 29 U.S.C. § 794(d). *See also Flynn*, 812 F.3d at 426-427. There is one exception, however, to this general rule—due to the plain language of the Rehabilitation Act, a violation will only be found if the discrimination is based "solely" on an individual's disability. *See generally Soledad v. U.S. Department of Treasury,* 304 F.3d 500, 505 (5th Cir. 2002). This is different from the causation standard used in cases under the ADA. *Id.*

48. Title I of the ADA prohibits employment discrimination based on disability. *See* 42 U.S.C. §§ 12111-12117. *See also* 42 U.S.C. § 12112(a) (stating the specific prohibition on discrimination).

49. Under the statute, a "disability" (as relevant to this case) is defined as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C.

§ 12102(1)(A). Major life activities include things such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as the operation of a major bodily function, such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2).

50. Failing to provide a reasonable accommodation is a form of disability discrimination. *See* 42 U.S.C. § 12112(b)(5). To establish failure-to-accommodate disability discrimination, the plaintiff must show: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Weber v. BNSF Railway Co.*, 989 F.3d 320, 323 (5th Cir. 2021). *See also Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017).

**ARGUMENT: Count 29—Rehabilitation Act (denial of a reasonable accommodation)**

51. Plaintiff-Issa's pregnancy emergency was clearly a disability within the meaning of the ADA and, accordingly, the Rehabilitation Act. *See* 42 U.S.C. § 12102(1)(A) and (2). *See also* Second Amended Complaint, Doc. #18, ¶ 225.

52. Despite Defendant-TDCJ's contention otherwise, there is no magic time period that separates a disability from a non-disability. The "transitory" analysis *only* applies when someone is alleging discrimination based on being "regarded as" having a disability, which is not the case with Plaintiff-Issa. *See* 42 U.S.C. § 12102(3)(B) (stating that being "regarded as" having a disability "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less."). *See also* 29 C.F.R. § 1630.2(j)(1)(i) (stating that the definition of a disability "shall be construed broadly in favor of expansive coverage") and (ix) (making clear the transitory analysis only applies to "regarded as"

claims and further stating that the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section.").

53. Defendant-TDCJ further argues that Plaintiff-Issa has not pleaded sufficient facts to infer she submitted a request for an accommodation. Defendant-TDCJ points out a perceived inconsistency whereby Plaintiff-Issa has "characterize[d] her request to depart the unit immediately as both a request for FMLA leave and a request for a reasonable accommodation under the Rehabilitation Act." *See* Defendant-TDCJ's Motion to Dismiss, Doc. #20, p. 18. This argument misses the mark for multiple reasons. First, a modified work schedule (e.g., cutting one's shift short) is explicitly *included* as a type of reasonable accommodation. *See* 42 U.S.C. § 12111(9)(B). *See also* 29 C.F.R. § 1630.2(o). Second, to the extent there is any inconsistency in Plaintiff-Issa's claims, such an inconsistency is permissible. *See* Fed. R. Civ. P. 8(d)(3).

54. Lastly, Defendant-TDCJ argues Plaintiff-Issa did not allege that Defendant-TDCJ failed to grant the reasonable accommodation. To the contrary, not only did Plaintiff-Issa allege the denied accommodation, she detailed Defendant-TDCJ's unreasonableness by pointing out that multiple other employees of Defendant-TDCJ were present and capable of covering her shift, and that no operational necessity required her presence. *See* Second Amended Complaint, Doc. #18, ¶¶ 50–53 and 226–227.

55. As Plaintiff-Issa alleged, her disability impacted the operation of her major bodily functions; it impacted her ability to perform major life activities; it impacted her ability to concentrate, think, work, and perform other manual tasks; and it impacted the operation of—and in fact was based upon—her reproductive functions. *See* Second Amended Complaint, Doc. #18, ¶ 225. Due to this disability, Plaintiff-Issa sought a very simple (and reasonable) accommodation—to be able to leave—yet the accommodation was denied. *See* Second Amended Complaint, Doc. #18, ¶¶ 226 and 227.

56. These facts are sufficient to plead a claim at this juncture. Plaintiff-Issa need not plead a *prima facie* case. The allegations in the pleading must be accepted as true, and Plaintiff-Issa is entitled to the benefit of all reasonable inferences. Applying this standard, Defendant-TDCJ's motion to dismiss count 29 should be denied.

**AUTHORITIES: Count 30—Rehabilitation Act (hostile work environment)**

57. *See supra*, ¶ ¶ 46–49.

