IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Salia Issa, | ) | |
| Fiston Rukengeza, and | ) | |
| Salia Issa and Fiston Rukengeza as | ) | |
| next friends of their unborn child, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: 1:22-cv-1107-LY |
| | ) | |
| | ) | |
| Texas Department of Criminal Justice, | ) | |
| Lt. Brandy Hooper, individually, | ) | |
| Lt. Desmond Thompson, individually, and | ) | |
| Assist. Warden Alonzo Hammond, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' RESPONSE TO THE INDIVIDUAL DEFENDANTS'

## MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Through counsel, Cronauer Law, LLP, Plaintiffs hereby respond to the Individual Defendants'

Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. #21).

## SUMMARY

In Plaintiffs' second amended complaint (Doc. #18), Plaintiffs allege the following causes of

action against the Individual Defendants:[1]

| Count | Parties | Statute |
|---|---|---|
| 7 | Plaintiff-Issa v. Defendant-Hooper | § 1983 (equal protection) |
| 8 | Plaintiff-Issa v. Defendant-Thompson | § 1983 (equal protection) |

---

[1] The Individual Defendants are Lt. Brandy Hooper, Lt. Desmond Thompson, and Assist. Warden Alonzo Hammond.

1

| 9 | Plaintiff-Issa v. Defendant-Hammond | § 1983 (equal protection) |
|---|---|---|
| 10 | Plaintiff-Issa v. Defendant Hooper | § 1983 (bodily integrity) |
| 11 | Plaintiff-Issa v. Defendant-Thompson | § 1983 (bodily integrity) |
| 12 | Plaintiff-Issa v. Defendant-Hammond | § 1983 (bodily integrity) |
| 13 | Plaintiff-Issa v. Defendant-Hooper | § 1983 (right to be a parent) |
| 14 | Plaintiff-Issa v. Defendant-Thompson | § 1983 (right to be a parent) |
| 15 | Plaintiff-Issa v. Defendant-Hammond | § 1983 (right to be a parent) |
| 16 | Plaintiff-Issa v. Defendant-Hammond | § 1983 (supervisory liability) |
| 17 | Plaintiff-Rukengeza v. Defendant-Hooper | § 1983 (right to be a parent) |
| 18 | Plaintiff-Rukengeza v. Defendant-Thompson | § 1983 (right to be a parent) |
| 19 | Plaintiff-Rukengeza v. Defendant-Hammond | § 1983 (right to be a parent) |
| 20 | Plaintiff-Issa and Plaintiff-Rukengeza, as next friends of their unborn child v. Defendant-Hooper | § 1983 (bodily integrity) |
| 21 | Plaintiff-Issa and Plaintiff-Rukengeza, as next friends of their unborn child v. Defendant-Thompson | § 1983 (bodily integrity) |
| 22 | Plaintiff-Issa and Plaintiff-Rukengeza, as next friends of their unborn child v. Defendant-Hammond | § 1983 (bodily integrity) |
| 23 | Plaintiff-Issa and Plaintiff-Rukengeza, as next friends of their unborn child v. Defendant-Hooper | § 1983 (right to life) |
| 24 | Plaintiff-Issa and Plaintiff-Rukengeza, as next friends of their unborn child v. Defendant-Thompson | § 1983 (right to life) |
| 25 | Plaintiff-Issa and Plaintiff-Rukengeza, as next friends of their unborn child v. Defendant-Hammond | § 1983 (right to life) |

The Individual Defendants have moved to dismiss all counts based on qualified immunity.

The Individual Defendants' motion should be denied. As briefed fully below, Plaintiffs have alleged multiple constitutional rights violations, thereby satisfying the first prong of the qualified immunity analysis.

As to the second prong, Plaintiff-Issa was seven months pregnant and complaining of extreme pain consistent with a contraction. That brings to mind two things to a reasonable person—(1) labor or (2) a pregnancy complication jeopardizing the life of the mother and child. When faced with that situation, no reasonable government official would think it was constitutionally permissible to (1) *not* allow Plaintiff-Issa to leave to seek medical attention, (2) *not* send a co-worker to relieve Plaintiff-Issa despite multiple requests and despite multiple co-workers being available, and (3) *not* send medical help. The conduct of the Individual Defendants was egregious and, indeed, unreasonable. Thus, Plaintiffs have also satisfied the second prong of the qualified immunity analysis.

