IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SALIA ISSA, FISTON RUKENGEZA, *et al.* § | | |
| *Plaintiffs*, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 1:22-cv-1107-LY |
| § | | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, § | | |
| *et al.* § | | |
| *Defendants.* § | | |

### DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Date: March 10, 2023

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | BENJAMIN L. DOWER<br>Special Litigation Counsel<br>Texas Bar No. 24082931 |
| BRENT WEBSTER<br>First Assistant Attorney General | Attorney-in-Charge<br>Benjamin.Dower@oag.texas.gov |
| GRANT DORFMAN<br>Deputy First Assistant Attorney General | Office of the Attorney General<br>Law Enforcement Defense Division<br>P.O. Box 12548, Capitol Station |
| SHAWN COWLES<br>Deputy Attorney General for Civil Litigation | Austin, Texas 78711-2548<br>(512) 463-2080 / Fax (512) 370-9994 |
| SHANNA MOLINARE<br>Chief, Law Enforcement Defense Division | **ATTORNEYS FOR DEFENDANTS TDCJ, LT. HOOPER, LT. THOMPSON, AND ASSISTANT WARDEN HAMMOND** |

TO THE HONORABLE DISTRICT COURT JUDGE LEE YEAKEL:

**MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

**1.  Texas Labor Code claims are barred by sovereign immunity (Counts 2, 4, 6, 26–28)**

TDCJ moves to dismiss Plaintiffs' Texas Labor Code claims because they are barred by sovereign immunity. Dkt. #20 at 3–4 (citing, *inter alia*, *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 599 (5th Cir. 2021)). In Chapter 21 of the Texas Labor Code, also known as the Texas Commission on Human Rights Act ("TCHRA"), "the State of Texas waives its immunity to suit in state courts, but it does not expressly waive sovereign immunity in *federal* court." *Sullivan*, 986 F3d at 599 (internal citations omitted). Plaintiffs' Response acknowledges that *Sullivan* "held that there was no [] waiver" of sovereign immunity for claims brought under Chapter 21 of the Texas Labor Code in federal court but contends that the case was wrongly decided. Dkt. #24 at ¶¶ 12–18. A published Fifth Circuit opinion binds the district courts in this circuit. *ODonnell v. Salgado*, 913 F.3d 479, 482 (5th Cir. 2019). As such, even if *Sullivan* were wrongly decided, this Court would still be obliged to follow it.[1]

Moreover, *Sullivan* was correctly decided. The Supreme Court has long "held that a State may consent to suit against it in federal court" but "insisted that the State's consent be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). No such unequivocal consent to suit in federal court is contained in the TCHRA. Plaintiffs argue that the TCHRA waives sovereign immunity in federal court because it authorizes an aggrieved person to file a "civil action" against an employer (including a state agency) and without specifying between state and federal court. *See* Dkt. #24 at ¶¶ 13–15. Plaintiffs further note that another

---

[1] Indeed, even within the Fifth Circuit, "[i]t is well-established . . . that one panel of [the] Court may not overrule another." *Cent. Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001).

1

TCHRA provision contemplates a civil action filed in federal court. *Id.* But a waiver by inference or implication is not unequivocal, and therefore will not suffice. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332–33 (5th Cir. 2002).

Finally, Plaintiffs contend that TDCJ's invocation of sovereign immunity amounts to a challenge to constitutionality of the TCHRA. Dkt. #24 at ¶¶ 16-18. But TDCJ is not challenging the TCHRA and no such holding is required for this Court to grant TDCJ's motion. TDCJ simply asks the Court to apply an on-point published Fifth Circuit opinion and dismiss state law claims that are barred when filed in federal court.

