IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SALIA ISSA, FISTON RUKENGEZA, *et al.* <br> *Plaintiffs*, <br><br> v. <br><br> TEXAS DEPARTMENT OF CRIMINAL JUSTICE, *et al.* <br> *Defendants*. | § § § § § § § § § | CIVIL ACTION NO. 1:22-cv-1107-LY |

**DEFENDANTS LT. BRANDY HOOPER, LT. DESMOND THOMPSON, AND ASSISTANT WARDEN ALONZO HAMMOND'S REPLY TO PLAINTIFFS' RESPONSE TO THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Date: March 10, 2023

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

SHANNA MOLINARE
Chief, Law Enforcement Defense Division

BENJAMIN L. DOWER
Special Litigation Counsel
Texas Bar No. 24082931
Attorney-in-Charge
Benjamin.Dower@oag.texas.gov

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994

**ATTORNEYS FOR DEFENDANTS TDCJ, LT. HOOPER, LT. THOMPSON, AND ASSISTANT WARDEN HAMMOND**

TO THE HONORABLE JUDGE OF SAID COURT:

Qualified immunity bars Plaintiffs' claims against Defendants Lt. Hooper, Lt. Thompson, and Assistant Warden Hammond (collectively, "Individual Defendants"). To overcome qualified immunity, Plaintiffs must identify a legal principle that has a clear foundation in then-existent precedent that clearly prohibits Individual Defendants' conduct. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018). In determining whether Plaintiffs have met their burden, the Court "must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *See id.* at 590. In conducting this analysis, the Court must look at "the conduct of each officer independently," not as a group. *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007). To overcome immunity, the illegality of the officer's personal conduct must be "beyond debate." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Applying that standard here, each Individual Defendant is entitled to qualified immunity.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**A.    Equal Protection Claims (Counts 7–9)**

It is not "beyond debate" that the actions allegedly taken by Lt. Hooper, Lt. Thompson, and Assistant Warden Hammond—respectively, not collectively—violated the Equal Protection Clause. In describing their Equal Protection claims, Plaintiffs' complaint asserts that "the actions described in counts 1–4 ['disparate treatment, sex' and 'hostile work environment, sex']" constitute "sex discrimination against Plaintiff-Issa while she was engaged in public employment, thereby violating the Equal Protection Clause. . . ." Dkt. #18 at ¶¶103, 107, 111. But Issa has not overcome Individual Defendants' qualified immunity under either theory. Issa's Equal Protection claims should be dismissed.

1.      **Disparate Treatment, Sex**

As discussed in TDCJ's Reply (at 2–3), Plaintiffs' pleaded claim for "disparate treatment, sex" has evolved into "disparate treatment, pregnancy" in their response.[1] As argued by TDCJ, assuming the pivot is permitted, the pleadings still fail to state a Title VII claim for pregnancy-based disparate treatment because (1) TDCJ *did* provide the requested accommodation by allowing Issa to leave work mid-shift and (2) it is not plausible that TDCJ treated Issa differently than other employees *because* of her pregnancy. *See* Dkt. #28 at 3–4. But to bring an employment discrimination claim against an individual-capacity defendant under 42 U.S.C. § 1983, the plaintiff "must additionally plead and prove which actions of the individual defendant caused the harm." *Jones v. Hosemann*, 812 F. App'x 235, 239 (5th Cir. 2020). Plaintiffs have not alleged facts that create the reasonable inference that Lt. Hooper, Lt. Thompson, or Assistant Warden Hammond were motivated by either sex or pregnancy.

