**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **Salisa Issa; Fiston Rukengeza;** | § | |
| **and Salia Issa and Fiston Rukengeza as** | § | |
| **next friends of their unborn child,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:22-CV-01107-ADA** |
| **Texas Department of Criminal Justice;** | § | |
| **Lt. Brandy Hooper, individually;** | § | |
| **Lt. Desmond Thompson, individually;** | § | |
| **and Assist. Warden Alonzo Hammond,** | § | |
| **individually,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ALAN D ALBRIGHT
    UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Texas Department of Criminal Justice's Motion to Dismiss Plaintiffs' Second Amended Complaint, filed January 26, 2023 (Dkt. 20); Defendants Lt. Brandy Hooper, Lt. Desmond Thompson and Assistant Warden Alonzo Hammond's Motion to Dismiss Plaintiffs' Second Amended Complaint, filed January 26, 2023 (Dkt. 21); and the associated response, reply, and surreply briefs. The District Court referred the Motions to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 26.

### I.    Background

Plaintiff Salia Issa, a correctional officer with the Texas Department of Criminal Justice ("TDCJ"), brings this sex and pregnancy discrimination suit against TDCJ and three TDCJ employees in their individual capacities.

1

Issa worked as a correctional officer at the John Middleton Unit in Abilene, Texas. Plaintiffs' Second Am. Compl. (Dkt. 18) ¶ 15. Around 8:30 p.m. on November 15, 2021, Issa, who was seven months pregnant, "felt pain that was similar to a contraction." *Id.* ¶ 19. Issa called her female supervisor, Lieutenant Brandy Hooper, to tell her that she was in pain and "needed to go to the hospital." *Id.* ¶ 23. Hooper told Issa that she would send someone to replace her.[1] But two minutes later, Issa's male supervisor, Lieutenant Desmond Thompson, called Issa and told her "she could not leave because 'the warden'[2] said she could not leave." *Id.* ¶ 32. Issa alleges that she reiterated to Thompson that "she really needed to go to the hospital due to the pain she was experiencing." *Id.* ¶ 37. Thompson again told her that she could not leave and hung up. *Id.* ¶ 38.

Issa alleges that she called Thompson back several times, each time informing him that she was still in pain and "really needed to go to the hospital." *Id.* ¶ 39. During each call, Thompson told Issa that she could not leave. Issa alleges that Thompson also accused her of "fabricating her pregnancy emergency, saying words to the effect of, 'You just got here,' 'You're just lying,' and 'You just want to go home.'" *Id.* ¶ 40. Issa alleges that although employees were available to relieve her, including "officers FNU Rafael, FNU Martinez, and FNU Layna," Defendants refused to send an officer to relieve her; nor did Defendants send medical help or offer to send the staff nurse on duty to attend to her. *Id.* ¶¶ 53-54. Plaintiffs allege that Issa's presence was not necessary because other employees were available to relieve her and fulfill her duties. *Id.* ¶ 52.

At 11 p.m. – some two-and-a-half hours after Issa had asked to leave her post to go to the hospital – a TDCJ employee finally relieved her. *Id.* ¶ 41. Issa walked to her car "slowly due to

---

[1] Under TDCJ policy, Issa was prohibited from leaving her post "without proper authorization" and "until properly relieved" by another employee. Dkt. 18 ¶ 26 (citing TDCJ Policy PD-22, *General Rules of Conduct and Disciplinary Action Guidelines for Employees* (revision 17, effective Nov. 1, 2021)) ("TDCJ Policy"). Employees were subject to dismissal if they violated the TDCJ Policy. Dkt. 18 ¶ 28.

[2] Issa alleges that Thompson was referring to Defendant Alonzo Hammond, the assistant warden of the John Middleton Unit. *Id.* ¶ 35.

the extreme pain she was experiencing" and immediately drove to the hospital. *Id.* ¶ 42. Hospital staff "took her by wheelchair to a room," and during their examination "could not find the child's heartbeat." *Id.* ¶¶ 43-44. Hospital personnel rushed Issa into surgery "to attempt to save the child," but "the child was delivered stillborn." *Id.* ¶ 47. Plaintiffs allege that "[h]ospital personnel told Plaintiff-Issa that, if she had arrived sooner, they could have saved the child." *Id.* ¶ 48. Plaintiffs allege that until this point Issa's pregnancy "had been healthy and without complication." *Id.* ¶ 18. Plaintiffs allege that a fetal heartbeat had been detected, and that: "At approximately seven-months gestation, the child was well past the point of viability outside of Plaintiff-Issa's womb." *Id.*

Issa and her husband, Fiston Rukengeza, filed this suit individually and as next friends of their unborn child against TDCJ and Hooper, Thompson, and Hammond in their individual capacities. Plaintiffs allege (1) sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and Chapter 21 of the Texas Labor Code; (2) disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794, and Chapter 21 of the Texas Labor Code; (3) claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and (4) equal protection and substantive due process violations under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Plaintiffs seek monetary damages, attorney's fees, and costs.  Defendant TDCJ moves to dismiss all claims under Rules 12(b)(1) and 12(b)(6). The Individual Defendants seek dismissal on qualified immunity under Rule 12(b)(6).

## II.    Legal Standards

The Court first considers dismissal under Rule 12(b)(1). *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (internal citation omitted).

### A. Rule 12(b)(1)

Under Rule 12(b)(1), a court must dismiss a claim if it lacks subject matter jurisdiction. A court properly dismisses a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

In deciding a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* Because the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* A court's dismissal of a case for lack of subject matter jurisdiction is "not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Such a dismissal should be without prejudice. *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

### B. Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

### III.    TDCJ's Motion to Dismiss

Plaintiffs' allege that TDCJ's actions on November 15, 2021 violated Title VII, the Rehabilitation Act, the FMLA, and the Texas Labor Code. TDCJ moves to dismiss Plaintiffs' Texas Labor Code claims for lack of subject matter jurisdiction under Rule 12(b)(1), and Plaintiffs' remaining claims for failure to state a claim under Rule 12(b)(6).

### A. Texas Labor Code

TDCJ argues that Plaintiffs' sex and disability claims under Chapter 21 of the Texas Labor Code must be dismissed under Rule 12(b)(1) because they are barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment[3] codified "the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's[4] jurisdictional grant." *Id.* In most cases, Eleventh Amendment sovereign

---

[3] "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

[4] Article III, § 2 of the Constitution provides that the federal judicial power extends to controversies "between a State and Citizens of another State."

immunity deprives federal courts of jurisdiction to hear private suits against states. *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020). But the Supreme Court has recognized several exceptions to Eleventh Amendment immunity. A state may waive its sovereign immunity "at its pleasure," and sometimes "Congress may abrogate it by appropriate legislation." *Stewart*, 563 U.S. at 253-54. In addition, under *Ex parte Young*, 209 U.S. 123 (1908), a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law. Absent one of these exceptions, "federal courts may not entertain a private person's suit against a State." *Stewart*, 563 U.S. at 254. Sovereign immunity applies not only to actions in which a state itself is the named defendant, but also to actions against state agencies and instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). A suit against an arm or instrumentality of the State "is treated as one against the State itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1293 (2017).

