IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SALIA ISSA, FISTON RUKENGEZA, *et al.* | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-1107 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, | § | |
| *et al.* | § | |
| Defendants. | § | |

**DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE (DKT. #36)**

TO THE HONORABLE DISTRICT COURT JUDGE:

Defendants Texas Department of Criminal Justice ("TDCJ"); as well as Defendants
Brandy Hooper, Desmond Thompson, and Alonzo Hammond (collectively, "Individual
Defendants") respectfully object to several recommendations contained within the Report and
Recommendation of the United States Magistrate Judge ("the Report"), Dkt. #36, and further
show the Court as follows:

## I.    TDCJ'S OBJECTIONS

**A.    The District Court should not adopt the recommendation that TDCJ's motion to
dismiss Plaintiff Issa's Title VII disparate treatment claim (Count 1) be denied;
instead, the claim should be dismissed.**

TDCJ respectfully objects to the Report's conclusion that Plaintiff Issa plausibly pled a
disparate treatment claim based on a failure to accommodate her pregnancy under Title VII and
that TDCJ's motion to dismiss that claim should be denied to the extent it seeks dismissal of that
claim (Count 1). Dkt. #36 at 9–12. The Report rejected TDCJ's argument that it *did* grant Issa her
requested accommodation by allowing her to depart work mid-shift. *Id.* at 10–11. Quoting an
unpublished district court case from the Northern District of Illinois, the Report stated, "'An

employer who ultimately provides an accommodation may nevertheless be liable for a failure to accommodate if the delay in making that accommodation is unreasonable.'" *Id.* (quoting *Peters v. Mundelein Consol. High Sch. Dist.* 21-CV-336, 2022 WL 393572, at *4 (N.D. Ill. Feb. 9, 2022)). But in the sentence directly following the sentence quoted in the report, the *Peters* Court went on to note that "[t]ypically, a delay is not unreasonable if the employer, in good faith, engaged in the ADA's required interactive process with the employee to find an appropriate accommodation." 2022 WL 393572, at *4. The *Peters* Court held that the pleadings did not permit an inference of unreasonableness from "the *five-month gap* between [the employee's] request and [the employer's] provision of accommodations." *Id.* (emphasis added).

"Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee." *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001). Particularly given the expectation the employee and employer engage in an interactive process, two and a half hours between the employee making a request and an employer granting it is reasonable. For this reason, and for all the others articulated in its motion to dismiss (Dkt. #20 at 4–8) and reply (Dkt. #28 at 2–4), TDCJ asks the Court to grant its motion to dismiss Plaintiff Issa's disparate treatment claim under Title VII (Count 1).

**B.** **The District Court should not adopt the recommendation that TDCJ's motion to dismiss Plaintiff Issa's Title VII disparate impact claim (Count 2) be denied; instead, the claim should be dismissed.**

TDCJ respectfully objects to the Report's conclusion that Plaintiff Issa plausibly pled a disparate impact claim under Title VII and that TDCJ's motion to dismiss that claim should be denied to the extent it seeks dismissal of that claim (Count 2). *See* Dkt. #36 at 12–14. While TDCJ agrees with the Report's observation that no evidence is required at the pleading stage, TDCJ disagrees with the Report's conclusion that Plaintiffs have plausibly alleged facts to support the

ultimate elements of their disparate impact claim. *See id.* As recounted by the Report, Plaintiffs allege that:

> (1) TDCJ maintained a policy whereby corrections officers could not leave their post without authorization nor could they leave their post until a replacement was in place;
>
> (2) TDCJ's Policy, despite being facially neutral, disparately impacted Issa on the basis of sex, resulting in her losing the child she was expecting with her husband;
>
> (3) All or substantially all pregnant women would have been advised by their obstetrician to leave immediately; and
>
> (4) TDCJ's policy prevented Plaintiff-Issa from leaving.

Dkt. #36 at 13 (citing Dkt. #18 ¶¶ 87–91).