58. Subjecting someone to a hostile work environment based on their disability is a form of discrimination. *Patton v. Jacobs Engineering, Inc.*, 874 F.3d 437, 445 (5th Cir. 2017). *See also Flowers v. Southern Regional Physician Services, Inc.,* 247 F.3d 229, 235-236 (5th Cir. 2001).

59. To establish a hostile work environment claim under the ADA, the plaintiff must show: (1) that the plaintiff belongs to a protected group; (2) that the plaintiff was subjected to unwelcome harassment; (3) that the harassment complained of was based on the plaintiff's disability; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Patton*, 874 F.3d at 445.

60. Harassment affects a "term, condition, or privilege of employment" if it is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Patton*, 874 F.3d at 445. Courts consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or merely an offensive utterance; and whether it interferes with an employee's work performance. *Id.* Isolated incidents, if extremely serious, can satisfy this element. *Id.*

**ARGUMENT: Count 30—Rehabilitation Act (hostile work environment)**

61. As to element (1) of a hostile work environment claim, Plaintiff-Issa had a disability for the reasons stated *supra*, ¶¶ 51, 52, and 55. *See also* Second Amended Complaint, Doc. #18, ¶¶ 233 and 234.

62. As to element (2), *not* being allowed to leave under the circumstances alleged was absolutely unwelcome harassment. That unwelcome harassment was compounded by Defendant-TDCJ accusing Plaintiff-Issa of lying. *See* Second Amended Complaint, Doc. #18, ¶¶ 236 and 237.

63. As to element (3), the harassment was based solely on Plaintiff-Issa's disability. As pleaded, Defendant-TDCJ minimized Plaintiff-Issa's complaints due to her pregnancy emergency and failed to treat a pregnancy emergency as it would have any other emergency. *See* Second Amended Complaint, Doc. #18, ¶ 238.

64. As to element (4), the harassment was severe enough to affect a term, condition, or privilege of employment. Indeed, under the circumstances, it was arguably the most severe harassment imaginable shy of a physical assault. The law is clear that a hostile work environment can be proven disjunctively—through either severe *or* pervasive harassment. Although this was an isolated incident, it was the type of extremely serious incident that satisfies the fourth element. Plaintiff-Issa has detailed the severity of the conduct through the myriad facts alleged in her complaint and, to remove any doubt or need to infer, specifically alleged the fourth element. *See* Second Amended Complaint, Doc. #18, ¶ 239.

65. Element (5) is not disputed. *See* Second Amended Complaint, Doc. #18, ¶ 240.

66. Plaintiff-Issa need not plead a *prima facie* case. The allegations in the pleading must be accepted as true, and Plaintiff-Issa is entitled to the benefit of all reasonable inferences. Applying this standard, Defendant-TDCJ's motion to dismiss count 30 should be denied.

**AUTHORITIES: COUNT 31—Family and Medical Leave Act (family-care provision)**

67. An eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period in order to care for a son or daughter with a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

68. A "son or daughter" is defined as "a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis, who—is under the age of 18 years of age; or 18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12).

69. A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

70. It is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1).

71. To make a *prima facie* case of an FMLA interference claim, the plaintiff must show that: (1) the plaintiff was an eligible employee; (2) the employer was subject to FMLA requirements; (3) the plaintiff was entitled to leave; (4) the plaintiff gave proper notice of their intent to take FMLA leave, and (5) the employer denied the plaintiff the benefits to which they were entitled under the FMLA. *Tatum v. Southern Co. Services, Inc.*, 930 F.3d 709, 713 (5th Cir. 2019).

72. "When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

**ARGUMENT: COUNT 31—Family and Medical Leave Act (family-care provision)**

73. Defendant-TDCJ's argument is nothing more than an attempt to say—without explicitly saying—that an unborn child at seven months gestation is not a person. This argument fails.

74. First, Defendant-TDCJ has provided no authority saying that an unborn child is not a person (more specifically, a "son" or "daughter") within the meaning of the FMLA's family-care provision. Indeed, this appears to be an issue of first impression within the Fifth Circuit. While the statute defines a son or daughter as a "child, [...] who is under 18 years of age," it does not elaborate further. *See* 29 U.S.C. § 2611(12). *See also* 29 C.F.R. § 825.102.