## STANDARD OF REVIEW

1. A complaint must contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2).

2. A defendant may assert that a plaintiff's complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

3. A complaint is not required to allege detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id. See also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007) (explaining that if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, the pleading requirement is met.).

4. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft,*

129 S. Ct. at 1949. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*

5.  If the plaintiff alleges "simply, concisely, and directly" the events that entitle them to damages from the defendant, the plaintiff has met their pleading burden. *Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346, 347 (2014) (per curiam). If the plaintiff informs the defendant of the factual basis for the claim, the plaintiff is "required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Id.*

6.  A plaintiff is not required to plead a *prima facie* case in the complaint. *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 510-511 (2002), *overruled in part on other grounds by Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

## AUTHORITIES: § 1983 (generally)

7.  A person who, under color of state law, deprives another person of a constitutional or federal right may be held liable. 42 U.S.C § 1983.

8.  To state a claim for relief under § 1983, a plaintiff must plead two—and only two—allegations: (1) that a person deprived the plaintiff of a federal right, and (2) that the person who deprived the plaintiff of the right was acting under color of state law. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). *See also Anderson v. Valdez*, 845 F.3d 580, 599 (5th Cir. 2016).

## AUTHORITIES: Qualified Immunity (generally)

9.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quotation omitted).

10. To evaluate whether a government official is entitled to qualified immunity, courts conduct a two-prong inquiry by asking: (1) whether the undisputed facts and the disputed facts, accepting

the plaintiff's version of the disputed facts as true, constitute a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of the clearly established law in effect at the time of the conduct. *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). *See also Johnson v. Halstead*, 916 F.3d 410, 416 (5th Cir. 2019) ("To overcome qualified immunity, a plaintiff must show two things: (1) that the allegations make out a constitutional violation, and (2) that the violation of rights was clearly established at the time of the defendant's conduct.").

11. The two-prong inquiry can be taken in either order. *Pearson*, 129 S. Ct. at 818.

12. Regarding the second prong of the inquiry, the specific action at issue need not have previously been held unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). However, the government official is entitled to "fair notice." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

13. The Supreme Court recently rejected a hyper-technical approach to the second prong. *See Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (per curiam). After finding a constitutional rights violation based on housing a prisoner in a cell covered in human waste, the Fifth Circuit found qualified immunity applied by reasoning that the law was not clearly established that prisoners could not be housed in such conditions. *Id.* at 53. The Supreme Court reversed, reasoning that "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house [the plaintiff] in such deplorably unsanitary conditions for such an extended period of time." *Id.*

14. "Where public officials assert qualified immunity in a motion to dismiss, a district court must rule on the immunity question at that stage. It cannot defer that question until summary judgment. Nor can it permit discovery against the immunity-asserting defendants before it rules on their defense." *Carswell v. Camp*, 37 F.4th 1062, 1066 (5th Cir. 2022).

5

**AUTHORITIES: Substantive Due Process (generally)**

15. "The Due Process Clause[2] guarantees more than fair process, and the "liberty" it protects includes more than the absence of physical restraint. The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests. In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the "liberty" specially protected by the Due Process Clause includes the rights […] to have children; to direct the education and upbringing of one's children; to marital privacy; [and] to bodily integrity[.]" *Washington v. Glucksberg*, 521 U.S. 702, 719-720 (1997) (citations omitted) (quotations in original).

16. By barring certain government actions regardless of the fairness of the procedures used to implement them, substantive due process serves to prevent governmental power from being used for oppression. *Daniels v. Williams,* 474 U.S. 327, 331 (1986).

17. Substantive due process is violated by executive action when that action is "arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998), *quoting Collins v. Harker Heights*, 503 U.S. 115, 128 (1992). *See Rochin v. California*, 342 U.S. 165, 172 (1952). *See also Doe ex rel. Magee v. Covington County School Dist.,* 675 F.3d 849, 867 (5th Cir. 2012) ("Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that

---

[2] "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law*; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV (emphasis added).

it may fairly be said to shock the contemporary conscience."") (quotations in original) (citation omitted).

## AUTHORITIES: Counts 7–9 (equal protection)

18. Sex discrimination in public employment violates the Equal Protection Clause of the Fourteenth Amendment and is therefore actionable under § 1983. *Lauderdale v. Texas Department of Criminal Justice*, 512 F.3d 157, 165-166 (5th Cir. 2007). *See also Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997).