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**1.   Issa fails to state a claim for disparate treatment based on sex (Count 1)**

According to Plaintiffs' Second Amended Complaint, Plaintiffs' first count is "Title VII (disparate treatment, sex)." Dkt. #18 at 2, 9. TDCJ argues that the alleged facts did not create the reasonable inference that TDCJ engaged in an adverse employment action or took an adverse employment action against Issa, the "'two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII.'" *See id.* (quoting *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)). But while Plaintiffs' Response still uses the label "disparate treatment, sex," it briefs the claim as though it were "disparate treatment, pregnancy." *See* Dkt. #24 at 8. The distinction changes the elements of the claim. Is the alleged disparate treatment between Issa and "similarly-situated men experiencing the same adverse employment action"?[2]

---

[2] As Plaintiffs argue, "[w]hen pregnancy is involved in a disparate treatment, whether or not there was an adverse employment action is irrelevant." Dkt. #24 at ¶ 28. That does not appear to be true when the protected category is sex. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (applying the "ultimate employment decision" standard to a disparate treatment on the basis of sex claim brought under Title VII). Issa does not argue that the delay in granting her leave to depart meets the ultimate employment standard.

2

Or is alleged disparate treatment between Issa and "similarly-situated non-pregnant employees seeking the same accommodation"?[3]

Assuming Plaintiffs' response pivot from sex to pregnancy is permitted, the Court should still dismiss the pregnancy-based disparate treatment claim for reasons raised in TDCJ's motion to dismiss. *See* Dkt. #20 at 6–7, 19. A plausible pregnancy disparate treatment claim based on a failure-to-accommodate requires factual allegations that create the reasonable inference that the plaintiff "sought [an] accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *Young v. United Postal Servs., Inc.*, 575 U.S. 206, 229 (2015). Here, the allegations do not create the reasonable inference either (1) that TDCJ did not accommodate Issa or (2) that TDCJ did accommodate others similar in their ability or inability to work.

As argued in its motion to dismiss, TDCJ *did* accommodate Issa by granting her request to leave work mid shift, it just did not grant that accommodation within minutes of receipt. *See* Dkt. #20 at 19. "TDCJ did not refuse to engage in an interactive process, it simply did not grant Issa's request to *immediately* relieve her of all job duties and reassign another employee to perform those duties." *Id.* As such, the factual allegations do not create the reasonable inference that TDCJ did not accommodate Issa. *See Young*, 575 U.S. at 228.

As for Plaintiffs' argument that TDCJ "accommodate[d] others similar in their ability or inability to work," Dkt. #24 at ¶ 29, it misses the mark because it rests on conclusory contentions

---

[3] "Evidence of general sex discrimination . . . is not probative of pregnancy discrimination, because the Pregnancy Discrimination Act requires courts to inquire whether the employer treats pregnancy or pregnancy-related conditions differently than other medical conditions." *Hobbs v. Ketera Tech., Inc.*, 865 F. Supp.2d 719, 728 (N.D. Tex. 2012); *see also Young v. United Postal Servs., Inc.*, 575 U.S. 206, 228 (2015).

that are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As argued in TDCJ's motion, Dkt. #20 at 6–7, Plaintiffs' naked allegation that, at unspecified times in unspecified units, TDCJ permitted unspecified employees to leave their shifts early while experiencing unspecified non-pregnancy-related emergencies lacks the factual enhancement required by Rule 8. *Compare* Dkt. #18 at ¶¶ 55–56, *with Iqbal*, 556 U.S. at 680–81. Indeed, this allegation is little more than a bare recitation of a prima facie element. *Compare* Dkt. #24 at ¶ 29, *with Young*, 1354 at 229.

Even if Plaintiffs' conclusory allegation were entitled to deference, it would still not support Issa's pregnancy-based disparate treatment claim. Plaintiffs allege that "[p]rior to November 15, 2021, Defendant-TDCJ had permitted other employees to leave their shifts early while those employees were experiencing non-pregnancy-related medical emergencies and non-pregnancy-related medical issues." Dkt. #24 at ¶ 55. But, per the pleadings, TDCJ also permitted Issa to leave her shift early when she experienced a pregnancy-related medical emergency. *Id.* at ¶¶ 41–42. Yes, Plaintiffs contend her request should have been granted immediately, but the vague allegation about the other unspecified employees says nothing about their turnaround times either. Based on Plaintiffs' contention, TDCJ treated Issa *the same* as her would-be comparators. And regardless, the lack of specificity prevents inferences regarding decision-maker intent. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (holding that a comparator must "share[] the same supervisor or ha[ve] their employment status determined by the same person" as the plaintiff). In sum, the allegations simply do "not nudge[] [Issa's] claims of invidious discrimination 'across the line from conceivable to plausible.'" *See Iqbal*, 556 U.S. at 680 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