Not surprisingly, Plaintiffs' disparate treatment claim rests heavily on their conclusory contention that, "[p]rior to November 15, 2021, Defendant-TDCJ had permitted other employees to leave their shifts early while those employees were experiencing non-pregnancy-related medical emergencies and non-pregnancy-related medical issues." Dkt. #24 at ¶ 55. As argued in TDCJ's motion to dismiss, this contention is too conclusory to be entitled to deference. Dkt. #28 at 3–4. Moreover, because TDCJ also permitted Issa to leave her shift early when she experienced a

---

[1] This distinction matters because (1) disparate treatment claims normally require an ultimate employment action (absent here) and Issa seeks to avoid the requirement pivoting to an purported accommodation disparity based in pregnancy; and (2) "[e]vidence of general sex discrimination . . . is not probative of pregnancy discrimination," as the appropriate inquiry for the latter is "whether the employer treats pregnancy or pregnancy-related conditions differently than other medical conditions," not whether the employer treats women differently than men. *See Hobbs v. Ketera Tech., Inc.*, 865 F. Supp.2d 719, 728 (N.D. Tex. 2012); *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); *Young v. United Postal Servs., Inc.*, 575 U.S. 206, 228 (2015).

pregnancy-related medical emergency and the conclusory allegation says nothing about timing, it does not support an inference of disparate treatment. *Id.*

The allegations must also be viewed through a different lens for Issa's Section 1983 claims. The contention that, at unspecified times in unspecified units, "Defendant-TDCJ" permitted unspecified employees to leave their shifts early while experiencing unspecified non-pregnancy-related emergencies permits no inferences regarding the intentions of Lt. Hooper, Lt. Thompson, or Assistant Warden Hammond on November 15, 2021. *See* Dkt. #18 at ¶¶ 55–56. If a different TDCJ employee made a different decision when presented with an exigent decision, that difference does not allow the Court to reach any conclusions regarding whether any Individual Defendant was motivated by Issa's sex or pregnancy. And the Equal Protection claims seek to impose liability on Individual Defendants personally, for their personal conduct and their personal intent. Put simply, an individual defendant cannot be personally liable for discrimination unless they personally had discriminatory intent. And Plaintiffs' allegations do not allow the Court to draw that inference for the three individuals sued.

## 2. Hostile Work Environment, Sex

As for the hostile work environment claims, again Plaintiffs' response simply relies on painting with a broad stroke. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). Issa fails to state a plausible hostile work environment claim against her employer under Title VII. *See* Dkt. #28 at 5. But against Lt. Hooper, Lt. Thompson, and Assistant Warden Hammond—when their conduct is disaggregated, and their *individual* intent becomes the focus—the Section 1983 claim's

3

weaknesses become even more apparent. For example, how can Assistant Warden Hammond be personally liable for creating a sex-based hostile work environment when he never even interacted with Issa during the two-and-a-half hours in question? And what factual allegations support the requisite conclusion of sex-based intent—for any of the three officers sued? Plaintiffs' response focuses on the unreasonableness of Individual Defendants' alleged actions but says nothing about the requisite motive. *See* Dkt. #25 at ¶¶ 21–30.

For all these reasons, Individual Defendants ask the Court to dismiss the Equal Protection claim against them. Defendants are entitled to qualified immunity.

**B.     Bodily Integrity Claims (Counts 10–12, 20–22)**

The substantive due process bodily integrity claims brought by Issa as well as her unborn child are barred by qualified immunity. Plaintiffs disclaim their burden to find a case that does not define the law at a high level of generality. Dkt. #25 at ¶ 39; *contra Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) ("It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality."). Lacking analogous cases to put Individual Defendants on notice that their alleged personnel actions violated Issa or the unborn child's substantive due process rights, Plaintiffs' Response denies the obligation altogether. Dkt. #25 at ¶¶ 33–43. Citing *Taylor v. Riojas*, 141 S. Ct. 52 (2020) and relying heavily on hindsight bias, Plaintiffs argue that the authorities upon which they rely need not go beyond a high level of generality. *See id.* But while there are "rare 'obvious case[s],' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances," this case is not one of them. *See Wesby*, 138 S. Ct. at 590 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). The bodily integrity claims are barred. Reviewing two of the "rare" obvious cases demonstrates why this case does not qualify.