TDCJ is an arm of the state of Texas and thus entitled to sovereign immunity unless Plaintiffs can invoke one of the two exceptions to sovereign immunity: abrogation or waiver. *Stewart*, 563 U.S. at 254; *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). Because Congress has not abrogated sovereign immunity for claims under the Texas Labor Code, *Pendleton v. Prairie View A & M Univ.*, 121 F. Supp. 3d 758, 762-63 (S.D. Tex. 2015), Plaintiffs must show that Texas waived sovereign immunity. "It has long been settled that a state's waiver of its Eleventh Amendment immunity must be unequivocally expressed." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) ("We have insisted, however, that the State's consent be unequivocally expressed."). A state's waiver of sovereign immunity in state court does not mean the state has waived Eleventh Amendment immunity in federal court. *Perez*, 307 F.3d at 332; *see also Port Auth. Trans-Hudson*

*Corp. v. Feeney*, 495 U.S. 299, 306 (1990) ("A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts, and thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court.").

Plaintiffs argue that Chapter 21 of the Texas Labor Code waives the state's sovereign immunity to suit "in any civil action, whether state or federal." Dkt. 24 at 6. Section 21.002(8) of the Texas Labor Code defines "employer" to include "a county, municipality, state agency, or state instrumentality." Section 21.254 provides that a plaintiff may bring "a civil action against the respondent" within 60 days after she receives a notice of the right to sue. *Id.* § 21.254.

While § 21.002(8) waives sovereign immunity for claims brought under the Labor Code in state court, it "does not expressly waive sovereign immunity in *federal* court." *Perez*, 307 F.3d at 332; *see also Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 599 (5th Cir.), *cert. denied*, 142 S. Ct. 216 (2021) ("In the TCHRA,[5] the State of Texas waives its immunity to suit in state courts, but it 'does not expressly waive sovereign immunity in *federal* court.'") (quoting *Perez*, 307 F.3d at 332).[6]

Because Chapter 21 does not contain "a clear and unequivocal waiver" of sovereign immunity in federal court, Plaintiffs' claims under Chapter 21 against the TDCJ are barred in this court.

---

[5] Chapter 21 of the Texas Labor Code was previously known as the Texas Commission on Human Rights Act ("TCHRA").

[6] Although Plaintiffs argue that *Sullivan* was "wrongly decided" and "appears to be the first and only case to squarely address whether the State of Texas waived sovereign immunity in federal court through Texas Labor Code, Chapter 21," Dkt. 24 at 5, the Fifth Circuit has held repeatedly that Chapter 21 does not waive the state's immunity from suit in federal court. Thus, it is "a well-settled proposition" that Chapter 21 does not waive Texas' sovereign immunity in federal court. *Martinez v. Texas Health & Hum. Servs. Comm'n*, No. 4:20-CV-03706, 2021 WL 2302627, at *4 (S.D. Tex. June 4, 2021); *see also Amsel v. Tex. Water Dev. Bd.*, No. A-09-CA-389 LY, 2009 WL 10699100, at *6 (W.D. Tex. Sept. 3, 2009), *R. & R. adopted*, 2009 WL 10699227 (W.D. Tex. Nov. 17, 2009) ("The Fifth Circuit has clearly held that the TCHRA does not waive Texas' Eleventh Amendment immunity from suit in federal court."). This Court, of course, is bound by Fifth Circuit precedent. *O'Donnell v. Salgado*, 913 F.3d 479, 482 (5th Cir. 2019).

*Perez*, 307 F.3d at 332; *see also King v. Texas A&M Eng'g Extension Serv.*, No. 4:21-CV-1005, 2022 WL 2328853, at *5 (E.D. Tex. June 28, 2022) (dismissing Texas Labor Code claims based on sovereign immunity); *Amsel*, 2009 WL 10699100, at *6 (dismissing Texas Labor Code claims based on sovereign immunity) (citing *Perez*). The Court therefore recommends that Plaintiffs' Texas Labor Code claims be dismissed for lack of jurisdiction.

## B.  Title VII and the Pregnancy Discrimination Act

Under Title VII, it is unlawful for a covered employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act ("PDA") amended Title VII to explicitly include discrimination based on pregnancy and related medical conditions within the definition of sex discrimination. "Congress intended the PDA to provide relief for working women and to end discrimination against pregnant workers." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

The first clause of the Pregnancy Discrimination Act specifies that Title VII's term "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The second clause of the Act states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.* A claim brought under the Pregnancy Discrimination Act is analyzed like any other Title VII discrimination claim. *Laxton*, 333 F.3d at 578. "The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 684 (1983).

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), the Supreme Court held that an employment discrimination complaint need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*[7] and instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." (quoting FED. R. CIV. P. 8(a)(2)). Accordingly, a plaintiff need not make out a prima facie case of discrimination under *McDonnell Douglas* in order to survive a Rule 12(b)(6) motion to dismiss. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). "A district court therefore errs by requiring a showing of each prong of the prima facie test for disparate treatment at the pleading stage." *Id.* Although a plaintiff need not submit evidence to establish a prima facie case of discrimination at this stage, she must plead sufficient facts on all the ultimate elements of a discrimination claim to make her case plausible. *Id.*[8]

Plaintiffs allege that Issa was the victim of three types of discrimination prohibited by Title VII: disparate treatment, disparate impact, and hostile work environment. The Court considers each in turn.

### 1. Disparate Treatment

A disparate treatment claim under Title VII "involves a claim that an employer intentionally treated a complainant less favorably than employees with the 'complainant's qualifications' but outside the complainant's protected class." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first make a prima facie showing of discrimination. *Id.* at 802. If an employee makes a prima facie case, the burden of production shifts to the employer to offer an alternative nondiscriminatory explanation for the adverse employment action, at which point the employee must show that this explanation is pretextual. *Id.*

[8] In cases relying on circumstantial evidence, "it can be helpful to reference the *McDonnell Douglas* framework," *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016), "when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." *Cicalese*, 924 F.3d at 767. But "a court errs by requiring a plaintiff to plead something more than the 'ultimate elements' of a claim." *Id.*

(2015) (quoting *McDonnell Douglas*, 411 U.S. at 802). A plaintiff alleging disparate treatment under the Pregnancy Discrimination Act often alleges that the employer took an adverse employment action against her because of her pregnancy status. For example, in *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016), and *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir. 2002), the plaintiffs alleged they were fired because of their pregnancy. But a plaintiff also may show disparate treatment by proving that the employer denied her a reasonable accommodation. *Young*, 575 U.S. at 212.

Plaintiffs allege that TDCJ "disparately treated Plaintiff-Issa based on her status as a woman affected by pregnancy and a pregnancy-related medical condition." Dkt. 18 ¶ 59. Plaintiffs allege that TDCJ (1) prevented Issa from leaving and minimized her complaints "due to her pregnancy, ignoring the urgency of the situation and ultimately causing the child's death," and (2) "failed to treat a pregnancy emergency as it would have any other medical emergency—by not only preventing Plaintiff-Issa from leaving but also by not sending any medical help," and that (3) "Plaintiff-Issa sought the accommodation of being able to leave, yet Defendant-TDCJ denied the accommodation, which they would have granted (and had previously granted) to an employee similar in their ability or inability to work who was experiencing a non-pregnancy-related medical emergency." Dkt. 18 ¶¶ 60-62.

In its Motion to Dismiss, TDCJ ignores the Pregnancy Discrimination Act and Plaintiffs' failure to accommodate claim,[9] instead arguing that "Plaintiff has not pleaded a plausible disparate treatment claim because she has not alleged facts that create the reasonable inference either (1) that TDCJ took an adverse employment action against her, or (2) that the reason was because of her sex." Dkt. 20 at 4-5. While TDCJ is correct that these are ultimate elements of a standard sex-

---

[9] TDCJ addresses Plaintiffs' failure to accommodate claim in its Reply brief.

based disparate treatment claim when the plaintiff alleges that she suffered an adverse employment action,[10] Plaintiffs clarify in their Response brief that they are alleging only a failure to accommodate claim under the Pregnancy Discrimination Act. Dkt. 24 at 9.