The Report concludes these allegations were sufficient to meet the ultimate elements of the disparate impact claim. Dkt. #18 at 14. TDCJ respectfully disagrees. "[A]lthough a plaintiff need not plead a prima facie case at this stage of the proceedings, [s]he must still allege facts to show '(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class' in order to state a disparate impact claim." *Onyeugbo v. Providencia Group, LLC*, Civil Action No. 3:22-CV-1719, 2023 WL 3958909, at *5 (N.D. Tex. May 22, 2023) (quoting *Finch v. Tex. Health & Human Servs. Comm'n*, No. H-13-3716, 2015 WL 5674834, at *2 (S.D. Tex. Sept. 25, 2015); *Pacheco v. Mineta*, 448 F.3d 783, 791 (5th Cir. 2006) ("A disparate-impact plaintiff must show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class.").

Here, Plaintiffs do not plausibly allege that the policy has, in fact, disproportionately affected "a protected class"—namely, pregnant women. As noted in TDCJ's Reply, unlike in the context of disparate treatment, a disparate impact claim cannot rest on the contention that the neutral policy had a disparate impact on the plaintiff and the plaintiff alone. *See* Dkt. #28 at 5–8

(citing *Garcia v. Woman's Hospital of Texas*, 97 F.3d 810, 813 (5th Cir. 1996)). In *Garcia*, the Fifth Circuit held that it is "insufficient for a [disparate impact] claim under Title VII if [the plaintiff] were the only pregnant woman adversely affected; she must show that pregnant women as a group would be subject to this medical restriction." 97 F.3d at 813. Instead, the plaintiff must prove— or, at this stage, allege facts that create the reasonable inference that—*all* or *substantially all* pregnant women were similarly affected. *Id.* The Report distinguishes *Garcia* by noting that case was at the trial stage and here, at this stage, no evidence is required. Dkt. #36 at 14. TDCJ agrees that no evidence is required at present, but the pleadings must still allege facts that support the ultimate elements: namely, that *all* or *substantially all* pregnant women are adversely impacted by the neutral policy at issue.

Plaintiffs' allegations do not create the reasonable inference that a substantial number of pregnant women have been disparately impacted by the policy prohibiting people from leaving their post without a replacement. Admittedly, if a substantial number of pregnant women were presented with the exact situation as Plaintiff Issa, the challenged policy would have imposed a disparate impact. But a *sui generis* event provides a poor foundation for a disparate impact claim. Plaintiff Issa's situation was unusual: a pregnant correctional officer (1) has a pregnancy-related need to leave their post without delay, (2) does not obtain medical attention from medical staff posted to the prison unit itself; (3) is unable to either secure a replacement for hours or obtain permission to leave immediately; and (4) chooses to stay rather than assume the risk of reprimand by leaving without permission.

The pleadings do not allege facts that make it plausible that this situation has ever happened to anyone other than Plaintiff Issa. But to plead a disparate impact claim, the alleged facts must

show that the facially-neutral policy "in fact, has a disproportionately adverse effect on [pregnant women]," *see Pacheco*, 448 F.3d at 791, not that the facially-natural policy *could* hypothetically disproportionately affect pregnant women in the event that a highly unusual set of circumstances were ever to repeat. If the facts create only the reasonable inference that Issa—and no one else—experienced the disparate impact, then the ultimate elements are not supported by the factual allegations.

The Report says, "Plaintiffs allege that TDCJ had a facially neutral personnel policy that would disparate[ly] impact 'all or substantially all pregnant women' experiencing similar pregnancy-related medical emergencies." Dkt. #36 at 14. This statement misses the mark in two ways. First, Plaintiffs only allege that "Defendant-TDCJ disparately treated *Plaintiff-Issa* on the basis of sex," Dkt. #18 at ¶63 (emphasis added), not "all or substantially all pregnant women." Second, the legal standard requires "all or substantially all pregnant women" to be disparately impacted, not the subset of pregnant women who experience similar pregnancy-related emergencies while at work. Imagine, for example, that only 1% of pregnant women experience a similar pregnancy-related emergency while working for TDCJ. It could hardly be said that a policy that disparately impacts only those pregnant women who experience a pregnancy-related emergency at work disparately impacts "substantially all pregnant women." And even this presupposes that all of the 1% of women who experience the emergency have the same difficulty obtaining a replacement as did Plaintiff Issa—an unsupported assumption.