75. Plaintiff-Issa's unborn child was past viability and its heartbeat had previously been detected. *See* Second Amended Complaint, Doc. #18, ¶ 18. This overwhelmingly supports finding the unborn child to be a "son" or "daughter" given the significance the State of Texas has attached to such benchmarks. *See* Civil Practice and Remedies Code § 71.001(4) (defining an "individual" as "an unborn child at every stage of gestation from fertilization until birth."); Health and Safety Code § 170.002(a) (prohibiting abortions during the third trimester when the unborn child is viable); and Health and Safety Code §§ 171.202 and 171.204 (making legislative findings about the significance of fetal heartbeats on viability, and further prohibiting abortions after the detection of a fetal heartbeat).[5]

76. Further, even if one were to consider the possibility that an unborn child does not become a "son" or "daughter" for FMLA purposes until that unborn child breathes its first breath outside the womb, Defendant-TDCJ's argument overlooks the fact that its actions prevented that first breath. As Plaintiff-Issa alleged, medical staff told her they could have saved the baby had she arrived sooner; Plaintiff-Issa did not arrive sooner because of Defendant-TDCJ. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 48 and 49. Thus, Defendant-TDCJ's argument would reward the party with unclean hands by allowing Defendant-TDCJ to avoid liability due to its own misconduct. Such an argument by Defendant-TDCJ should be rejected.

---

[5] *See also* Health and Safety Code § 170A, although this statute did not go into effect until after the incident giving rise to the complaint.

77. Defendant-TDCJ further seeks dismissal due to lack of sufficient notice. The crux of this argument is that Plaintiff-Issa "did not assert that she clearly linked her sickness and her pregnancy" and that she "does not even allege she mentioned her pregnancy when seeking to depart[.]" *See* Defendant-TDCJ's Motion to Dismiss, Doc. #20, pp. 13 and 16. This argument fails for multiple reasons.

78. First, adequate notice was provided in real time to Defendant-TDCJ and such notice has been adequately pleaded. Beginning with real time on November 15, 2021, it would have required extraordinary, intentional naivete by the Individual Defendants to not understand the gravity of the situation. Plaintiff-Issa was seven months pregnant and complaining of extreme pain consistent with a contraction. That brings to mind two things to a reasonable person—(1) labor or (2) a pregnancy complication jeopardizing the life of the mother and child. Defendant-TDCJ's argument about no link between the pain and the pregnancy is almost as if Plaintiff-Issa was complaining about a sprained ankle or a cut on her finger. This argument completely lacks merit.

79. Further, the notice that Plaintiff-Issa provided in real time is adequately stated in the pleading. Plaintiff-Issa stated that the pain was similar to a contraction and that she needed to go to the hospital; Plaintiff-Issa further stated that she reported this repeatedly through multiple supervisors. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 19, 22, 23, 37, 39, 71, 76, 79, 84, 207, 212, 236, and 240. To the extent Defendant-TDCJ has questions about specific content of these conversations, the appropriate remedy is discovery or perhaps even a motion for a more definite statement, but not dismissal.[6]

80. Even assuming for the sake of argument that notice was not sufficient on November 15, 2021, Defendant-TDCJ's argument still fails. If the leave is not foreseeable—i.e., in emergencies—then notice is only required once it becomes practicable to provide such notice. *See* 29 C.F.R. §

[6] *See* Fed. R. Civ. P. 12(e).

825.303(a). Plaintiff-Issa unquestionably provided formal notice *after* the child's death, as Plaintiff-Issa took several months of leave. *See* Second Amended Complaint, Doc. #18, ¶ 57. Accordingly, Defendant-TDCJ's motion to dismiss count 31 should be denied.

WHEREFORE, Plaintiffs respectfully request this Court deny Defendant-TDCJ's Motion to Dismiss. Further, Defendant-TDCJ sought dismissal of the state claims (counts 2, 4, 6, and 26–28) based solely on state sovereign immunity. However, if the Court finds sovereign immunity has been waived, and if the Court further proceeds to an analysis of the state claims based on Fed. R. Civ. P. 12(b)(6), Plaintiffs hereby adopt and incorporate the authorities and arguments pertaining to the federal claims to the respective claims under Texas Labor Code, Chapter 21. This is due to the fact that claims under Texas Labor Code, Chapter 21, have the same elements as claims under Title VII and the ADA. *See Gorman v. Verizon Wireless Texas, LLC*, 753 F.3d 165, 170 (5th Cir. 2014); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999). *See also Texas Department of Transportation v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021).

Respectfully submitted,

/s/ Ross A. Brennan
Bar No. 29842-64
Cronauer Law, LLP
7500 Rialto Blvd, Bldg 1, Ste 250
Austin, TX 78735
ross@cronauerlaw.com
512-733-5151 (phone)
815-895-4070 (fax)