19. Title VII and § 1983 claims are parallel causes of action; thus, in the employment context, an equal protection claim brought pursuant to § 1983 has essentially the same elements as a Title VII claim. *Lauderdale*, 512 F.3d at 166.

20. Plaintiffs hereby incorporate by reference Doc. #24 at ¶ ¶ 25–27 and 32–34.

## ARGUMENT: Counts 7–9 (equal protection)

21. For the same reasons as articulated in Doc. #24 at ¶ 28, the Individual Defendants' focus on an adverse employment action misses the mark. Even if one were to assume the analysis in *Young v. United Parcel Service, Inc.*, 135 S. Ct. 1338 (2015), was limited to statutory construction without constitutional implications, Plaintiff-Issa has still adequately pleaded an equal protection violation against all the Individual Defendants.

22. As *Lauderdale* makes clear, a hostile work environment based on sex in public employment violates both Title VII and the Equal Protection Clause. *Lauderdale*, 512 F.3d at 165-166. Thus, Plaintiff-Issa hereby adopts and incorporates the briefing at Doc. #24, ¶ ¶ 35–39.

23. The Individual Defendants further argue that their personal involvement is not adequately alleged. To the contrary, Plaintiff-Issa has pleaded sufficient allegations against each.

24. Several things should be kept in mind in considering this argument by the Individual Defendants. First, all the Individual Defendants were supervisors with workplace authority over

Plaintiff-Issa. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 102, 106, and 110. Second, such authority included the authority to send help—either in the form of another corrections officer to relieve Plaintiff-Issa or in the form of medical assistance. The pleading makes clear that failing to send help was inexplicable. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 50–56. Third, the pleading alleges that the other corrections officers available to help did not do so at the direction of the Individual Defendants. *See* Second Amended Complaint, Doc. #18, ¶ 53. These facts alone are sufficient to state a claim; however, Plaintiff-Issa's pleading provides even more specificity about the personal involvement of each Individual Defendant.

25. Defendant-Thompson had the most interaction with Plaintiff-Issa, including multiple instances of refusing her requests to leave and explicitly calling her a liar. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 32, 38, 39, and 40.

26. Defendant-Hammond was cited by Defendant-Thompson as the reason Plaintiff-Issa could not leave. *See* Second Amended Complaint, Doc. #18, ¶ 34. Defendant-Hammond cannot now seek to claim lack of personal involvement when Defendant-Thompson already implicated him.

27. Defendant-Hooper had the initial interactions with Plaintiff-Issa. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 20–25. Defendant-Hooper informed Plaintiff-Issa that she would send help but then changed course. *See* Second Amended Complaint, Doc. #18, ¶ ¶ 24 and 25.

28. For the reasons stated above, Plaintiff-Issa has adequately pleaded an equal protection violation in which all the Individual Defendants were personally involved.

29. Further, sex discrimination in public employment has been recognized as unconstitutional for decades. In what will become a common refrain in this brief, under the circumstances alleged in the pleading, no reasonable government official would think it was constitutionally permissible to (1) *not* allow Plaintiff-Issa to leave to seek medical attention, (2) *not* send a co-worker to relieve Plaintiff-Issa despite multiple requests and multiple co-workers being available, and (3) *not* send

medical help. The conduct of the Individual Defendants was egregious and, indeed, unreasonable.

30. In applying the applicable standard of review, accepting the pleaded facts as true and resolving all inferences in favor of Plaintiff-Issa, the Individual Defendants motion to dismiss counts 7–9 should be denied.

**AUTHORITIES: Counts 10–12 and 20–22 (bodily integrity)**

31. The right to be free from state-occasioned damage to one's bodily integrity is protected by the Due Process Clause of the Fourteenth Amendment. *See Doe v. Edgewood Independent School District*, 964 F.3d 351, 365 n. 67 (5th Cir. 2020). *See also Doe v. Taylor Independent School District*, 15 F.3d 443, 450-451 (5th Cir. 1994) (discussing the Fifth Circuit's history of recognizing such a right).

32. This fundamental right dates back to the common law. *See, e.g., Union Pacific Railway Company v. Botsford*, 141 U.S. 250, 251 (1891) ("No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."). *See also Guertin v. State*, 912 F.3d 907, 918-919 (6th Cir. 2019) (tracing the origins of the substantive due process right of bodily integrity and observing that it "bears an impressive constitutional pedigree.").