## 2. Issa fails to state a claim for a sex-based hostile work environment (Count 3)

TDCJ asks the Court to dismiss Issa's sex-based hostile work environment claim for failure to state a claim. As an initial matter, the parties disagree about whether a personnel decision can itself constitute "unwelcome harassment" under Title VII. TDCJ's motion argues that a discrete employment decision must be analyzed in the framework for a disparate treatment claim rather than being repackaged as a claim of hostile work environment. *See* Dkt. #20 at 8–9 (citing *Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 698 F. Supp.2d 730, 749 (S.D. Tex. 2010)). Citing no authority, Plaintiffs argue not being allowed to leave work mid shift is "absolutely unwelcome harassment." Dkt. #24 at ¶ 36. But regardless of whether this Court considers only the superior officers' alleged statements (as TDCJ contends) or their alleged statements paired with personnel decisions (as Plaintiffs contend), Issa fails to state a claim. The factual allegations do not create the reasonable inference that the alleged "harassment" Issa contends she experienced was (1) either severe or pervasive, and (2) based on her sex. Assuming it is actionable as a hostile work environment claim, the allegations do not create the reasonable inference that, if Issa had been a man, her request to leave work shortly after arriving would not have received the initial pushback she allegedly experienced. *See* Dkt. #18 at ¶ 40.

## 3. Issa fails to state a claim for sex-based disparate impact (Count 5)

TDCJ asks the Court to dismiss Issa's disparate impact claim. Plaintiffs argue that they need not allege a statistical disparity to state a claim because they can demonstrate that all people within the protected group would be impacted by the practice or policy. Dkt. #24 at ¶¶ 44–45. But the case Plaintiffs cite involved a supposedly mandatory job requirement. *See id.* (citing *Garcia v. Woman's Hospital of Texas*, 97 F.3d 810, 813 (5th Cir. 1996)). Here, by contrast, the neutral policy that Plaintiffs contend causes a disparate impact is not a criterion for employment, it is an intra-

5

workplace rule. *See* Dkt. #18 at ¶ 27. Specifically, the challenged rule prohibits correctional officers from leaving their assigned security post until they have been properly relieved (to ensure prison security). *See id.* But Plaintiffs' Response still does not identify the impact that they contend falls disparately on pregnant women.

In *Garcia*, the employer's policies (1) required employees to be able to "push, pull, lift, and support of 150 lbs", (2) prohibited employees on leave from returning to work with any medical restrictions, and (3) required discharging employees who were on medical leave for more than six months. 97 F.3d at 812. The plaintiff had a pregnancy-related medical restriction prohibiting her from pushing, pulling, lifting, and supporting over 150 lbs. *Id.* Because her pregnancy resulted in her being on leave and because she still had the medical restriction after being on leave for six months, the confluence of the employer's policies resulted in the termination of the plaintiff's employment. *Id.* Analyzing whether these facts might present a viable disparate impact claim, the Fifth Circuit concluded that it might. *Id.*

In so holding, the Fifth Circuit identified the employer's lifting requirement as the policy that would more harshly impact pregnant women. *Garcia*, 97 F.3d at 813. The *Garcia* Court emphasized the need for the plaintiff to prove that "the effect that the 150-pound lifting requirement would cause pregnant women as a group to be forced onto unnecessary medical leave and, because of the six-month limit on medical leave, to be terminated." *Id.* "It would, of course, be insufficient for a claim under Title VII if [the plaintiff] were the only pregnant woman adversely affected; she must show that pregnant women as a group would be subject to this medical restriction." *Id.* The plaintiff could only prevail on disparate impact "[i]f *all* or *substantially all* pregnant women [were] advised by their obstetrician not to lift 150 pounds." *Id.* (emphasis added).