In *Hope v. Pelzer*, the existing case law made it clear that (1) the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment and (2) unnecessary and wanton inflictions of pain are those totally without penological justification. 539 U.S. 730, 737 (2002). Based on the facts before the Court, the inmate-plaintiff had been handcuffed, placed in irons, hitched to a post, left shirtless in the sun for seven hours while the sun burned his skin, given only minimal water and no bathroom breaks, and endured taunting by a guard who mocked his suffering. *Id.* at 734–35. The Court held that then-existing precedent would make clear to reasonable officials that this behavior was forbidden by the Eighth Amendment. *Id.* at 737–38.

In *Taylor v. Riojas*, based on the facts before the Court, the inmate-plaintiff was confined in a cell covered in feces all over the floor, the ceiling, the windows, the walls, and even the water faucet, which caused him to go without food or water for nearly four days. 41 S. Ct. 52, 53 (2020). He was then moved to a frigidly cold cell which also had a clogged drain. *Id.* After the inmate held his bladder for over 24-hours, he eventually relieved himself, causing the drain to overflow and raw sewage to spill—sewage in which the inmate had to sleep naked. *Id.* Based on the facts alleged, there was also no basis to leave the inmate in this condition and the officers knew about it because they made equips that basically expressed hope that the inmate would suffer. *Id.* at 53–54. Applying the clearly established standard regarding unnecessary and wanton infliction of pain, the Court held that then-existing precedent would make clear to reasonable officials that this behavior was forbidden by the Eighth Amendment. *Id.* at 737–38.

Notably, both *Hope* and *Taylor* involved cases in which the legal standard and contexts were clear: prison officials cannot engage in unnecessary wanton infliction of pain without penological

5

interest. Based on the facts the Court was bound to accept, both cases involved defendants who chose to intentionally inflict pain and suffering onto an inmate for no reason—defendants who were aware of the suffering they were inflicting and took malicious pleasure from it. Under those extraordinary circumstances, the Court determined no analogous authority was required to put the defendants on notice of their Eighth Amendment violations.

Here, Plaintiffs invoke substantive due process—a less particular constitutional protection. Not for nothing has the Supreme Court described substantive due process as a "treacherous field." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2247 (2022) (quoting *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion)). Precisely because it covers unenumerated constitutional rights, the substantive due process jurisprudence is far more nebulous than Eighth Amendment jurisprudence. *See id.* at 2260. The Eighth Amendment applies to inmates. It prohibits cruel and unusual punishment. To whom does substantive due process apply? Basically everyone. Except it is unclear whether, post-*Dobbs*, whether it applies to the unborn. *See infra* at 10. What does it protect? Everything from the right to contract, *e.g.*, *Lochner v. New York*, 198 U.S. 42 (1905), to the right to an abortion, *e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973). Well, actually, not anymore. *Dobbs*, 142 S. Ct. at 2262, 2284. But it does protect other rights. *Even in the abstract*, substantive due process analysis does not lend itself to "obvious" applications. And the unusual facts of this employment case are far from typical.

A pregnant correctional officer working a night shift called a superior officer complaining of pain and expressing a desire to go to the hospital. Dkt. # 18 at ¶¶ 19–23. The officer did not have any physical symptoms of distress such as bleeding. *See id.* Her superior indicated she would send a replacement but did not send one immediately. *See id.* at ¶¶ 23–25. This was the last

6

interaction between the two officers, but it is undisputed that a replacement arrived a couple hours later, and the correctional officer left. *Id.* at ¶¶ 41–42. Judging these actions "without the benefit of hindsight," would every reasonable official in November 2021 know that the superior officer's conduct described above violated the right to bodily integrity held by either the correctional officer or her fetus[2], based on the substantive due process clause of the Fourteenth Amendment? *See Wesby*, 138 S. Ct. at 589–90; *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Because Plaintiffs have not met their burden to demonstrate that the answer to that question is "yes," Lt. Hooper is entitled to qualified immunity.