A plaintiff alleging a failure to accommodate disparate treatment claim under the PDA "may make out a prima facie case by showing, as in *McDonnell Douglas*, that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *Young*, 575 U.S. at 206. As stated, at the pleading stage, a plaintiff need not prove a prima facie case of discrimination under *McDonnell Douglas* in order to survive a Rule 12(b)(6) motion to dismiss. *Cicalese*, 924 F.3d at 766. But the Court may reference these factors in its analysis.

TDCJ argues that Plaintiffs have not shown that it failed to accommodate Issa or that it accommodated others similar to Issa in their ability or inability to work. TDCJ argues that it "*did* accommodate Issa by granting her request to leave work mid shift, it just did not grant that accommodation within minutes of receipt. TDCJ did not refuse to engage in an interactive process, it simply did not grant Issa's request to *immediately* relieve her . . . ." Dkt. 28 at 4.

"An employer who ultimately provides an accommodation may nevertheless be liable for a failure to accommodate if the delay in making that accommodation is unreasonable." *Peters v. Mundelein Consol. High Sch. Dist.*, No. 21-CV-336, 2022 WL 393572, at *4 (N.D. Ill. Feb. 9, 2022); *see also Schilling v. La. Dep't of Transp. & Dev.*, 662 F. App'x 243, 246 (5th Cir. 2016) (stating that an undue delay can violate the ADA if it renders an accommodation "unreasonable").

---

[10] *See Cicalese*, 924 F.3d at 767 (stating that "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'").

It is undisputed that TDCJ denied Issa's initial request for accommodation and denied her repeated requests for relief for two-and-a-half hours while her pregnancy-related medical emergency worsened. Plaintiffs have alleged sufficient facts to show that TDCJ's delay was unreasonable under the circumstances and thus effectively was a complete denial of her request for accommodation. Plaintiffs therefore have alleged the third element of her Pregnancy Discrimination Act failure to accommodate claim.[11]

For the last element of their Pregnancy Discrimination Act failure to accommodate claim, Plaintiffs allege that before her emergency, TDCJ (1) "permitted other employees to leave their shifts early while those employees were experiencing non-pregnancy-related medical emergencies and non-pregnancy-related medical issues," and (2) "offered and sent medical help to other employees while those other employees were experiencing non-pregnancy-related medical emergencies and non-pregnancy-related medical issues." Dkt. 18 ¶¶ 55-56. TDCJ argues that Plaintiffs' allegations are "conclusory" and do not meet the pleading requirements.

At this stage of the proceeding, a plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss. *Twombly*, 550 U.S. at 547. The Court finds that Plaintiffs have alleged sufficient facts and "nudged their claims across the line from conceivable to plausible." *Id.*; *see also Cicalese*, 924 F.3d at 768 (finding that district court's analysis of the complaint's allegations – such as scrutinizing whether appellants' fellow employees were really "similarly situated" – was "more suited to the summary judgment phase").

### 2.  Disparate Impact

Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and

---

[11] Plaintiffs also allege that TDCJ failed to accommodate her "by not sending any medical help." Dkt. 18 ¶ 62. TDCJ does not dispute this and appears to concede that it failed to accommodate Issa in this way.

cannot be justified by business necessity." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 335 n.15 (1977). Proof of discriminatory motive is not required under a disparate impact theory. *Id.*

To establish a prima facie case of disparate impact at summary judgment or trial, a plaintiff must show: "(1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275 (5th Cir. 2008). Ordinarily, a plaintiff establishes causation "by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." *Stout*, 282 F.3d at 860. But a plaintiff does not have to offer comparative statistical evidence to prove a prima facie disparate impact case "[i]f all or substantially all pregnant women would be . . . disproportionately affected by this supposedly mandatory job requirement." *Id.* at 860-61 (quoting *Garcia v. Women's Hosp. of Tex.*, 97 F.3d 810, 813 (5th Cir. 1996)). As stated, however, proof of a prima facie case is required only at the merits stage.

In support of their disparate impact claim, Plaintiffs allege that:

> (1) TDCJ maintained a policy whereby corrections officers could not leave their post without authorization nor could they leave their post until a replacement was in place;
>
> (2) TDCJ's Policy, despite being facially neutral, disparately impacted Issa on the basis of sex, resulting in her losing the child she was expecting with her husband;
>
> (3) All or substantially all pregnant women would have been advised by their obstetrician to leave immediately; and
>
> (4) TDCJ's policy prevented Plaintiff-Issa from leaving.

Dkt. 18 ¶¶ 87-91.

TDCJ argues that Plaintiffs have not pled a plausible disparate impact claim because they do not allege "any statistics regarding how TDCJ's facially neutral policy has impacted other employees" or that "the policy has ever impacted another TDCJ employee in the same way it impacted Issa." Dkt. 20 at 12. In support, TDCJ quotes *Garcia*, 97 F.3d at 813, stating that to

succeed on a disparate impact claim at trial the plaintiff must "isolate and identify a particular employment practice which is the cause of the disparity and provide evidence sufficient to raise an inference of causation."

TDCJ cannot rely on *Garcia* because that case was at the trial stage. Because this case is that pleading stage, Plaintiffs need not offer any evidence to support their claims, statistical or otherwise. *See Cicalese*, 924 F.3d at 767; *Wei-Ping Zeng v. Tex. Tech Univ. Health Scis. Ctr. at El Paso*, No. EP-19-CV-99-KC, 2019 WL 4565101, at *5 (W.D. Tex. July 29, 2019) (denying motion to dismiss when plaintiff alleged employees were in a similar position, "which is sufficient at the motion to dismiss stage because a close factual analysis of whether Plaintiff's fellow employees were sufficiently similar is more appropriate for resolution on summary judgment").[12]

Plaintiffs allege that TDCJ had a facially neutral personnel policy that would disparately impact "all or substantially all pregnant women" experiencing similar pregnancy-related medical emergencies. Plaintiffs thus have alleged the ultimate elements of their claim. *See McClain*, 519 F.3d at 275. While Plaintiffs eventually must come forward with evidence showing causation, this Court recommends that the District Court find their allegations sufficient to survive TDCJ's Motion to Dismiss.

### 3. Hostile Work Environment

To state a hostile work environment claim under Title VII, a plaintiff must show that (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action. *Badgerow v. REJ Prop., Inc.*, 974 F.3d 610,

---

[12] TDCJ's argument also lacks merit because not all disparate impact cases require statistical proof to establish a prima facie case. *See Garcia*, 97 F.3d at 813.

617 (5th Cir. 2020). "For conduct to be considered sufficiently severe or pervasive, it must be both objectively and subjectively offensive." *Id.* at 617-18. In determining whether an employee's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* at 618. No single factor is determinative. *Id.* "The legal standard for workplace harassment in this circuit is . . . high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003).

In support of their hostile work environment claim, Plaintiffs allege that TDCJ, through the Individual Defendants, "harassed Plaintiff-Issa by not allowing her to leave her employment post after Plaintiff-Issa informed Defendant-TDCJ that she was experiencing pain consistent with a contraction while approximately seven months pregnant," and "further harassed and humiliated Plaintiff-Issa by explicitly accusing her of lying." Dkt. 18 ¶ 71. The Court finds that Plaintiffs' allegations do not rise to the level of a hostile work environment.