Because Plaintiffs' pleadings focus so exclusively on how the policy impacted Plaintiff Issa *without* factual allegations that create the reasonable inference that her experience was reflective of the experience of substantially all pregnant women as a group, the pleadings have "not nudged

the[] [disparate impact] claim[] across the line from conceivable to plausible." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**C.**    **The District Court should not adopt the recommendation that TDCJ's motion to dismiss Plaintiff Issa's reasonable accommodation claim under the Rehabilitation Act (Count 29) be denied; instead, the claim should be dismissed.**

TDCJ respectfully objects to the Report's conclusion that Plaintiff Issa plausibly pled a failure to accommodate claim under the Rehabilitation Act and that TDCJ's motion to dismiss that claim should be denied to the extent it seeks dismissal of that claim (Count 29). Dkt. #36 at 17–23. Plaintiffs' contention that anything less than immediately granting her request ignores the "good faith, back and forth" dialogue between "employer and employee" central to the interactive process. *See Dillard v. City of Austin, Texas*, 837 F.3d 557, 562–63 (5th Cir. 2016). As discussed above in the context of pregnancy, TDCJ granted Plaintiff Issa's requested accommodation. *See* supra at 1–2. For this reason and for all the others articulated in its motion to dismiss and reply, TDCJ asks the Court to dismiss Plaintiff's failure-to-accommodate claim under the Rehabilitation Act. *See* Dkt. #20 at 17–19; Dkt. #28 at 9–10.

**D.**    **The District Court should not adopt the Report's observation that TDCJ did not move to dismiss the disparate impact claim under the Rehabilitation Act because no such claim exists.**

The Report describes Plaintiffs' Second Amended Complaint as "alleg[ing] that TDCJ violated the Rehabilitation Act by denying Issa's request for a reasonable accommodation to her disability, *maintaining a TDCJ Policy that disparately impacted her*, and subjecting her to a hostile work environment based on her disability." Dkt. #36 at 17 (emphasis added). A footnote further observes that TDCJ does not address Plaintiffs' disparate impact claim in its motion to dismiss, referring to the Rehabilitation Act. *Id.* at 17 n.16. TDCJ respectfully objects to these observations because Plaintiffs' Second Amended Complaint does not bring a disparate impact claim under the

Rehabilitation Act, which is why TDCJ did not move for its dismissal. While the Report's observation might be a dictum, because it is critical to clarify which claims have been pleaded as this case proceeds, TDCJ asks the Court to review its objection and reject the purported Rehabilitation Act disparate impact claim.

In the Second Amended Complaint, Plaintiff Issa raised disparate impact claims under Title VII (Count 5) and under the Texas Labor Code (Counts 6 and 28). Dkt. #18 at 2–3. But she did not raise a disparate impact claim under the Rehabilitation Act (Counts 29 and 30). *Id.* at 3. Count 29 brings a "denial of a reasonable accommodation" under the Rehabilitation Act. *Id.* at ¶¶223–31. Count 30 brings a "hostile work environment" claim under the Rehabilitation Act. *Id.* at ¶¶232–44. Not only is "disparate impact" not identified in the claims chart included in the pleadings, Dkt. #18 at 2–3, but nowhere in the pleadings' substance do Plaintiffs raise a disparate impact claim under the Rehabilitation Act. While these pleadings do refer to the "impact" of Issa's pregnancy emergency on major life activities, *id.* at ¶224, ¶234, they do not allege—and do not seek to recover under—a disparate impact claim in the context of the Rehabilitation Act. *See id.* at ¶¶223–44. In any event, it appears Plaintiffs seek only monetary damages, Dkt. #18 at ¶¶257–62, which are unavailable for a disparate impact claim under the Rehabilitation Act. *See T.O. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021).