**ARGUMENT: Counts 10–12 and 20–22 (bodily integrity)**

33. As to the bodily integrity claims, in addition to the detailed factual allegations in the "FACTS" section of the pleading, the specific harm inflicted by the Individual Defendants is also alleged. Doc. #18, ¶¶ 115, 121, 127, 164, 170, and 176.

34. The Individual Defendants argue that substantive due process is only violated when a government official acts "with a culpable mental state," more specifically, the intent to injure. *See*

Individual Defendants' Motion to Dismiss (Doc. #21), pp. 11-12. That is not the standard and the argument should be rejected.

35. The standard is conduct that shocks the conscience. *Rochin*, 342 U.S. at 172. Negligence is not enough to rise to the level of conscience shocking behavior; deliberate decisions must typically be involved. *Daniels*, 474 U.S. at 330–331.

36. As *Daniels* stated, deliberate decisions are required—not an intent to injure.[3] *Rochin*, the Supreme Court case which established the shocks-the-conscience standard, did *not* involve an intent to injure. *See Rochin*, 342 U.S. at 166 (involving an involuntary stomach-pumping during a criminal drug investigation).

37. To the extent the case law includes any reference to an intent to injure, it is only to say that an intent to injure would "most probably" result in a substantive due process violation as compared to a case involving lack of due care. *See County of Sacramento*, 523 U.S. at 848–849 ("We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.") (citations omitted).

38. It is unquestionable that Plaintiffs' claims revolve around deliberate decisions by the Individual Defendants. The Individual Defendants did not accidentally keep Plaintiff-Issa at work against her will; they affirmatively stopped her from leaving despite her repeated requests. As such, the Individual Defendants' argument about an intent to injure should be rejected.

---

[3] To adopt a criminal law analogy: an *actus reus* is required, but not a *mens rea*. There must be a deliberate decision to act or not act, but that decision need not be accompanied by nefarious intent.

39. The Individual Defendants also argue that it is Plaintiffs' burden to find a case that does not define the law at a high level of generality. *See* Individual Defendants' Motion to Dismiss ([Doc. #21](#)), p. 12. Again, this is not the standard. To the contrary, the argument that there must be a specific case on-point has been rejected. *See Anderson*, [483 U.S. at 640](#) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (citation omitted).

40. Further, this argument by the Individual Defendants is the exact type of hyper-technical interpretation of qualified immunity that was recently rejected by the Supreme Court in *Taylor*, [141 S. Ct. at 53](#). Just as the defendants in *Taylor* argued there was not a case on point saying they could not house an inmate in a cell covered in human waste, the Individual Defendants are arguing there is not a case on point about not allowing a pregnant woman to leave her workplace during a medical emergency. This Court should reject the argument based on the extreme circumstances, just as the *Taylor* court rejected the argument.

41. The lack of a case with directly analogous facts does not serve to sanction the Individual Defendants' conduct, which is seemingly what they are arguing. To the contrary, it reflects the unreasonableness of their conduct. It should be no surprise that there is a dearth of case law about government officials refusing to provide help to a pregnant employee during a medical emergency, just as there was a dearth of case law about housing an inmate in feces in *Taylor*. No reasonable government official would do such things because they would recognize the wrongfulness of the conduct.

42. No reasonable government official would think it was constitutionally permissible to (1) *not* allow Plaintiff-Issa to leave to seek medical attention, (2) *not* send a co-worker to relieve Plaintiff-Issa despite multiple requests and despite multiple co-workers being available, and (3)

*not* send medical help. The overarching inquiry is how a reasonable government official would act. The conduct of the Individual Defendants was egregious and, indeed, unreasonable.

43. In applying the applicable standard of review, accepting the pleaded facts as true and resolving all inferences in favor of Plaintiffs, the Individual Defendants motion to dismiss counts 10–12 and 20–22 should be denied.[4]

**AUTHORITIES: Counts 13–15 and 17–19 (right to be a parent)**

44. Substantive due process protects the right to have children, as well as the right to direct the education and upbringing of one's children. *Glucksberg*, 521 U.S. at 720. *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (describing the Fourteenth Amendment's substantive due process clause by saying: "Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual [...] *to marry, establish a home and bring up children* [...] and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.") (emphasis added). *See also Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 536 (1942) (involving the "the right to have offspring").[5]

---

[4] All of the arguments in this section apply equally to the claims brought by Plaintiff-Issa and to the claims brought on behalf of the unborn child. For the unborn child, the Individual Defendants raise the additional argument that its right to allege a Fourteenth Amendment violation was not clearly established; this argument is based on the second prong of the qualified immunity analysis. *See* Individual Defendants' Motion to Dismiss (Doc. #21), pp. 13–15. For discussion on this point *see infra*, ¶ ¶ 56–64, which is hereby adopted and incorporated into this section.