6

Here, TDCJ policy prohibits correctional officers from leaving their assigned security post until they have been properly relieved. Dkt. #18 at ¶ 27. Plaintiffs allege that this policy, "despite being facially neutral, disparately impacted Plaintiff-Issa on the basis of sex," reasoning that "[a]ll or substantially all pregnant women *would have been* advised by their obstetrician to leave immediately." Dkt. 18 at ¶ 90 (emphasis added). As suggested by the phrase "would have been," which refers to a hypothetical scenario rather than something that has transpired, Plaintiffs' factual allegations do not support the proposition that all or substantially all pregnant women who work for TDCJ have experienced, are presently experiencing, or will experience the same type of pregnancy-related exigency as Issa did on November 15, 2021. And *Garcia* makes clear that a disparate impact claim cannot rest on circumstances particular to the plaintiff's unique situation—a disparate impact claim requires "pregnant women as a group" to be subjected to the same condition. *See* 97 F.3d at 813. Because the factual allegations do not create the reasonable inference that pregnant women are disparately impacted by the policy identified in the pleading, Issa fails to state a disparate impact claim.

4. **Issa fails to state a claim for a violation of the family-care provision of the FMLA (Count 31)**

TDCJ asks the Court to dismiss Plaintiffs' FMLA family-care claim. TDCJ's motion first argued that the family-care provision did not apply to an unborn child. *See* Dkt. #20 at 14–15. Plaintiffs' Response contends that TDCJ "has provided no authority saying that an unborn child is not a . . . 'son' or 'daughter' within the meaning of the FMLA's family-care provision." Dkt. #24 at ¶ 74. But the Supreme Court has already identified "the self-care provision [as] offer[ing] some women a benefit by allowing them to take leave for pregnancy related illnesses." *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 43–44 (2012). Indeed, although *Coleman* was sharply divided,

7

all nine Justices identified the self-care provision as applicable to women experiencing a pregnancy-related serious health condition. *Id.* (five-justice majority opinion); *id.* at 50 (four-justice dissenting opinion) ("[T]he self-care provision, 29 U.S.C. § 2612(a)(1)(D), prescribes comprehensive leave for women disabled during pregnancy or while recuperating from childbirth—without singling out pregnancy or childbirth.").

The only case that TDCJ's counsel could find that seemed to squarely address the novel proposition urged by Plaintiffs is a case from the United States District Court, District of Arizona. In *Proctor v. Riley Indus., Inc.*, the plaintiff was an unmarried expectant father. 579 F. Supp.3d 1127, 1130 (D. Arizona 2022). Because the FMLA regulations only guaranteed "if needed to care for [a spouse] during her prenatal care," 29 C.F.R. § 825.120(a)(5), the plaintiff urged the court to interpret the family-care provision to include unborn children so he would be entitled to FMLA leave for his fiancé's prenatal care. *Id.* But the *Proctor* Court noted that "neither the statute nor regulations include unborn children in the definition of covered children." *Id.* The *Proctor* Court also reasoned that the pertinent regulations regarding FMLA leave prior to the birth of a child could not be reconciled with the expectant father's proposed reading of the statute. *See id.* at 1130–31. For both reasons, the court held that the FMLA's family-care protections did not extend to an unborn child. *Id.* at 1131.

Even if an employee could invoke the FMLA's family-care provision for a pregnancy-related medical situation, Issa did not do so here. According to the pleadings, Issa asked to leave her place of work immediately to address her own serious health condition, not those of her child. *See* Dkt. #18 at ¶¶ 19–23. Issa allegedly said that "she really need[s] to go to the hospital due to the pain she was experiencing." *Id.* at ¶ 37. This did not provide TDCJ with even verbal notice

8

regarding "the condition renders [Issa's] family member unable to perform daily activities," as prompted by FMLA regulations regarding notice to the employer "if the leave is for a family member." *See* 29 C.F.R. § 825.302(c).

Arguing the contrary, Plaintiffs emphasize that Issa provided information regarding her own pregnancy and her own pain. *See* Dkt. #24 at ¶¶ 78–79. But again, the pertinent point is that because Issa invokes the FMLA's family-care provision, rather than the self-care provision, the serious medical condition that she needed to relay to her employer was that of the unborn child. And she never relayed anything regarding her unborn child. If this analysis seems incongruous, it is the result of the "family-care" designation. It is apparent from the pleadings that Issa sought medical leave for herself, to treat her pain related to her pregnancy. Under the FMLA, a serious medical need stemming from pregnancy qualifies as self-care, not family-care. As such, Issa's only recourse under the FMLA is as a self-care claim.