Continuing the events, two minutes after the correctional officer spoke with her first superior, she received a call from a second, who told her she could not leave because the warden said so. Dkt. #18 at ¶¶ 30–40. In calls that occurred over the next two hours, the second superior officer expressed skepticism regarding whether the correctional officer was really in pain, noting that she had just arrived at work and now wanted to leave. *Id.* at ¶¶ 39–40. But a couple hours after the first call, a replacement did arrive, and the correctional officer left work early. *Id.* at ¶¶ 41–42. Judging these actions "without the benefit of hindsight," would every reasonable official in November 2021 know that the second superior officer's conduct described above violated the right to bodily integrity held by either the correctional officer or her fetus, based on the substantive due process clause of the Fourteenth Amendment? *See Wesby*, 138 S. Ct. at 589–90; *Brown*, 623 F.3d at 253. Because Plaintiffs have not met their burden to demonstrate that the answer to that question is "yes," Lt. Thompson is entitled to qualified immunity.

---

[2] Plaintiffs' response conflates statutory definitions with constitutional definitions. *See* Dkt. #25 at ¶¶ 49–55. Just because several statutes define an individual to include an unborn child does not mean that the Fourteenth Amendment does the same.

Finally, a lieutenant told a correctional officer she could not leave work mid shift, saying "the warden." Dkt. #18 at ¶¶ 30–35. It is unclear what "the warden" knew, but based on the timing of the lieutenant's call, it is unlikely that he knew any specifics. *See id.* The warden never spoke with the correctional officer nor interacted with her in any way. *See id.* Judging these actions "without the benefit of hindsight," would every reasonable official in November 2021 know that "the warden's" conduct described above violated the right to bodily integrity held by either the correctional officer or her fetus, based on the substantive due process clause of the Fourteenth Amendment? *See Wesby*, 138 S. Ct. at 589–90; *Brown*, 623 F.3d at 253. Because Plaintiffs have not met their burden to demonstrate that the answer to that question is "yes," Assistant Warden Hammond is entitled to qualified immunity.

**C.    Right to be a Parent (Counts 13–15, 17–19)**

Plaintiffs Issa and Rukengeza have also not overcome Individual Defendants' qualified immunity in their right-to-be-a-parent claims. Plaintiffs argue that the right to be a parent is clearly established. *See* Dkt. #25 at ¶ 47. But while freedom of personal choice in matters of family life is a protected liberty, it does not follow that every state action that impacts the ability to become a parent violates the Fourteenth Amendment. Individual Defendants did not intend to cause the unborn child to be rendered stillborn. Indeed, even based on the factual allegations, it is wholly unclear whether the officers knew that Issa's reports of pain were related to her pregnancy. For Lt. Thompson, the factual allegations do not create the reasonable inference that he subjectively believed that Issa was genuinely experiencing pain (rather than just wanting to leave work early). And for Assistant Warden Hammond, the factual allegations do not create the reasonable inference that he knew any particulars of the situation.

Plaintiffs' Response identifies no cases presenting even remotely analogous facts. *See* Dkt. #25 at ¶¶ 44–48. Thus, to overcome qualified immunity, it must be obvious from the substantive due process jurisprudence as it existed in November 2021 that *any* state action that has the effect of preventing a successful birth violates the right to be a parent protected by substantive due process—regardless of the state actor's intent. But surely that is not the law; at least, Plaintiffs have not met their burden to demonstrate that it is. Plaintiffs' Response does not cite any cases, for example, that stand for the proposition that a state-employed doctor violates the right to be a parent if the baby does not survive the delivery; that a car accident with a state-employed driver resulting in an infertility-imposing injury violates the other driver's right to be a parent; or even that a state-employed doctor who performs an abortion violates the father's right to be a parent. Because the "unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established," *see Wesby*, 138 S. Ct. at 590, Plaintiffs have not met their burden to overcome Individual Defendants' qualified immunity for the Fourteenth Amendment right-to-be-a-parent claims.