As the Supreme Court has stated: "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)). Plaintiffs' allegations, in contrast, are not "of a character or kind of conduct" that rises to the level of actionable harassment; instead, they are more appropriately characterized as employment decisions and discrete acts that give rise to standard disparate treatment claims. *See Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.*, 698 F. Supp. 2d 730, 749 (S.D. Tex. 2010) (finding that plaintiff's allegations employer transferred her to a less

desirable position and failed to give her a promotion after she returned from maternity leave did not constitute "actionable harassment" but were merely "employment decisions that give rise to disparate treatment claims"); *see also Buchanan v. Exxon Mobil Corp.*, No. H-04-2889, 2006 WL 492605, at *4 (S.D. Tex. Mar. 1, 2006) (holding that plaintiff's complaints over demotions and evaluations could not constitute a hostile work environment as a matter of law and "are more appropriately characterized as ultimate employment decisions and discrete acts, and as such, are more suited for a traditional discrimination or disparate treatment claim").

Defendant Thompson's isolated incident of accusing Issa of lying does not rise to the level of actionable harassment because it was not "sufficiently severe or pervasive" to alter the conditions of her employment. *Harris*, 510 U.S. at 21.[13] "Isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Saketkoo v. Admin'r of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022). Cases in which a single comment was found to be sufficiently "severe or pervasive" to support a hostile work environment claim are exceedingly rare.[14] This is not such a case. Plaintiffs point to no discriminatory intimidation, ridicule, and insult severe or pervasive enough to alter the conditions of Issa's employment and create an abusive working environment. The Court recommends that their sex-based hostile work environment claim should be dismissed.[15]

---

[13] *See also E.E.O.C. v. U.S. Drug Mart, Inc.*, No. EP-21-CV-00232-FM, 2022 WL 18539781, at *8 (W.D. Tex. Oct. 18, 2022) ("The Fifth Circuit has made clear that an isolated incident of verbal harassment must be extremely severe to change the terms and conditions of the victim's employment."); *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 651 (N.D. Tex. 2019) (dismissing hostile work environment claim when plaintiff alleged only an isolated incidents of favoritism and inappropriate comments).

[14] *See U.S. Drug Mart*, 2022 WL 18539781, at *9 (stating that the Court "is not aware of any case in which the Fifth Circuit upheld a hostile work environment claim based on a single instance of verbal harassment, except in the context of extraordinarily offensive racial epithets, which are not at issue here") (citing *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022)).

[15] Plaintiffs' sex-based hostile work environment claim against the Individual Defendants fails for the same reasons.

### C. Rehabilitation Act

Both the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, prohibit employment discrimination against qualified individuals with disabilities, but the statutes govern different entities: the ADA applies only to public entities, including private employers, 42 U.S.C. § 12131(1), whereas the Rehabilitation Act prohibits discrimination in federally-funded programs and activities, 29 U.S.C. § 794(a). "The RA and the ADA are judged under the same legal standards, and the same remedies are available under both Acts. Likewise, the relevant definition of disability set forth in the ADA is applicable to claims made under the RA." *Kemp v. Holder*, 610 F.3d 231, 234-35 (5th Cir. 2010).

Plaintiffs allege that "Issa's pregnancy emergency" constituted a disability under the Rehabilitation Act. Dkt. 18 ¶ 225. They allege that TDCJ violated the Rehabilitation Act by denying Issa's request for a reasonable accommodation to her disability, maintaining a TDCJ Policy that disparately impacted her,[16] and subjecting her to a hostile work environment based on her disability.

### 1. Failure to Accommodate

A prima facie claim for failure to accommodate requires that (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for the known limitations. *Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 792 (5th Cir. 2017). TDCJ argues that Plaintiffs have not pled sufficient facts to allege a plausible failure to accommodate claim.

---

[16] TDCJ does not address Plaintiffs' disparate impact claim in its Motion to Dismiss and thus does not sustain its burden under Rule 12(b)(6) as to this claim.

### a.   **Plaintiffs Allege a Plausible Disability**

The Rehabilitation Act adopts the ADA's definition of "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102(1)(A). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). A major life activity "also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B). "Substantially limits" means the individual is limited "to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be substantially limiting. *Id.*

TDCJ argues that "Issa's pregnancy emergency is not a disability for purposes of the Rehabilitation Act because it was a temporary, non-chronic impairment of extremely short duration." Dkt. 20 at 17. TDCJ contends that "Issa's pregnancy emergency was a one-time occurrence that lasted only hours. As such, the impairment brought on by that emergency does not qualify as a disability." *Id.* at 18. TDCJ likens Issa's pregnancy emergency to other "temporary, non-disabling impairments," such as "broken limbs, sprained joints, concussions, appendicitis, and influenza." *Id.* at 17-18 (quoting *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 619 (5th Cir. 2009)).

The Supreme Court has found that "reproduction is a major life activity for the purposes of the ADA [and RA]." *Bragdon v. Abbott*, 524 U.S. 624, 639 (1998) ("Respondent's HIV infection is a

physical impairment which substantially limits a major life activity [reproduction], as the ADA defines it."). While pregnancy, by itself, generally is not considered a disability under the Rehabilitation Act or ADA, complications resulting from pregnancy can be disabling impairments under the Acts. *See Jeudy v. Att'y Gen., Dep't of Just.*, 482 F. App'x 517, 520 (11th Cir. 2012) ("While pregnancy is generally not considered a disability, a pregnancy-related impairment may be considered a disability, if it substantially limits a major life activity."); *Spees v. James Marine, Inc.*, 617 F.3d 380, 397 (6th Cir. 2010) ("Whereas no court has held that pregnancy by itself is an impairment under the ADA, many district courts have held that pregnancy-related conditions can qualify as such."); *Navarro v. Pfizer Corp.*, 261 F.3d 90, 97 (1st Cir. 2001) ("While pregnancy itself may not be an impairment, the decided ADA cases tend to classify complications resulting from pregnancy as impairments."); *Flores v. Pilot Travel Ctr., LLC*, No. CV H-21-2317, 2021 WL 4925386, at *4 (S.D. Tex. Oct. 21, 2021) (stating that "complications resulting from pregnancy can be impairments under the [ADA].").[17] Thus, the Court must consider whether Plaintiffs have alleged sufficient facts that Issa suffered from a pregnancy-related impairment under the ADA.

Plaintiffs allege that Issa's pregnancy emergency constituted a disability under the ADA because "it impacted the operation of her major bodily functions and it impacted the ability of her to perform major life activities." Dkt. 18 ¶ 225. They also allege that her "disability impacted her ability to concentrate, think, work, and perform other manual tasks, and the disability impacted the operation of—and in fact was based upon—her reproductive functions." Dkt. 18 ¶ 225.

Plaintiffs allege that Issa experienced pain for two and half hours before she was allowed to leave work and go to the hospital, and that after she arrived at the hospital, she began bleeding and

---

[17] *See also* 29 C.F.R. § 1604.10(b) (1979) ("Disabilities caused or contributed to by pregnancy . . . for all job-related purposes, shall be treated the same as disabilities caused or contributed to by other medical conditions."). The Fifth Circuit has not directly addressed whether a pregnancy-related impairment may constitute a disability under the ADA.

was "rushed . . . surgery to attempt to save the child." *Id.* ¶¶ 22, 37, 39, 45, 50. Plaintiffs allege that Issa had to take several months of leave after the incident. *Id.* ¶ 57.