The Report's observation about TDCJ not moving to dismiss a disparate impact claim under the Rehabilitation Act does not include a recommendation for the District Court to take any action. But it is important for TDCJ to know what claims are genuinely at issue as the case proceeds beyond the motion-to-dismiss stage. Because TDCJ and the Report do not share a common understanding on whether a disparate impact claim under the Rehabilitation Act has been pleaded,

TDCJ raises this objection in the hopes that the District Court might resolve the apparent confusion or disagreement. Specifically, TDCJ objects to the Report's suggestion that Plaintiff Issa has pleaded a disparate impact claim under the Rehabilitation Act, and TDCJ respectfully asks the District Court to reject that erroneous suggestion.

**E.    The District Court should not adopt the recommendation that TDCJ's motion to dismiss Plaintiff Issa's FMLA claim (Count 31) be denied; instead, the claim should be dismissed.**

TDCJ respectfully objects to the Report's conclusion that Plaintiff Issa plausibly pled an FMLA interference claim under the family-care provision of the FMLA, § 2612(a)(1)(C). *See* Dkt. #36 at 24–28. The Report pointedly declines to consider TDCJ's argument that it is the FMLA's self-care, not family-care, provision that applies here because the Report contends that TDCJ did not present that argument in its motion to dismiss. Dkt. #36 at 26 (noting that "[a]rguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010)). But TDCJ *did* raise this argument in its motion to dismiss and therefore TDCJ asks the Court to consider it.

TDCJ's motion argued that Plaintiff Issa "was not entitled to leave under the provision invoked by her pleadings, 29 U.S.C. § 2612(a)(1)(C), which applies to leave taken to care for a son or daughter." Dkt. #20 at 14–15. The motion argued that pregnancy needed to be raised as a self-care claim, and that Plaintiffs were attempting to "cram[] the proverbial 'square peg' of a self-care claim into the 'round hole' of family care," but that "the claim simply [did] not fit." Dkt. #20 at 14–15. The motion added, "[a]s the Supreme Court put it, it is 'the self-care provision [that] offers women a benefit by allowing them to take leave for pregnancy-related illnesses[,]'" emphasizing: "[s]elf-care; not family care." *Id.* at 15 (quoting *Coleman v. Court of Appeals v. Md.*, 566 U.S. 30, 39 (2012)).

Thus, the Report errs by characterizing the statutory interpretation argument as first raised in reply. *See* Dkt. #36 at 26. While TDCJ's Reply elaborated on the motion's argument with additional precedent, *see* Dkt. #28 at 7–8, "new precedent is not a new argument; it is new support for an existing argument." *See Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022). Moreover, the traditional concern about a new argument being raised in a reply brief is heavily mitigated here because Plaintiffs sought and obtained leave to file a surreply "to clarify an issue that has developed during motion practice." Dkt. #30 (the quoted motion for leave); Dkt. #33 (the order granting the motion). Had Plaintiffs shared the Report's concern about TDCJ raising a "new" argument, they could have included a rebuttal in the proposed surreply, as they did for the unrelated issue. But they did not do so.

For all these reasons, the Report errs by refusing to even consider TDCJ's argument that a pregnant employee's request to leave work immediately based on symptoms associated with pregnancy categorically falls under FMLA's self-care provision, not family-care provision. *See* Dkt. #20 at 14–15; Dkt. #28 at 7–8. Plaintiff Issa's FMLA interference claim under the family-care provision, 29 U.S.C. § 2612(a)(1)(C), should be dismissed. A request for leave based on symptoms brought on by pregnancy falls outside of the protection afforded by the "family-care" provision, 29 § 2612(a)(1)(C), and instead falls under the "self-care" provision, 29 U.S.C. § 2612(a)(1)(D). *See Coleman*, 566 U.S. at 39 (four-justice plurality opinion observing that "[i]t is true the self-care provision offers some women a benefit by allowing them to take leave for pregnancy related illnesses. . . .")[1]; *Coleman*, 566 U.S. at 50 (four-justice dissent agreeing that "the self-care

---

[1] TDCJ takes this opportunity to correct an accidental misstatement of law contained in its reply. TDCJ's Reply described *Coleman's* four-justice plurality opinion as a five-justice majority. Dkt. #28 at 8–9. Upon further review, Justice Scalia issued a two-paragraph concurring opinion that

provision, 29 U.S.C. § 2612(a)(1)(D), prescribes comprehensive leave for women disabled during pregnancy or while recuperating from childbirth—without singling out pregnancy or childbirth"); *Proctor v. Riley Indus., Inc.*, 579 F. Supp.3d 1127, 1130 (D. Arizona 2022) (concluding that "neither the [FMLA] statute nor regulations include unborn children in the definition of covered children").