[5] *Skinner* was decided pursuant to the equal protection clause of the Fourteenth Amendment as opposed to the due process clause of the Fourteenth Amendment. *Skinner*, 316 U.S. at 541. While the holding is an outlier given both *Meyer* (pre-*Skinner*) and *Glucksberg* (post-*Skinner*) refer to the right to be a parent as protected by substantive due process, Plaintiffs have pleaded both constitutional provisions in their complaint. (Although Plaintiffs would note that referencing the specific legal authority giving rise to liability is not required. *See Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346 (2014) (per curiam)).

**ARGUMENT: Counts 13–15 and 17–19 (right to be a parent)**

45. Regarding the right to be a parent, the Individual Defendants again argue that the pleading does not establish they acted "with a culpable mental state." *See* Individual Defendants' Motion to Dismiss (Doc. #21), p. 15. This is not the standard for the same reasons as detailed above, *see supra*, ¶ ¶ 34–38, which are hereby adopted and incorporated. This argument should be rejected.

46. Next, the Individual Defendants seemingly acknowledge that the constitutional right to be a parent is well established, but then pivot and argue that it is Plaintiffs' burden to find a case that does not define the law at a high level of generality. *See* Individual Defendants' Motion to Dismiss (Doc. #21), p. 15-16. Again, this argument should be rejected for the reasons detailed in the prior section, *see supra*, ¶ ¶ 39–42, which are hereby adopted and incorporated.

47. Finally, to remove any doubt, the constitutional right to be a parent was first explicitly recognized 100 years ago in *Meyer v. Nebraska*, 262 U.S. 390 (1923). To the extent there is any inconsistent verbiage in the pleading, that is intentional to reflect the Supreme Court's varying verbiage used in the multiple cases where it has recognized this right. The constitutional right to have children is clearly well established.

48. In applying the applicable standard of review, accepting the pleaded facts as true and resolving all inferences in favor of Plaintiffs, the Individual Defendants motion to dismiss should be denied as to counts 13–15 and 17–19.

**AUTHORITIES: Counts 23–25 (right to life)**

49. Although no longer the law of the land, *Roe v. Wade* stated that "the word "person," as used in the Fourteenth Amendment, does not include the unborn." 410 U.S. 113, 158 (1973).

50. *Roe* stood for the greater premise that there was a constitutional right to an abortion—to a certain point—within the Fourteenth Amendment's substantive due process clause. *Roe*, 410 U.S.

at 163-165. *See also Glucksberg*, 521 U.S. at 720 (explicitly listing the right to an abortion as protected by the Fourteenth Amendment).

51. After *Roe*, the Supreme Court decided *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). *Casey* adopted an "undue burden" analysis while also replacing the trimester approach of *Roe* with a viability standard. *See Casey*, 505 U.S. at 878-879.

52. *Roe* and *Casey* were overruled in 2022. *See Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228, 2242 (2022) ("We hold that *Roe* and *Casey* must be overruled. The Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision, including the one on which the defenders of *Roe* and *Casey* now chiefly rely—the Due Process Clause of the Fourteenth Amendment. That provision has been held to guarantee some rights that are not mentioned in the Constitution, but any such right must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty.""), *quoting Glucksberg*, 521 U.S. at 721.

53. Whereas *Roe* explicitly addressed the Fourteenth Amendment implications of its holding for unborn children, *Dobbs* explicitly avoided the issue: "Our opinion is not based on any view about if and when prenatal life is entitled to any of the rights enjoyed after birth." *Dobbs*, 142 S. Ct. at 2261.

54. For decades, states have had the ability to extend protections to unborn children after the first trimester (under *Roe*) and post-viability (under *Casey*). Texas had unequivocally done so prior to the incident giving rise to this case. *See, e.g.,* Civil Practice and Remedies Code § 71.001(4)[6] (defining an "individual" as "an unborn child at every stage of gestation from fertilization until birth."); Health and Safety Code § 170.002(a)[7] (prohibiting abortions during the third trimester

---

[6] Most recent amendments taking effect September 1, 2003.