Finally, Plaintiffs argue that Issa gave notice after-the-fact and that she eventually took several months of leave. Dkt. #24 at ¶ 80. But the pleadings do not allege that TDCJ took any adverse actions after November 15, 2021. The sole grievance is a 2.5-hour delay in granting permission to leave work mid-shift on that day. Plaintiffs have not alleged a plausible interference claim under the FMLA's family-care provision.

5. **Issa fails to state a denial of a reasonable accommodation claim under the Rehabilitation Act (Count 29)**

TDCJ asks the Court to dismiss Issa's claim for a denial of a reasonable accommodation under the Rehabilitation Act. "A request for a reasonable accommodation . . . is a claim that the employee 'with or without a reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires.'" *Acker v. General Motors, LLC*, 853

F.3d 784, 791 (5th Cir. 2017) (quoting 42 U.S.C. § 12111(8)). Here, the opposite was true. Issa sought permission to leave—not to enable her to do her job—but because she believed she needed to leave work immediately.

Plaintiffs' arguments in rebuttal focus on the reasonableness of the request while ignoring the significance of its purpose. *See* Dkt. #24 at ¶ 53. When an employee seeks leave because she "*cannot* perform the functions of the job," she is not requesting an accommodation to enable her to perform its essential functions. *Acker*, 853 at F.3d at 791–92 (emphasis in original). A modified work schedule is indeed a potentially reasonable accommodation, but Issa requested to leave work immediately based on a sudden pain, not modify her schedule henceforward based on a disability. And Plaintiffs' contention (at ¶ 54) that anything other than immediately granting her request amounts to an illegal denial ignores the "good faith, back and forth" dialogue between "employer and employee" central to the interactive process. *See Dillard v. City of Austin, Texas*, 837 F.3d 557, 562–63 (5th Cir. 2016). TDCJ granted Issa leave to depart, a reasonable accommodation, thereby satisfying the Rehabilitation Act.

### 6. Issa fails to state a claim for hostile work environment under the Rehabilitation Act (Count 30)

Finally, TDCJ asks the Court to dismiss Issa's claim for a hostile work environment under the Rehabilitation Act. For the same reason as under Title VII, the pleadings do not create the reasonable inference that TDCJ engaged in actionable harassment. And the allegations do not create the reasonable inference that TDCJ harassed Issa *because* of her pregnancy emergency, much less solely because of it.

### PRAYER

For all these reasons, TDCJ respectfully asks the Court to grant its motion to dismiss.

| | |
|---|---|
| Date: March 10, 2023 | Respectfully Submitted, |
| KEN PAXTON<br>Attorney General of Texas | /s/ *Benjamin L. Dower*<br>BENJAMIN L. DOWER<br>Special Litigation Counsel |
| BRENT WEBSTER<br>First Assistant Attorney General | Texas Bar No. 24082931<br>Attorney-in-Charge<br>Benjamin.Dower@oag.texas.gov |
| GRANT DORFMAN<br>Deputy First Assistant Attorney General | Office of the Attorney General<br>Law Enforcement Defense Division |
| SHAWN COWLES<br>Deputy Attorney General for Civil Litigation | P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>(512) 463-2080 / Fax (512) 370-9994 |
| SHANNA MOLINARE<br>Chief, Law Enforcement Defense Division | **ATTORNEYS FOR DEFENDANTS TDCJ, LT. HOOPER, LT. THOMPSON, AND ASSISTANT WARDEN HAMMOND** |

## CERTIFICATE OF SERVICE

I, BENJAMIN L. DOWER, certify that a true and correct copy of the foregoing document was filed and served via the Court's CM/ECF document filing system on March 10, 2023 to:

Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd
Bldg 1, Ste 250
Austin, TX 78735
512-733-5151
Fax: 815-895-4070
Email: ross@cronauerlaw.com
**ATTORNEY FOR PLAINTIFFS**

/s/ *Benjamin L. Dower*
BENJAMIN L. DOWER
Special Litigation Counsel
Office of the Attorney General of Texas