**D.**     **Supervisor Liability (Count 16)**

Plaintiffs' supervisory liability argument amounts to the bare conclusion that Assistant Warden Hammond "was informed what was going on, yet he sat idly by while Plaintiffs' rights were violated." Dkt. #25 at ¶ 67. "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotes omitted). Particularly given the high bar for deliberate indifference, Plaintiffs simply have not met that standard.

**E.      Right to Live (Counts 23–25)**

Individual Defendants argue that the law was not clearly established in November 2021 that an unborn child has rights that it can invoke on its own behalf under the Fourteenth Amendment. Dkt. #21 at 20. The Supreme Court held in *Roe* that "the word 'person,' as used in the Fourteenth Amendment, does not include the unborn."[3] 410 U.S. at 158. That part of the *Roe* holding was the law of the land until June 24, 2022, when the Supreme Court issued their *Dobbs* opinion. Nevertheless, Plaintiffs argue that the law was clearly established on November 15, 2021, that Individual Defendants' alleged conduct violated the right to life held by the unborn child and protected by the Fourteenth Amendment.

Plaintiffs' rebuttal makes much of the "fanciful idea that the Individual Defendants were operating with a precise grasp of the text of *Roe v. Wade* and that, had they only known the unborn child could bring claims, they would have acted differently." Dkt. #25 at ¶ 62. "However, because qualified immunity turns only upon the objective reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." *Thompson v. Upshur Cty, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001); *see also Mitchell v. Forsyth*, 472 U.S. 511, 518 (1985) (noting that *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) "purged qualified immunity doctrine of its subjective components"). Plaintiffs may disagree with the legal fiction that a "reasonable official" has read all published, binding precedents in existence at the time and drawn legal conclusions therefrom, but that is how the standard operates. Individual Defendants are entitled to qualified immunity.

---

[3] Indeed, if the phrase "[n]or shall any State deprive any person of life, liberty, or property, without due process of law" included the life, liberty, or property of the unborn, it is difficult to imagine how the Court could have recognized a right to an abortion. *See* U.S. CONST. amend. XIV § 1.

| | |
|---|---|
| Date: March 10, 2023 | Respectfully Submitted, |
| | |
| KEN PAXTON<br>Attorney General of Texas | /s/ *Benjamin L. Dower*<br>BENJAMIN L. DOWER<br>Special Litigation Counsel |
| BRENT WEBSTER<br>First Assistant Attorney General | Texas Bar No. 24082931<br>Attorney-in-Charge<br>Benjamin.Dower@oag.texas.gov |
| GRANT DORFMAN<br>Deputy First Assistant Attorney General | Office of the Attorney General<br>Law Enforcement Defense Division |
| SHAWN COWLES<br>Deputy Attorney General for Civil Litigation | P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>(512) 463-2080 / Fax (512) 370-9994 |
| SHANNA MOLINARE<br>Chief, Law Enforcement Defense Division | **ATTORNEYS FOR DEFENDANTS TDCJ, LT. HOOPER, LT. THOMPSON, AND ASSISTANT WARDEN HAMMOND** |

## CERTIFICATE OF SERVICE

I, BENJAMIN L. DOWER, certify that a true and correct copy of the foregoing document was filed and served via the Court's CM/ECF document filing system on March 10, 2023 to:

Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd
Bldg 1, Ste 250
Austin, TX 78735
512-733-5151
Fax: 815-895-4070
Email: ross@cronauerlaw.com
**ATTORNEY FOR PLAINTIFFS**

/s/ *Benjamin L. Dower*
BENJAMIN L. DOWER
Special Litigation Counsel
Office of the Attorney General of Texas