The Court finds that Plaintiffs' allegations are sufficient to plausibly allege that Issa's pregnancy emergency constituted a disability under the ADA and Rehabilitation Act. *See Flores*, 2021 WL 4925386, at *4 (finding that plaintiff alleged sufficient facts to show she had a pregnancy-related disability when she suffered from vaginal bleeding that required her to seek treatment at a nearby hospital and take leave for two days); *Hernandez v. Clearwater Transp., Ltd.*, 550 F. Supp. 3d 405, 413 (W.D. Tex. 2021) (finding that plaintiff's pregnancy-related impairment – a severe form of morning sickness requiring her to be hospitalized for three days – was a disability under the ADA because it affected her ability to work).

### b.  Issa Requested a Reasonable Accommodation

TDCJ next argues that Issa did not submit a request for an accommodation under the Rehabilitation Act, and even if she did, it was unreasonable. "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." *Chevron Phillips*, 570 F.3d at 621. The employee must explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason, but "does not have to mention the ADA or use the phrase 'reasonable accommodation.' Plain English will suffice." *Id.*; *see also Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) ("Special words, like 'reasonable accommodation,' need not be uttered, but the employee 'must explain that the proposed] adjustment in working conditions is for a medical condition-related reason."). Under the ADA, a reasonable accommodation may include "part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of

qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

TDCJ argues that Plaintiffs have not alleged facts creating the reasonable inference that Issa submitted a request for an accommodation under the Rehabilitation Act. TDCJ first argues that because Issa "characterizes her request to depart the unit immediately as both a request for FMLA leave and a request for a reasonable accommodation under the Rehabilitation Act," her "request to leave did not constitute a request for a reasonable accommodation under the Rehabilitation Act." Dkt. 20 at 18. In support, TDCJ relies on *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017), in which the plaintiff argued that his requests for FMLA leave "were simultaneously requests for a reasonable accommodation under the ADA." The Fifth Circuit found that plaintiff failed to come forward with "any dispute of material fact" that his request for FMLA leave also was a request for a reasonable accommodation under the ADA. *Id.* at 792. The court stated that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA" because "[t]he ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." *Id.* at 791. Thus, "requesting FMLA leave alone is not a request for an ADA reasonable accommodation." *Id.*

Under *Acker*, a plaintiff must show that she made a request for a reasonable accommodation under the Rehabilitation Act independent of any request under the FMLA because a request under the FMLA is not automatically a request for accommodation under the ADA. Thus, *Acker* does not preclude Issa's failure to accommodate claim outright; rather, Plaintiffs must allege sufficient facts to show that Issa made a request for accommodation under the Rehabilitation Act.[18]

---

[18] Plaintiffs also must show that Issa sought leave under the FMLA, which the Court analyzes below.

TDCJ does not show that a plaintiff can never bring both a failure to accommodate claim under the Rehabilitation Act and FMLA. FMLA regulations allow for both claims. *See* 29 C.F.R. § 825.702(a) ("When an employer violates both FMLA and a discrimination law, an employee may be able to recover under either or both statutes," although "double relief may not be awarded for the same loss."). In addition, at the pleading stage, a plaintiff may "state as many separate claims or defenses as it has, regardless of consistency." FED. R. CIV. P. 8(d)(3). The Court is not persuaded by TDCJ's argument that Issa has not stated a failure to accommodate claim because she invokes both FMLA and the Rehabilitation Act.

TDCJ also argues that Issa failed to request a reasonable accommodation for a known limitation because she only told her supervisors "that she experienced pain . . . and expressed her belief that she needed to go to the hospital. She does not allege that she told them that she was experiencing limitations for which she needed an accommodation to do her job." Dkt. 20 at 19. But "special words . . . need not be uttered"; rather, the employee merely must explain that the proposed adjustment in working conditions is for a reason related to a medical condition. *Delaval*, 824 F.3d at 481.

Plaintiffs' allegations show that Issa's request was for a reason related to a medical condition. For two-and-a-half hours, Issa repeatedly told her supervisors that she was in pain and needed to go to the hospital. TDCJ does not dispute that it knew Issa was seven months pregnant. These allegations show that Issa made a request for an accommodation for a medical-related condition. Now the Court must determine whether her request was reasonable.

Time off can be a reasonable accommodation. *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021). TDCJ argues that Issa's request to leave work "immediately" and "relieve her of all job duties" was not reasonable. The Court disagrees and finds that Issa's request to leave work

to go to the hospital while she was seven months pregnant and experiencing a pregnancy-related medical emergency was reasonable. *See Flores*, 2021 WL 4925386, at *4 (finding that pregnant plaintiff's request for two days off was a reasonable request for accommodation); *Hernandez*, 550 F. Supp. 3d at 413-14 (rejecting employer's argument that employee's time off from work showed she could not perform the essential functions of her position because it was merely an interruption in her ability to work). Plaintiffs have alleged sufficient facts to plausibly allege that Issa made a request for a reasonable accommodation under the Rehabilitation Act.

### c.   TDCJ Did Not Make a Reasonable Accommodation

Once an employee makes a request for a reasonable accommodation, the employer must engage in a good-faith interactive process with the employee to find the best ways to accommodate that disability. *Chevron Phillips*, 570 F.3d at 621. "When an employer does not engage in a good faith interactive process, that employer violates the ADA." *Id.* TDCJ again argues that it did not deny Issa's request for a reasonable accommodation because it let her leave work two-and-a-half hours after her initial request. The Court has already rejected this argument. Plaintiffs adequately allege that TDCJ denied Issa's request for accommodation under the Rehabilitation Act.

### 2.   Hostile Work Environment

A cause of action for disability-based harassment is "modeled after the similar claim under Title VII." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001). To succeed on a claim of disability-based harassment, the plaintiff must prove that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her disability or disabilities; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Id.* at 235-36. Moreover, the disability-based

harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Id.* at 236.

Plaintiffs allege that Issa was subject to a hostile work environment due to her disability because TDCJ did not allow her to leave her post when she experienced a pregnancy-related medical emergency and "further harassed and humiliated Plaintiff-Issa by explicitly accusing her of lying." Dkt. 18 ¶ 236. Their hostile work environment claim under the Rehabilitation Act fails for the same reasons as their Title VII hostile work environment claim: The allegations do not rise to the level of severe and pervasive actionable harassment. Plaintiffs do not allege a hostile work environment claim under the Rehabilitation Act.

## D. FMLA Interference

Finally, Plaintiffs allege that TDCJ interfered with Issa's rights under the family-care provision of the FMLA, § 2612(a)(1)(C), by denying her request for leave "to care for her unborn child." Dkt. 18 ¶ 251. Section 2612(a)(1)(C) provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." FMLA defines "son or daughter" as "a biological, adopted, or foster child, a stepchild, a legal ward, or a child of a person standing in loco parentis, who is-- (A) under 18 years of age; or (B) 18 years of age or older and incapable of self-care because of a mental or physical disability." 29 U.S.C. § 2611(12). The statute neither defines "child" nor states whether an unborn child qualifies as a child, son, or daughter.