## II.   INDIVIDUAL DEFENDANTS' OBJECTIONS

**A.   The District Court should not adopt the recommendation that Individual Defendants' motion to dismiss Equal Protection claims (Counts 7–9) be denied; instead, the claims should be dismissed.**

Individual Defendants respectfully object to the Report's conclusion that Plaintiff Issa alleged facts that created the reasonable inference that they discriminated against her because of her sex and pregnancy in violation of the Equal Protection Clause. *See* Dkt. #36 at 30–32. The Report errs by overly conflating the Title VII disparate treatment analysis with their individual liability under 42 U.S.C. § 1983 in two respects. *See id.* First, while the Report "recommends that the Court DENY the Individual Defendants' Motion to Dismiss Plaintiffs' equal protection claims for sex-based disparate . . . impact," Dkt. #36 at 39, "[t]he Constitution forbids only purposeful discrimination." *U.S. v. LULAC*, 793 F.2d 636, 646 (5th Cir. 1986). Second, the Report bases its recommendation that Individual Defendants violated the Equal Protection clause on alleged actions taken by other people.

---

rejected the legal test employed by both the majority and dissent, suggesting that Congress's abrogation powers should be limited to the regulation of conduct that itself violates the Fourteenth Amendment. *Coleman*, 566 U.S. at 44–45 (Scalia, J., concurring in judgment). While TDCJ regrets its error, the upshot reminds the same: in *Coleman*, the Supreme Court Justices overwhelmingly viewed pregnancy as falling under the FMLA's self-care provision—whether they agreed or disagreed with the case's outcome.

### 1.    Equal Protection: Disparate Impact

Defendants do not believe that Plaintiff Issa intended to raise disparate impact claims under the Equal Protection clause and did not discern such claims from reviewing the pleadings. *See* Dkt. #18 at ¶¶100–11. But to the extent such claim has genuinely been raised, the Report errs by recommending that it should persist. "[D]isparate impact alone cannot suffice to state an Equal Protection violation." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); *LULAC*, 793 F.2d at 646; *cf. Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 272 (1979) (noting that "uneven effects upon particular groups within a class are ordinarily of no constitutional concern" and "even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose"). Because the Equal Protection clause prohibits only disparate treatment, even if Issa had plausibly alleged a disparate impact claim against TDCJ under Title VII, she would still not state a disparate impact claim against Individual Defendants under the Equal Protection clause. To the extent raised, the claim should be dismissed.

### 2.    Equal Protection: Disparate Treatment

In the context of Title VII, the Report concluded that Plaintiff Issa alleged a plausible disparate treatment claim against TDCJ based, *inter alia*, on the allegation that "TDCJ (1) 'permitted other employees to leave their shifts early while those employees were experiencing non-pregnancy-related medical emergencies and non-pregnancy-related medical issues,' and (2) 'offered and sent medical help to other employees while those other employees were experiencing non-pregnancy-related medical emergencies and non-pregnancy-related medical issues.'" Dkt. #36 at 12 (quoting Dkt. #18 at ¶¶55–56). While TDCJ argued that this contention was too

conclusory to be entitled to deference, the Report disagreed and determined the allegations sufficient to nudge the claim across the line. *Id.*

Critically, Plaintiffs do not allege that Defendants Hooper, Thompson, or Hammond have ever "permitted other employees to leave their shifts early while those employees were experiencing non-pregnancy-related medical emergencies and non-pregnancy-related medical issues," or (2) "offered and sent medical help to other employees while those other employees were experiencing non-pregnancy-related medical emergencies and non-pregnancy-related medical issues." *See* Dkt. #18 at ¶¶55–56. But while Title VII incorporates *respondeat superior* liability, 42 U.S.C. § 1983 does not. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533–34 (5th Cir. 1997). That distinction is dispositive here.