[7] Most recent amendments taking effect November 14, 2017.

when the unborn child is viable); and Health and Safety Code §§ 171.202 and 171.204[8] (making legislative findings about the significance of fetal heartbeats on viability, and further prohibiting abortions after the detection of a fetal heartbeat).

55. The Attorney General of Texas issued an advisory on the same day *Dobbs* was decided, stating that *Roe* was "legally incorrect," created a constitutional right "out of thin air," and had "no basis in the text of the U.S. Constitution then or now."[9] This position by the State of Texas is consistent with the majority opinion in *Dobbs*, which characterized *Roe* as "egregiously wrong from the start." *Dobbs*, 142 S. Ct. at 2243.

**ARGUMENT: Counts 23–25 (right to life)**

56. The Individual Defendants argue that the Court "need not weigh into the difficult question of whether, post-*Dobbs*, an unborn child possesses constitutional rights under the Fourteenth Amendment." *See* Individual Defendants' Motion to Dismiss (Doc. #21), p. 20.[10]

57. In other words, the Individual Defendants are asking the Court to skip the first prong of a qualified immunity analysis—whether there was a violation of an unborn child's constitutional

---

[8] Most recent amendments taking effect September 1, 2021.

[9] Available at:
https://www.texasattorneygeneral.gov/sites/default/files/images/executive-management/Post-Roe%20Advisory.pdf

Plaintiffs request the Court consider this advisory for illustrative purposes to demonstrate the State of Texas's views on whether an unborn child is a person, and that the Court's consideration of this information *not* be used to convert the Individual Defendants' motion to a motion for summary judgment. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[10] This is very similar to the arguments the Individual Defendants make regarding the unborn child's right to assert bodily integrity claims, wherein they repeatedly argue that no legal authority on November 15, 2021, made it clear that their conduct was unconstitutional as it pertained to the unborn child. *See* Individual Defendants' Motion to Dismiss (Doc. #21), pp. 13–15. Accordingly, Plaintiffs are addressing this overarching argument once but ask the Court to consider it for all of the unborn child's claims.

right—and decide the motion solely on the second prong—whether the right was clearly established.

58. The second prong exists to provide government officials fair notice that their actions would be unlawful. *See Hope*, <u>536 U.S. at 739</u>. In other words, if it would be apparent to a reasonable government official that their conduct would be unlawful, they cannot hide behind the second prong. *See, e.g., Anderson*, <u>483 U.S. at 640</u>. *See also Taylor*, <u>141 S. Ct. at 53</u>.

59. Plaintiff-Issa was seven months pregnant and complaining of extreme pain consistent with a contraction. That brings to mind two things to a reasonable person—(1) labor or (2) a pregnancy complication jeopardizing the life of the mother and child. When faced with that situation, no reasonable government official would think it was constitutionally permissible to (1) *not* allow Plaintiff-Issa to leave to seek medical attention, (2) *not* send a co-worker to relieve Plaintiff-Issa despite multiple requests and despite multiple co-workers being available, and (3) *not* send medical help.

60. Further, the Individual Defendants are all employees of the State of Texas, a state which had extended significant protections to unborn children at seven months gestation *prior* to the date of the incident in this case. Such considerations are absolutely relevant to the Court's inquiry. *See Douglas v. Town of Hartford, Conn.*, <u>542 F. Supp. 1267</u>, 1270 (D. Conn. 1982) (finding a fetus a person for § 1983 purposes by looking at established trends in state court).

61. The Individual Defendants are also all represented by the Attorney General of Texas, who has stated that *Roe* was "legally incorrect," created a constitutional right "out of thin air," and had "no basis in the text of the U.S. Constitution then or now." Yet the Individual Defendants are hanging their hats *Roe* for the second prong of the qualified immunity analysis, arguing—based on one sentence in the *Roe* opinion—it was not clearly established that an unborn child at seven months gestation had constitutional rights.