It is unlawful for any employer "to interfere with, restrain, deny the exercise of or the attempt to exercise, any right" provided under the FMLA. 29 U.S.C. § 2615(a)(1). To state a prima facie FMLA interference claim, a plaintiff must allege that "(1) he was an eligible employee; (2) his

24

employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

TDCJ argues that Plaintiffs' FMLA interference claim fails because Issa (1) "sought to depart her shift because of her own serious health condition, *not* because of the serious health condition of a spouse, son daughter, or parent," and (2) did not give TDCJ sufficient notice. Dkt. 20 at 13.

### 1.  FMLA Family-Care Provision

First, TDCJ argues that Plaintiffs' interference claim fails because "Issa did not seek leave to care for the serious health condition of a spouse, son, daughter, or parent. Instead, she requested permission to depart based on her own physical condition." Dkt. 20 at 14. TDCJ emphasizes that Issa "allegedly told Lt. Thompson that 'she really needed to go to the hospital due to the pain she was experiencing,' but did not "allege that she sought leave to care for anyone other than herself— to address her pain." *Id.* (quoting Dkt. 18 ¶ 37). Thus, TDCJ argues that Section § 2612(a)(1)(C) does not apply to Issa's alleged request for FMLA leave because that section applies only to "leave taken to care for a son or daughter." *Id.* at 15.

TDCJ overlooks these allegations in Plaintiffs' Second Amended Complaint:

> Issa sought to leave in order to care for her unborn child, who at all relevant times was a son or daughter under the age of 18.
>
> TDCJ denied Plaintiff-Issa's request for leave to care for her unborn child;
>
> Issa's unborn child was suffering from a serious health condition requiring inpatient care at a hospital and continuing treatment by a healthcare provider, including but not limited to, lack of oxygen and difficulty breathing during the labor and delivery process.

Dkt. 18 ¶¶ 250, 251, 253. Plaintiffs clearly allege that Issa sought leave to care for her unborn child, not just for her own health condition.

As noted, FMLA does not define "child" and does not state whether an unborn child qualifies as a child, son, or daughter "under 18 years of age." 29 U.S.C. § 2611(12). Neither the Supreme Court, the Fifth Circuit, nor any district courts within this circuit has addressed the issue.[19] Although TDCJ does not argue in its Motion to Dismiss that the FMLA family-care provision does not apply to an unborn child or provide any case law to support that position, it does so in its Reply brief. *See* Dkt. 28 at 8-10. "Arguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). Therefore, the Court need not and will not address this issue. It was TDCJ's burden to show in its Motion to Dismiss that Plaintiffs failed to allege facts alleging a plausible claim and it did not do so.

## 2.  Notice under FMLA

"While the employee has a right to take leave under the FMLA, the employee must give his employer notice of his intention to take leave in order to be entitled to it." *Acker*, 853 F.3d at 788. When the need for leave is foreseeable, the employee generally "must provide the employer at least 30 days advance notice before FMLA leave is to begin." 29 C.F.R. § 825.302(a). If 30 days' notice is not practicable, "notice must be given as soon as practicable." *Id.* "What is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995).

---

[19] Plaintiffs argue that, before the events giving rise to this case, Texas extended protection to viable fetuses. Dkt. 24 at 18 (citing, *inter alia*, TEX. CIV. PRAC. & REMEDIES CODE § 71.001(4) ("'Individual' includes an unborn child at every stage of gestation from fertilization until birth."); *see also, e.g.*, TEX. HEALTH & SAFETY CODE § 171.201(7) (defining "unborn child" as "a human fetus or embryo in any stage of gestation from fertilization until birth")); Dkt. 25 at 18 (arguing that Texas had "unequivocally" extended protection to unborn children after the first trimester and post-viability).

The employee "shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 U.S.C. § 825.302(c).

> When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. . . . In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.

*Id.* In determining whether the employee's notice to her employer is sufficient under the FMLA: "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 417 (5th Cir. 2006) (quoting *Manuel*, 66 F.3d at 764).

TDCJ argues that Issa failed to give it sufficient notice of her intent to take leave under the FMLA family-care provision because she did not tell her supervisors when she requested leave that she was seeking leave to attend to a pregnancy-related illness or that she was seeking leave to care for a son or daughter who had a serious medical condition. Dkt. 20 at 16. But it is not necessary for an employee to expressly assert rights under the Act or even mention the FMLA to put her employer on notice of her need for leave. *Willis*, 445 F.3d at 417.[20]

When she requested leave, Issa told her supervisors that she was in pain and needed to leave work to go to the hospital. TDCJ does not dispute that it knew Issa was seven months pregnant. While Issa did not expressly state that she was seeking leave because of a pregnancy-related illness

---

[20] TDCJ cites *Willis* for the proposition that "[a] complaint of sickness will not suffice as notice of a need to take FMLA leave." Dkt. 20 at 16. While this is a correct statement of the law, *Willis* is inapplicable here because Issa, unlike the plaintiff in *Willis*, sufficiently notified TDCJ that she was seeking leave for a pregnancy-related emergency.

or to care for the serious medical condition of a son or daughter, her statements and the facts and circumstances of her pregnancy-related medical emergency are sufficient to show that she was requesting leave "to take time off for a serious health condition." Issa was seven months pregnant and complaining of pain akin to a contraction and the need to go to the hospital immediately. The Court recommends that TDCJ's Motion to Dismiss Plaintiffs' retaliation claim should be denied.

### E. Conclusion as to TDCJ's Motion to Dismiss

In sum, the Court recommends that the District Court grant TDCJ's Motion to Dismiss Plaintiffs' Texas Labor Code claims and hostile work environment claims under Title VII and the Rehabilitation Act and deny the motion as to their FMLA claims and disparate treatment and disparate impact claims under Title VII and the Rehabilitation Act.

## IV. Individual Defendants' Motion to Dismiss

Plaintiffs allege that the Individual Defendants violated the Equal Protection Clause of the Fourteenth Amendment by committing sex and pregnancy discrimination against Issa, and violated their rights to bodily integrity, to be a parent, and to life under the substantive Due Process Clause of the Fourteenth Amendment. Plaintiffs also assert a supervisory liability claim against Defendant Hammond arising from these alleged constitutional violations. Plaintiffs bring these constitutional claims against the Individual Defendants in their individual capacities. The Individual Defendants argue that these claims must be dismissed under Rule 12(b)(6) due to qualified immunity.

### A. Qualified Immunity

Section 1983 of the Civil Rights Act provides a private cause of action against anyone who, "under color of any statute, ordinance, regulation, custom, or usage, of any State," violates another's constitutional rights. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and

(2) show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A § 1983 suit may be brought against a person in his or her individual or official capacity as well as against governmental entities. *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) ("A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.").

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to allege that (1) the defendant violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct. *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts have discretion to decide which of the two prongs of qualified-immunity analysis to address first. *Pearson*, 555 U.S. at 236. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citation omitted). While a case need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. "Put simply,

qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

## B.  Equal Protection

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend XIV, § 1. A plaintiff suing her public employer for sex discrimination may assert claims under both Title VII and the Equal Protection Clause pursuant to Section 1983. *Southard v. Texas Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997). When Section 1983 is used as a parallel remedy with Title VII in a sex discrimination suit, the elements of a cause of action are the same under both statutes. *Lauderdale v. TDCJ*, 512 F.3d 157, 166 (5th Cir. 2007).

Plaintiffs allege that the Individual Defendants discriminated against Issa because of her sex and pregnancy, in violation of the Equal Protection Clause. Plaintiffs rely on the same allegations used to support their Title VII disparate treatment and hostile work environment claims. Because the Court has already determined that Plaintiffs' Title VII hostile work environment claim fails, the Court need only address their disparate treatment claim.