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *U.S. v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992). And a court errs by imputing the discriminatory intent of one official onto another for purposes of the qualified immunity inquiry. *Coleman*, 113 F.3d at 534. Under the Equal Protection Clause and Section 1983, the plaintiff "must prove [or, here, plausibly allege] that [the individual defendant] intentionally discriminated against her on the basis of [sex or pregnancy]," which must be based on that defendant's motives and not those of others. *Id.*

Here, regardless of whether Plaintiff Issa pleaded a plausible disparate treatment claim against TDCJ under Title VII, she failed to plead a plausible Equal Protection claim against Defendants Hooper, Thompson, or Hammond under Section 1983. The allegations do not create the reasonable inference that Hoover, Thompson, or Hammond were motivated by sex or pregnancy. There is no allegation that Hoover, Thompson, or Hammond treated men (or non-pregnant women) differently when confronted with a similar request to leave immediately based on similar medical symptoms. As argued in Individual Defendants' Reply (Dkt. #28 at 4), if a different TDCJ employee made a different decision when presented with exigency, that difference does not allow the Court to reach any conclusions regarding whether any Individual Defendant was motivated by Plaintiff Issa's sex or pregnancy.

Defendants Hooper, Thompson, and Hammond respectfully ask the Court not to allow claims seeking to impose individual liability upon each of them to persist unless the allegations are sufficient for the Court to infer that each of them personally acted with intent to discriminate. If the Court cannot infer that *the individual* had a culpable mental state, then the pleadings do not create the reasonable inference that *the individual* violated the Equal Protection Clause. As the conclusion of a culpable (discriminatory) mental state rests on alleged dissimilar actions taken by TDCJ—not by any individual defendant—no inference can be drawn for those individuals. The factual allegations do not support the inference that either Hooper, Hammond, or Thompson were motivated by Plaintiff Issa's pregnancy or sex. The Equal Protection claim brought against each of them should be dismissed.

### III. <u>PRAYER</u>

Defendants respectfully ask the Court not to adopt the recommendations identified herein and to instead grant Defendants' respective motions to dismiss in their entirety.

Date: August 15, 2023                    Respectfully Submitted,

ANGELA COLMENERO                         /s/ *Benjamin L. Dower*
Provisional Attorney General of Texas    BENJAMIN L. DOWER
                                         Special Litigation Counsel
BRENT WEBSTER                            Texas Bar No. 24082931
First Assistant Attorney General         Attorney-in-Charge
                                         Benjamin.Dower@oag.texas.gov
GRANT DORFMAN
Deputy First Assistant Attorney General  Office of the Attorney General
                                         Law Enforcement Defense Division
JAMES LLOYD                              P.O. Box 12548, Capitol Station
Acting Deputy Attorney General for Civil Austin, Texas 78711-2548
Litigation                               (512) 463-2080 / Fax (512) 370-9994

SHANNA MOLINARE                          **ATTORNEYS FOR DEFENDANTS TDCJ,**
Chief, Law Enforcement Defense Division  **HOOPER, THOMPSON, AND HAMMOND**

### CERTIFICATE OF SERVICE

I, BENJAMIN L. DOWER, certify that a true and correct copy of the foregoing document was

filed and served via the Court's CM/ECF document filing system on August 15, 2023, to:

Ross A. Brennan
Cronauer Law, LLP
7500 Rialto Blvd
Bldg 1, Ste 250
Austin, TX 78735
512-733-5151
Fax: 815-895-4070
Email: ross@cronauerlaw.com
**ATTORNEY FOR PLAINTIFFS**

/s/ *Benjamin L. Dower*
BENJAMIN L. DOWER
Special Litigation Counsel
Office of the Attorney General of Texas