62. In other words, the Individual Defendants invoking the second prong of qualified immunity is a complete legal fiction. The Individual Defendants' argument is based on this unrealistic notion that government officials have expert knowledge of constitutional standing and § 1983 pleading requirements. The argument is based on this fanciful idea that the Individual Defendants were operating with a precise grasp of the text of *Roe v. Wade* and that, had they only known the unborn child could bring claims, they would have acted differently. That is simply not the case. Given the State in which the Individual Defendants live and work, there is no reason to think they would have done anything differently the day after *Roe* was overruled. Further, there is no colorable argument that the State of Texas pre-*Dobbs* did not value fetal life, whereas the State of Texas post-*Dobbs* does value fetal life.

63. The second prong of the qualified immunity analysis is designed to protect government officials by providing them notice of the acts for which they can be sued. But when it would be apparent to a reasonable government official that the conduct at issue is constitutionally prohibited, the second prong will not save them from liability. That is exactly the case here. Given the extreme circumstances that occurred, any reasonable government official would have recognized the constitutional violations. Simply put, the Individual Defendants' conduct was not reasonable, and no reasonable government official would have acted in that manner.

64. In applying the applicable standard of review, accepting the pleaded facts as true and resolving all inferences in favor of Plaintiffs, the Individual Defendants motion to dismiss should be denied as to counts 23–25.

**AUTHORITIES: Count 16 (supervisory liability)**

65. In the § 1983 context, a supervisor is liable for the constitutional violations of their subordinate if the supervisor, through action or inaction, demonstrates a deliberate indifference towards a plaintiff's constitutional rights. *Southard v. Texas Board of Criminal Justice*, 114 F.3d 539, 550-51 (5th Cir. 1997).

**ARGUMENT: Count 16 (supervisory liability)**

66. Despite the arguments otherwise, it is clear that Defendant-Hammond knew of the situation. As stated above, Defendant-Hammond was cited by Defendant-Thompson as the reason Plaintiff-Issa could not leave. *See* Second Amended Complaint, Doc. #18, ¶ 34. Defendant-Hammond cannot now seek to claim lack of personal involvement when Defendant-Thompson already implicated him.

67. As briefed throughout this response, the nature of the constitutional rights violations were clear to any reasonable government official. Defendant-Hammond was informed what was going on, yet he sat idly by while Plaintiffs' rights were violated. Defendant-Hammond's actions are the exact type of deliberate indifference that supervisory liability was designed to prevent.

68. Accordingly, Defendant-Hammond's motion should be denied as to count 16.

WHEREFORE, Plaintiffs respectfully request this Court deny the Individual Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. Additionally, given their reliance on the second prong of the qualified immunity analysis for the unborn child's claims, the Individual Defendants nowhere address the substantive legal issue of whether an unborn child is a "person" within the meaning of the Fourteenth Amendment; that issue would be necessary to resolve prong one of the qualified immunity analysis. Should the Individual Defendants decide to brief this issue in their reply, Plaintiffs hereby request permission to file a surreply.[11]

Respectfully submitted,

/s/ Ross A. Brennan
Bar No. 29842-64
Cronauer Law, LLP
7500 Rialto Blvd, Bldg 1, Ste 250
Austin, TX 78735
ross@cronauerlaw.com
512-733-5151 (phone)
815-895-4070 (fax)

---

[11] The Individual Defendants' lack of briefing on this issue—prong one of the qualified immunity analysis for the unborn child's claims—should be treated as a concession (at least for purposes of the motion) that an unborn child is a "person" as referenced in the Fourteenth Amendment and that the actions of the Individual Defendants did violate the unborn child's rights.

While Plaintiffs cannot respond to an argument that the Individual Defendants have not made, to remove any doubt, Plaintiffs' position is that the unborn child was a person for constitutional purposes and that the Individual Defendants' actions violated the unborn child's rights. While Plaintiffs can provide a substantive briefing *if* the Individual Defendants weigh in on this issue, for the time being, Plaintiffs would point out that the sentence in *Roe* on which the Individual Defendants rely was *not* part of the "central holding" upheld in *Casey*, which was the controlling opinion at the time of the incident giving rise to this case. *See Casey*, 505 U.S. at 878-879 ("Our adoption of the undue burden analysis does not disturb the central holding of *Roe* v. *Wade,* and we reaffirm that holding. Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.").

Further, *Casey* adopted a viability standard. The word "viability" means "the ability to *live*, grow, and develop." Merriam-Webster Dictionary, online version. The word "live" means "to be alive." Merriam-Webster Dictionary, online version. Plaintiffs have explicitly alleged the unborn child was viable. *See* Second Amended Complaint, Doc. #18, ¶ 18.