Plaintiffs allege that Defendants Hooper, Thompson, and Hammond treated Issa disparately "based on her status as a woman affected by pregnancy and a pregnancy-related medical condition" and "failed to treat a pregnancy emergency as it would have any other medical emergency—by not only preventing Plaintiff-Issa from leaving but also by not sending any medical help." Dkt. 18 ¶¶ 59, 61. Plaintiffs allege that the Individual Defendants denied Issa's request for an accommodation they had granted "to an employee similar in their ability or inability to work who was experiencing a non-pregnancy-related medical emergency." *Id.* ¶ 62.

Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each defendant who is a government official has violated the Constitution, through the official's own individual actions. *Iqbal*, 556 U.S. at 676. The Court considers the specific allegations against each Individual Defendant.

### 1. Defendants Hooper and Thompson

Plaintiffs allege that Issa told Hooper she needed to go to the hospital but Hooper did not send anyone to replace her. *Id.* ¶¶ 23, 25. Plaintiffs allege that Thompson repeatedly "told Plaintiff-Issa that she could not leave" and accused her "fabricating her pregnancy emergency." *Id.* ¶¶ 32, 40. Hooper and Thompson waited two-and-a-half hours to send someone to relieve Issa. Plaintiffs allege that Hooper and Thompson failed to accommodate Issa's request for a reasonable accommodation to leave work to attend to a pregnancy-related medical emergency.

As discussed above, Plaintiff has alleged a sex/pregnancy discrimination claim under Title VII. It has long been established that "[s]ex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment." *Southard*, 114 F.3d at 550; *see also Davis v. Passman*, 442 U.S. 228, 235 (1979) ("The equal protection component of the Due Process Clause thus confers on petitioner a federal constitutional right to be free from gender discrimination which cannot meet these requirements."). And "discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Newport News Shipbuilding*, 462 U.S. at 684. Because sex discrimination in the workplace is never objectively reasonable, Plaintiffs' allegations are sufficient at the motion to dismiss stage to plausibly allege a violation of a clearly established constitutional right. *See Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751, at *12 (N.D. Tex. July 10, 2015) ("Because such gender discrimination is 'never objectively reasonable,' [defendant] is not entitled to the defense of qualified immunity for

31

[plaintiffs'] gender discrimination claims under section 1983 and the Equal Protection Clause.") (citation omitted); *Stark v. Univ. of S. Miss.*, 8 F. Supp. 3d 825, 838 (S.D. Miss. 2014) ("When a plaintiff's allegations are sufficient to state a claim for intentional discrimination, an immunity defense will generally be foreclosed at the pre-discovery stage, as intentional racial [or gender] discrimination is never objectively reasonable.").

### 2.  Defendant Hammond

Supervisory officials are not liable under § 1983 for the actions of subordinates on any theory of vicarious liability. *Turner v. Lt. Driver*, 848 F.3d 678, 695 (5th Cir. 2017). A supervisory official may be held liable under § 1983 only if the official (1) affirmatively participates in the acts that cause the constitutional deprivation, or (2) implements unconstitutional policies that causally result in the constitutional injury. *Zadeh v. Robinson*, 928 F.3d 457, 473 (5th Cir. 2019).

Plaintiffs allege that Hammond personally implemented the alleged unconstitutional policy. They allege that Hammond "learned of Plaintiff-Issa's pregnancy emergency through Defendants-Hooper and Thompson while the emergency was ongoing," Dkt. 18 ¶ 145, and "sat idly by while Plaintiffs' rights were violated." Dkt. 25 at 18. In support, Plaintiffs allege that Defendant Thompson "told Plaintiff-Issa she could not leave because 'the warden' said she could not leave." Dkt. 18 ¶ 34.[21] The Court finds that Plaintiffs' allegations are sufficient at the pleading stage to allege supervisory liability.

### C.  Substantive Due Process

Plaintiffs allege that the Individual Defendants violated several of their rights under the Due Process Clause of the Fourteenth Amendment, which provides that no state shall "deprive any

---

[21] If Plaintiffs cannot show that Hammond was personally involved in the decision to deny her request for a reasonable accommodation, they will have to show that he acted with deliberate indifference. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV, § 1. The

Due Process Clause "was intended to prevent government from abusing its power, or employing

it as an instrument of oppression." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126

(1992). "The most familiar office of that Clause is to provide a guarantee of fair procedure in

connection with any deprivation of life, liberty, or property by a State." *Id.* at 125. The substantive

component of the Due Process Clause "protects individual liberty against 'certain government

actions regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels*

*v. Williams*, 474 U.S. 327, 331 (1986)).

Historically, the substantive due process clause "has been applied to *deliberate* decisions of

government officials to deprive a person of life, liberty, or property." *Daniels*, 474 U.S. at 331.

Accordingly, "the Due Process Clause is simply not implicated by a *negligent act* of an official

causing unintended loss of or injury to life, liberty, or property." *Id.* at 328 (holding that inmate

who slipped on a pillow negligently left on a stairway by a correctional officer failed to allege a

violation of the Due Process Clause).[22] As the *Daniels* Court reasoned:

> Far from an abuse of power, lack of due care suggests no more than a
> failure to measure up to the conduct of a reasonable person. To hold
> that injury caused by such conduct is a deprivation within the meaning
> of the Fourteenth Amendment would trivialize the centuries-old
> principle of due process of law.
>
> The Fourteenth Amendment is a part of a Constitution generally
> designed to allocate governing authority among the Branches of the
> Federal Government and between that Government and the States,
> and to secure certain individual rights against both State and Federal
> Government. When dealing with a claim that such a document creates

---

[22] *See also Collins*, 503 U.S. at 130 ("[T]he Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the workplace and the city's alleged failure to train or to warn its sanitation department employees was not arbitrary in a constitutional sense."); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (holding that inmate who alleged that prison guard negligently failed to protect him from another inmate did not allege due process violation because "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials").

> a right in prisoners to sue a government official because he
> negligently created an unsafe condition in the prison, we bear in mind
> Chief Justice Marshall's admonition that "we must never forget, that
> it is a *constitution* we are expounding." Our Constitution deals with
> the large concerns of the governors and the governed, but it does not
> purport to supplant traditional tort law in laying down rules of conduct
> to regulate liability for injuries that attend living together in society.
> We have previously rejected reasoning that "would make of the
> Fourteenth Amendment a font of tort law to be superimposed upon
> whatever systems may already be administered by the States."

*Id.* at 332 (internal citations omitted); *see also Collins*, 503 U.S. at 128 (stating that "we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law").

### 1. Right to Bodily Integrity

First, Plaintiffs allege that the Individual Defendants violated Issa's and her unborn child's rights to be free from state-sanctioned harm to bodily integrity. They rely on the substantive component of the Due Process Clause, which secures among other liberties the "right to be free of state-occasioned damage to a person's bodily integrity." *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022) (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994)). "A violation of the right to bodily integrity follows from 'behavior of the governmental officer that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Tyson*, 42 F.4th at 517 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Conduct "intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. Most cases that have applied the right to bodily integrity "have involved the use of extreme force by

police officers or other state actors." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 868 (5th Cir. 2012).[23]

Plaintiffs allege that the Individual Defendants violated Issa's right to bodily integrity by preventing her "from leaving her post and receiving necessary medical care, which exacerbated Plaintiff-Issa's pain, caused unnecessary complications to Plaintiff-Issa's pregnancy, and contributed to the need for emergency surgery." Dkt. 18 ¶ 115. Plaintiffs also allege that the Individual Defendants violated their right to bodily integrity of their fetus in that, by preventing Issa from leaving, they "subjected the unborn child to a cruel and inhumane death, whereby the child slowly died in the womb," and that such conduct shocks the conscience. *Id.* ¶¶ 164, 170, 176.

"[T]he burden to show state conduct that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Keys*, 675 F.3d at 867-68 (quoting *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010)). The Court finds that Plaintiffs' allegations do not rise to the level of "shocking the conscience" because they do not allege that the Individual Defendants made "*deliberate* decisions" to deprive Issa or her fetus of life, liberty, or property. *Daniels*, 474 U.S. at 331. While Plaintiffs allege that the Individual Defendants prevented her from leaving work, they do not allege that the Individual Defendants made a deliberate decision to cause physical pain or injury to Issa or her unborn child. *See Collins*, 503 U.S. at 125 ("A fair reading of petitioner's complaint does not charge the city with a willful

---

[23] *See, e.g.*, *Rochin v. California*, 342 U.S. 165, 172 (1952) (forced pumping of suspect's stomach); *Tyson*, 42 F.4th at 517 ("We have long recognized that physical sexual abuse by a state official violates the right to bodily integrity."); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994) ("We hold, first, that schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right."); *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305-06 (5th Cir. 1987) (holding that teacher and principal did not have qualified immunity from bodily integrity claim where they strapped second-grade student to a chair for two days as part of an educational exercise).

violation of [her deceased husband's] rights. Petitioner does not claim that the city or any of its agents deliberately harmed her husband.").

Plaintiffs allege that Thompson accused Issa of fabricating her pregnancy emergency – indeed, he still contends that Issa "declared her pain (without any verifiable symptoms)," Dkt. 21 at 13 – but a mistaken belief about Issa's pregnancy emergency does not show that Thompson acted with malice or intent to harm. While Thompson's mistaken belief led to serious injury, "that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent." *Davidson*, 474 U.S. at 347-48 ("The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials.").

As stated, the Due Process Clause is not implicated "by a *negligent act* of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 328. Even if Plaintiffs' allegations show that the Individual Defendants were negligent in failing to permit Issa to leave work to seek medical help, they do not show any intent as to bodily integrity rights. "The Due Process Clause 'is not a guarantee against incorrect or ill-advised personnel decisions.' Nor does it guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Collins*, 503 U.S. at 129 (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)).

> That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectible legal interests. The enactment of tort claim statutes, for example, reflects the view that injuries caused by such negligence should generally be redressed. It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns.

*Daniels*, 474 U.S. at 333. Plaintiffs do not allege a violation of their rights to bodily integrity under the Due Process Clause.

## 2. Right to Be a Parent

Plaintiffs also allege that the Individual Defendants' actions denied them the right to be a parent of their child, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Dkt. 18 ¶ 131. "Liberty" under the Due Process Clause

> denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *see also Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 640 (1974) ("[T]here is a right 'to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.'") (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972)); *Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 541 (1942) (referring to "the right to have offspring" as a basic human right).[24] But the Due Process Clause is not implicated "by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels*, 474 U.S. at 328.

As discussed above, Plaintiffs do not allege sufficient facts to show that the Individual Defendants intended for Issa to lose her baby. Because Plaintiffs' allegations merely show that the Individual Defendants negligently caused the injuries, they do not state a constitutional violation.

---

[24] In *Skinner*, the Supreme Court held that Oklahoma's Habitual Criminal Sterilization Act authorizing the sterilization of criminals who committed certain crimes of moral turpitude violated the Equal Protection Clause. The Court reasoned that "[w]hen the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment." *Id.*, 316 U.S. at 541. Plaintiffs state in their Reply brief that because "*Skinner* was decided pursuant to the equal protection clause of the Fourteenth Amendment as opposed to the due process clause . . . Plaintiffs have pleaded both constitutional provisions in their complaint." Dkt. 25 at 12 n.5. But *Skinner* relied on the Equal Protection Clause because it involved a criminal statute unequally enforced against different classifications of criminals. In all other cases involving parental rights, the Supreme Court has analyzed such claims under the Due Process Clause. *See, e.g.*, *Cleveland*, 414 U.S. at 640; *Meyer*, 262 U.S. at 399. The Court therefore analyzes Plaintiffs' parental rights' claims under the Due Process Clause.

### 3.  Right to Life

As stated, the Due Process Clause prohibits a State from depriving "any person of life." U.S. CONST. amend. XIV, § 1. Plaintiffs allege that the Individual Defendants' actions in preventing Issa from leaving work "deprived the unborn child of its right to life" in violation of the Due Process Clause. Dkt. 18 ¶ 184.

The Individual Defendants argue that Plaintiffs do not allege a violation of a clearly established right because "in *Roe v. Wade*, [410 U.S. 113, 158 (1973)], the Supreme Court held that 'the word 'person,' as used in the Fourteenth Amendment, does not include the unborn,'" Dkt. 21 at 20, and *Roe* had not yet been overruled when the events at issue took place on November 15, 2021. *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2261 (2022) ("Our opinion is not based on any view about if and when prenatal life is entitled to any of the rights enjoyed after birth.").[25]

The Court need not address this argument because Plaintiffs do not allege sufficient facts to show that the Individual Defendants intended the death of Issa's unborn child; rather, Plaintiffs' allegations merely show that the Individual Defendants negligently caused the injuries. Plaintiffs do not state a constitutional violation.

### D.  Conclusion as to the Individual Defendants' Motion to Dismiss

The Court recommends that the District Court deny the Individual Defendants' Motion to Dismiss Plaintiffs' equal protection claims based on disparate impact and treatment, but grant the Motion as to Plaintiffs' substantive due process claims and equal protection claim based on hostile work environment.

---

[25] *See also* Reply brief, Dkt. 29 at 7 (stating that "it is unclear whether, post-*Dobbs*, [substantive due process] applies to the unborn").

## V.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Texas Department of Criminal Justice's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 20). The Court recommends that the District Court (1) **DISMISS** Plaintiffs' Texas Labor Code claims against TDCJ for lack of jurisdiction under Rule 12(b)(1) without prejudice,  and (2) **DISMISS** Plaintiffs' Title VII and Rehabilitation Act hostile work environment claims against TDCJ under Rule 12(b)(6) with prejudice. The Court recommends that the District Court **DENY** TDCJ's Motion to Dismiss Plaintiffs' disparate treatment and disparate impact claims under Title VII and the Rehabilitation Act and Plaintiffs' claims under the FMLA.

This Magistrate Judge **FURTHER RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants Lt. Brandy Hooper, Lt. Desmond Thompson and Assistant Warden Alonzo Hammond's Motion to Dismiss Plaintiffs' Second Amended Complaint Dismiss (Dkt. 21). The Court recommends that the District Court **DISMISS** under Rule 12(b)(6) with prejudice Plaintiffs' (1) substantive due process claims for bodily integrity, right to be a parent, and right to life, and (2) equal protection claim based on a hostile work environment, against the Individual Defendants. The Court recommends that the District Court **DENY** the Individual Defendants' Motion to Dismiss Plaintiffs' equal protection claims for sex-based disparate treatment and impact.

**IT IS FURTHER ORDERED** that the Clerk **REMOVE** this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable Alan D. Albright.

### VI.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 1, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE